**[ORAL ARGUMENT SCHEDULED FOR MAY 7, 2026]**

**No. 26-5070**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

MARK KELLY, United States Senator Representing the State of Arizona,

*Plaintiff-Appellee,*

v.

PETE HEGSETH, in his Official Capacity as Secretary of Defense; U.S. DEPARTMENT OF DEFENSE; JOHN C. PHELAN, in his Official Capacity as Secretary of the Navy; U.S. DEPARTMENT OF THE NAVY,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

## JOINT APPENDIX

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

BRAD HINSHELWOOD
CYNTHIA BARMORE
JOHN BAILEY
  *Attorneys, Civil Division*
  *Room 7529*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# INDEX

**Page**

Docket Report ................................................................................ 1

Notice of Appeal,
Docket No. 40 (Feb. 24, 2026).................................................... 12

District Court Order,
Docket No. 38 (Feb. 12, 2026) ................................................... 14

District Court Memorandum Opinion,
Docket No. 37 (Feb. 12, 2026).................................................... 16

Declaration of Col. (Ret.) Ricky D. Buria,
Docket No. 20-1 (Jan. 22, 2026) ................................................ 45

Declaration of Paul J. Fishman,
Docket No. 2-6 (Jan. 12, 2026) .................................................. 48

Declaration of Samuel F. Callahan,
Docket No. 2-5 (Jan. 12, 2026) .................................................. 77

Notification from the Department of the Navy,
Docket No. 2-3 (Jan. 12, 2026) .................................................. 95

Letter of Censure,
Docket No. 2-2 (Jan. 12, 2026) .................................................. 98

Complaint,
Docket No. 1 (Jan. 12, 2026) .................................................... 102

### *1:26cv81, Kelly V. Hegseth Et Al*

US District Court Docket

United States District Court, District of Columbia

(Washington, DC)

**This case was retrieved on 03/16/2026**

## Header

| | |
|---|---|
| **Case Number:** 1:26cv81 | **Class Code:** Open |
| **Date Filed:** 01/12/2026 | **Statute:** 05:0706 |
| **Assigned To:** Judge Richard J. Leon | **Jury Demand:** None |
| **Nature of Suit:** Other Statutes - Administrative Procedure Act/Review or Appeal of Agency Decision (899) | **Demand Amount:** $0 |
| **Cause:** Judicial Review of Agency Actions | **NOS Description:** Other Statutes - Administrative Procedure Act/Review or Appeal of Agency Decision |
| **Lead Docket:** None | |
| **Other Docket:** USCA, 26-05070 | |
| **Jurisdiction:** U.S. Government Defendant | |

## Participants

### Litigants

Mark Kelly
United States Senator Representing the State of Arizona |
**Plaintiff**

### Attorneys

Benjamin Mizer
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave Nw
Washington D.C., DC  20001
USA
202-942-6106 Email:Benjamin.Mizer@arnoldporter.Com

Jeffrey Smith
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., Nw
Washington, DC  20001
USA
202-942-5115 Email:Jeffrey.Smith@arnoldporter.Com

PAUL JOSEPH FISHMAN
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
Arnold & Porter Kaye Scholer LLP
One Gateway Center Suite 1025
Newark, NJ  07102
USA
973-776-1900 Email:Paul.Fishman@arnoldporter.Com

Aaron Sobel
PRO HAC VICE;ATTORNEY TO BE NOTICED
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave Nw



| Litigants | Attorneys |
|---|---|
| | Washington D.C., DC  20001<br>USA<br>202-942-5833 Email:Aaron.Sobel@arnoldporter.Com |
| | Bonnie Devany<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave, Nw<br>Washington, DC  20001<br>USA<br>202-942-6834 Email:Bonnie.Devany@arnoldporter.Com |
| | Deborah A. Curtis<br>ATTORNEY TO BE NOTICED<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave., Nw<br>Washington, DC  20001<br>USA<br>202-942-5081 Email:Deborah.Curtis@arnoldporter.Com |
| | Samuel Francis Callahan<br>ATTORNEY TO BE NOTICED<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave, Nw<br>Washington, DC  20001<br>USA<br>(202) 942-5000 Email:Sam.Callahan@arnoldporter.Com |
| Pete Hegseth<br>in his Official Capacity as Secretary of Defense \|<br>**Defendant** | John Bailey<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DOJ-Civ<br>Civil 950 Pennsylvania Ave Nw Ste 3618<br>Washington, DC  20530<br>USA<br>202-514-6993 Email:John.Bailey@usdoj.Gov |
| U.S. Department of Defense<br>**Defendant** | John Bailey<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DOJ-Civ<br>Civil 950 Pennsylvania Ave Nw Ste 3618<br>Washington, DC  20530<br>USA<br>202-514-6993 Email:John.Bailey@usdoj.Gov |
| John C. Phelan<br>in his Official Capacity as Secretary of the Navy \|<br>**Defendant** | John Bailey<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DOJ-Civ<br>Civil 950 Pennsylvania Ave Nw Ste 3618<br>Washington, DC  20530<br>USA<br>202-514-6993 Email:John.Bailey@usdoj.Gov |
| U.S. Department of the Navy<br>**Defendant** | John Bailey<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>DOJ-Civ<br>Civil 950 Pennsylvania Ave Nw Ste 3618<br>Washington, DC  20530<br>USA<br>202-514-6993 Email:John.Bailey@usdoj.Gov |
| Former Service Secretaries<br>**Amicus** | Beau Tremitiere<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>PROTECT DEMOCRACY<br>300 Center Dr Suite G-251 |

JA 2

| Litigants | Attorneys |
|---|---|
| | Superior, CO  80027<br>USA<br>202-993-3672<br>Email:Beau.Tremitiere@protectdemocracy.Org<br><br>Kristy Parker<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>PROTECT DEMOCRACY<br>2020 Pennsylvania Avenue Nw Suite 163<br>Washington, DC  20006<br>USA<br>202-579-4582 Fax: 929-777-8428<br>Email:Kristy.Parker@protectdemocracy.Org<br><br>Lauren Elizabeth Groth<br>LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE<br>NOTICED<br>PROTECT DEMOCRACY PROJECT<br>300 Center Avenue Suite G-251 80205<br>Superior, CO  80027<br>USA<br>202-699-2571 Email:Groth.Lauren@gmail.Com<br><br>Christine Patricia Sun<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>STATES UNITED DEMOCRACY CENTER<br>95 Third Street 2nd Floor<br>San Francisco, CA  94103<br>USA<br>202-999-9305 Email:Christine@statesuniteddemocracy.Org<br><br>Joseph Andrew Boyle<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>STATES UNITED DEMOCRACY CENTER<br>45 Main Street Suite 320<br>Brooklyn, NY  11201<br>USA<br>202-999-9305 Email:Andrew@statesunited.Org<br><br>Maithreyi Ratakonda<br>PRO HAC VICE;ATTORNEY TO BE NOTICED<br>STATES UNITED DEMOCRACY CENTER<br>45 Main Street Suite 320<br>Brooklyn, NY  11201<br>USA<br>202-999-9305 Email:Mai@statesuniteddemocracy.Org |
| RETIRED SENIOR MILITARY OFFICIALS<br>**Amicus** | Beau Tremitiere<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>PROTECT DEMOCRACY<br>300 Center Dr Suite G-251<br>Superior, CO  80027<br>USA<br>202-993-3672<br>Email:Beau.Tremitiere@protectdemocracy.Org<br><br>Kristy Parker<br>LEAD ATTORNEY;ATTORNEY TO BE NOTICED<br>PROTECT DEMOCRACY<br>2020 Pennsylvania Avenue Nw Suite 163 |

JA 3

| Litigants | Attorneys |
|---|---|
| | Washington, DC  20006 |

Washington, DC  20006
USA
202-579-4582 Fax: 929-777-8428
Email:Kristy.Parker@protectdemocracy.Org

Lauren Elizabeth Groth
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
PROTECT DEMOCRACY PROJECT
300 Center Avenue Suite G-251 80205
Superior, CO  80027
USA
202-699-2571 Email:Groth.Lauren@gmail.Com

Christine Patricia Sun
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
95 Third Street 2nd Floor
San Francisco, CA  94103
USA
202-999-9305 Email:Christine@statesuniteddemocracy.Org

Joseph Andrew Boyle
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
45 Main Street Suite 320
Brooklyn, NY  11201
USA
202-999-9305 Email:Andrew@statesunited.Org

Maithreyi Ratakonda
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
45 Main Street Suite 320
Brooklyn, NY  11201
USA
202-999-9305 Email:Mai@statesuniteddemocracy.Org

**Vet Voice Foundation**
**Amicus**

Beau Tremitiere
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
PROTECT DEMOCRACY
300 Center Dr Suite G-251
Superior, CO  80027
USA
202-993-3672
Email:Beau.Tremitiere@protectdemocracy.Org

Kristy Parker
LEAD ATTORNEY;ATTORNEY TO BE NOTICED
PROTECT DEMOCRACY
2020 Pennsylvania Avenue Nw Suite 163
Washington, DC  20006
USA
202-579-4582 Fax: 929-777-8428
Email:Kristy.Parker@protectdemocracy.Org

Lauren Elizabeth Groth
LEAD ATTORNEY;PRO HAC VICE;ATTORNEY TO BE NOTICED
PROTECT DEMOCRACY PROJECT

Kelly V. Hegseth Et Al

## Litigants

## Attorneys

300 Center Avenue Suite G-251 80205
Superior, CO  80027
USA
202-699-2571 Email:Groth.Lauren@gmail.Com

Christine Patricia Sun
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
95 Third Street 2nd Floor
San Francisco, CA  94103
USA
202-999-9305 Email:Christine@statesuniteddemocracy.Org

Joseph Andrew Boyle
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
45 Main Street Suite 320
Brooklyn, NY  11201
USA
202-999-9305 Email:Andrew@statesunited.Org

Maithreyi Ratakonda
PRO HAC VICE;ATTORNEY TO BE NOTICED
STATES UNITED DEMOCRACY CENTER
45 Main Street Suite 320
Brooklyn, NY  11201
USA
202-999-9305 Email:Mai@statesuniteddemocracy.Org

## Proceedings

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 1 | 01/12/2026 | COMPLAINT  against PETE HEGSETH, JOHN PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY  ( Filing fee $ 405 receipt number ADCDC-12180058) filed by MARK KELLY. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Civil Cover Sheet, # 11 Summons, # 12 Summons, # 13 Summons, # 14 Summons, # 15 Summons, # 16 Summons)(Fishman, Paul) (Entered: 01/12/2026) | |
| 2 | 01/12/2026 | Emergency MOTION for Temporary Restraining Order , Preliminary Injunction, and Stay Under 5 U.S.C.  705 by MARK KELLY. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Text of Proposed Order)(Fishman, Paul). Added MOTION for Preliminary Injunction, MOTION to Stay on 1/12/2026 (znmw). (Entered: 01/12/2026) | |
| | 01/12/2026 | Case Assigned to Judge Richard J. Leon. (zjd) (Entered: 01/12/2026) | |
| 3 | 01/12/2026 | SUMMONS (6) Issued Electronically as to PETE HEGSETH, JOHN PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY, U.S. Attorney, and U.S. Attorney General. (Attachments: # 1 Notice and Consent) (zjd) (Entered: 01/12/2026) | |
| 4 | 01/12/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Benjamin C. Mizer,  Filing fee $ 100, receipt number ADCDC-12180530. Fee Status: Fee Paid. by MARK KELLY. (Attachments: | |

JA 5

Kelly V. Hegseth Et Al

| # | Date | Proceeding Text | Source |
|---|------|----------------|--------|
|  |  | # 1 Declaration, # 2 Certificate of Good Standing, # 3 [Proposed] Order Granting Admission PHV)(Callahan, Samuel) (Entered: 01/12/2026) |  |
| 5 | 01/12/2026 | NOTICE of Appearance by John Bailey on behalf of All Defendants (Bailey, John) (Main Document 5 replaced on 1/13/2026) (mg). (Entered: 01/12/2026) |  |
|  | 01/12/2026 | MINUTE ORDER. Regarding plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C.  705, it is hereby ORDERED that defendants shall file a response by no later than 10:00 AM on Thursday, January 15, 2026. The Court will hold a hearing on the motion on Thursday, January 15, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 01/12/2026. (lcrjl1) (Entered: 01/12/2026) |  |
| 6 | 01/14/2026 | NOTICE of Appearance by Paul Joseph Fishman on behalf of MARK KELLY (Fishman, Paul) (Entered: 01/14/2026) |  |
| 7 | 01/14/2026 | NOTICE of Appearance by Samuel Francis Callahan on behalf of MARK KELLY (Callahan, Samuel) (Entered: 01/14/2026) |  |
| 8 | 01/14/2026 | Joint MOTION for Scheduling Order  by MARK KELLY. (Attachments: # 1 Text of Proposed Order)(Fishman, Paul) (Entered: 01/14/2026) |  |
| 9 | 01/14/2026 | NOTICE of Appearance by Deborah A. Curtis on behalf of MARK KELLY (Curtis, Deborah) (Entered: 01/14/2026) |  |
|  | 01/14/2026 | MINUTE ORDER. It is hereby ORDERED that the motion hearing scheduled for Thursday, January 15, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon is converted to a status conference to discuss the parties' 8 Joint Motion for Scheduling Order. It is further ORDERED that the deadline for defendants' response to plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C.  705 is VACATED pending further order of the Court. SO ORDERED. Signed by Judge Richard J. Leon on 1/14/2026. (lcrjl1) (Entered: 01/14/2026) |  |
|  | 01/14/2026 | MINUTE ORDER. Upon consideration of the 4 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Benjamin C. Mizer be, and hereby is, admitted pro hac vice in this case. Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a) Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 1/14/2026. (lcrjl1) (Entered: 01/14/2026) |  |
| 10 | 01/15/2026 | NOTICE of Appearance by Benjamin Mizer on behalf of MARK KELLY (Mizer, Benjamin) (Entered: 01/15/2026) |  |
|  | 01/15/2026 | Minute Entry for Status Conference held on 1/15/2026 before Judge Richard J. Leon. Parties discussed posture of the case. The Court directs the parties to file a new proposed Scheduling Order by 1/16/2026. The Court will hold a hearing on Plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C.  705 on 1/28/2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. Court Reporter: Lisa Edwards. (zljn) (Entered: 01/15/2026) |  |
|  | 01/16/2026 | Set/Reset Deadlines: Proposed Schedule due by 1/16/2026 (zljn) (Entered: 01/16/2026) |  |
| 11 | 01/16/2026 | Joint MOTION for Scheduling Order  by MARK KELLY. (Attachments: # 1 Text of Proposed Order)(Fishman, Paul) (Entered: 01/16/2026) |  |

JA 6

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
|  | 01/16/2026 | MINUTE ORDER. Upon consideration of the parties' 11 Joint Motion for Scheduling Order, and consistent with the agreement reached at the status conference held January 15, 2026, it is hereby ORDERED that the motion is GRANTED. Plaintiff's 2 Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. 705 is CONVERTED to a Motion for Preliminary Injunction and Stay under 5 U.S.C. 705. Defendants shall file a response to plaintiff's motion no later than January 22, 2026, at 5:00 PM, and plaintiff shall file a reply to defendants' response no later than January 26, 2026, at 5:00 PM. The Court will hold a hearing on plaintiff's motion on January 28, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 1/16/2026. (lcrjl1) (Entered: 01/16/2026) |  |
| 12 | 01/20/2026 | NOTICE of Appearance by Kristy Parker on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Parker, Kristy) (Entered: 01/20/2026) |  |
| 13 | 01/20/2026 | Unopposed MOTION for Leave to File Amicus Brief in Support of Plaintiffs Motion for a Preliminary Injunction and Stay Under 5 U.S.C. 705 by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Parker, Kristy) (Entered: 01/20/2026) |  |
| 14 | 01/20/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC-12193578. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration of Jeffrey H. Smith, # 2 DC Bar - Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |  |
| 15 | 01/20/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Bonnie E. Devany, Filing fee $ 100, receipt number ADCDC-12193862. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration of Bonnie E. Devany, # 2 Texas Bar - Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |  |
| 16 | 01/20/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC-12193917. Fee Status: Fee Paid. by MARK KELLY. (Attachments: # 1 Declaration of Aaron X. Sobel, # 2 DC Bar - Certificate of Good Standing, # 3 Text of Proposed Order)(Callahan, Samuel) (Entered: 01/20/2026) |  |
|  | 01/21/2026 | NOTICE OF ERROR regarding 14 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC-12193578. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |  |
|  | 01/21/2026 | NOTICE OF ERROR regarding 15 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Bonnie E. Devany, Filing fee $ 100, receipt number ADCDC-12193862. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |  |
|  | 01/21/2026 | NOTICE OF ERROR regarding 16 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC-12193917. Fee Status: Fee Paid.. The following error(s) need correction: Declaration must have an original, ink signature. Please refile using the event Declaration. (mg) (Entered: 01/21/2026) |  |

JA 7

Kelly V. Hegseth Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| 17 | 01/21/2026 | DECLARATION of Jeffrey H. Smith in Support of Motion for Admission PRO HAC VICE by MARK KELLY re 14 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Jeffrey H. Smith, Filing fee $ 100, receipt number ADCDC-12193578. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) | |
| 18 | 01/21/2026 | DECLARATION of Bonnie Devany in Support of Motion for Admission PRO HAC VICE by MARK KELLY re 15 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Bonnie E. Devany,  Filing fee $ 100, receipt number ADCDC-12193862. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) | |
| 19 | 01/21/2026 | DECLARATION of Aaron X. Sobel in Support of Motion for Admission PRO HAC VICE by MARK KELLY re 16 MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Aaron X. Sobel, Filing fee $ 100, receipt number ADCDC-12193917. Fee Status: Fee Paid.. (Callahan, Samuel) (Entered: 01/21/2026) | |
| | 01/22/2026 | MINUTE ORDER. Upon consideration of the 13 Motion for Leave to File Brief of Amici Curiae, it is hereby ORDERED that the Motion is GRANTED. The amicus brief attached as Exhibit 1 to the 13 Motion is deemed filed with the Court upon entry of this order. SO ORDERED. Signed by Judge Richard J. Leon on 1/22/2026. (lcrjl1) (Entered: 01/22/2026) | |
| | 01/22/2026 | MINUTE ORDER. Upon consideration of the 14 15 16 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motions are GRANTED. It is further ORDERED that Jeffrey H. Smith, Bonnie E. Devany, and Aaron X. Sobel be, and hereby are, admitted pro hac vice in this case. Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 1/22/2026. (lcrjl1) (Entered: 01/22/2026) | |
| 20 | 01/22/2026 | RESPONSE re 2 Emergency MOTION for Temporary Restraining Order , Preliminary Injunction, and Stay Under 5 U.S.C.  705 MOTION for Preliminary Injunction MOTION to Stay  filed by PETE HEGSETH, JOHN C. PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY. (Attachments: # 1 Exhibit 1 - Buria Decl., # 2 Text of Proposed Order)(Bailey, John) (Entered: 01/22/2026) | |
| | 01/26/2026 | MINUTE ORDER. Due to inclement weather and scheduling conflicts with other matters, the preliminary injunction hearing currently scheduled for January 28, 2026 at 4:00 PM is hereby VACATED and CONTINUED to February 3, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 1/26/2026. (lcrjl1) (Entered: 01/26/2026) | |
| 21 | 01/26/2026 | REPLY to opposition to motion re 2 Motion for TRO,, Motion for Preliminary Injunction,, Motion to Stay, (REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND STAY UNDER 5 U.S.C.  705) filed by MARK KELLY. (Fishman, Paul) (Entered: 01/26/2026) | |
| 22 | 01/27/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Joseph Andrew Boyle,  Filing fee $ 100, receipt number ADCDC-12206172. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) | |
| 23 | 01/27/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Christine Sun,  Filing fee $ 100, receipt number ADCDC-12206193. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # | |

JA 8

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) | |
| 24 | 01/27/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Maithreyi Ratakonda,  Filing fee $ 100, receipt number ADCDC- 12206217. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) | |
| 25 | 01/27/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- Lauren Groth,  Filing fee $ 100, receipt number ADCDC- 12206314. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 01/27/2026) | |
| 26 | 01/30/2026 | NOTICE of Appearance by Jeffrey Smith on behalf of MARK KELLY (Smith, Jeffrey) (Entered: 01/30/2026) | |
| 27 | 01/30/2026 | NOTICE of Appearance by Bonnie Devany on behalf of MARK KELLY (Devany, Bonnie) (Entered: 01/30/2026) | |
| 28 | 02/02/2026 | NOTICE of Appearance by Aaron Sobel on behalf of MARK KELLY (Sobel, Aaron) (Entered: 02/02/2026) | |
| | 02/02/2026 | MINUTE ORDER. Upon consideration of the 22 23 24 25 Motions for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motions are GRANTED. It is further ORDERED that Joseph Andrew Boyle, Christine P. Sun, Maithreyi Ratakonda, and Lauren Groth be, and hereby are, admitted pro hac vice in this case. Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 2/2/2026. (lcrjl1) (Entered: 02/02/2026) | |
| 29 | 02/03/2026 | TRANSCRIPT OF STATUS CONFERENCE before Judge Richard J. Leon held on January 15, 2026; Page Numbers: 1-13. Date of Issuance: February 3, 2026. Court Reporter/Transcriber Lisa Edwards, Telephone number (202) 354-3269, Transcripts may be ordered by submitting the Transcript Order FormFor the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 2/24/2026. Redacted Transcript Deadline set for 3/6/2026. Release of Transcript Restriction set for 5/4/2026.(Edwards, Lisa) (Entered: 02/03/2026) | |
| | 02/03/2026 | Minute Entry for Motions Hearing held on 2/3/2026 before Judge Richard J. Leon. Oral arguments submitted on Plaintiff's Motion 2 for Preliminary Injunction and Stay under 5 U.S.C.  705. Court takes matter under advisement. Forthcoming Order. Court Reporter: Sonja Reeves. (zljn) (Entered: 02/03/2026) | |
| 30 | 02/04/2026 | TRANSCRIPT OF MOTION HEARING before Judge Richard J. Leon held on February 3, 2026; Page Numbers: 1-41. Court Reporter Sonja L. Reeves, RDR, CRR, Telephone number (202) 354-3246, Transcripts may be ordered by submitting the Transcript Order FormFor the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or | |

JA 9

Kelly V. Hegseth Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.NOTICE RE REDACTION OF TRANSCRIPTS: The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. Redaction Request due 2/25/2026. Redacted Transcript Deadline set for 3/7/2026. Release of Transcript Restriction set for 5/5/2026.(Reeves, Sonja) (Entered: 02/04/2026) | |
| 31 | 02/04/2026 | NOTICE of Appearance by Beau Tremitiere on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Tremitiere, Beau) (Entered: 02/04/2026) | |
| 32 | 02/04/2026 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name-Conor Gaffney,  Filing fee $ 100, receipt number ADCDC-12224805. Fee Status: Fee Paid. by Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Parker, Kristy) (Entered: 02/04/2026) | |
| 33 | 02/05/2026 | NOTICE of Appearance by Joseph Andrew Boyle on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Boyle, Joseph) (Entered: 02/05/2026) | |
| 34 | 02/05/2026 | NOTICE of Appearance by Christine Patricia Sun on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Sun, Christine) (Entered: 02/05/2026) | |
| 35 | 02/05/2026 | NOTICE of Appearance by Lauren Elizabeth Groth on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Groth, Lauren) (Entered: 02/05/2026) | |
| 36 | 02/06/2026 | NOTICE of Appearance by Maithreyi Ratakonda on behalf of Former Service Secretaries, Retired Senior Military Officers, Vet Voice Foundation (Ratakonda, Maithreyi) (Entered: 02/06/2026) | |
| | 02/09/2026 | MINUTE ORDER. Upon consideration of the 32 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the Motion is GRANTED. It is further ORDERED that Conor Gaffney be, and hereby is, admitted pro hac vice in this case. Counsel should register for e-filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 2/9/2026. (lcrjl1) (Entered: 02/09/2026) | |
| 37 | 02/12/2026 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 2/12/2026. (lcrjl1) (Entered: 02/12/2026) | |
| 38 | 02/12/2026 | ORDER. Consistent with the attached, plaintiff's 2 Motion for Preliminary Injunction and Stay is GRANTED in part. See Order for details. Signed by Judge Richard J. Leon on 2/12/2026. (lcrjl1) (Entered: 02/12/2026) | |
| | 02/12/2026 | Set/Reset Deadlines: Joint Status Report due by 3/14/2026 (zljn) (Entered: 02/12/2026) | |
| 39 | 02/17/2026 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: NON-PARTY MOTION to Dismiss. Reason(s): Filer is not a party to the case. (mg) (Entered: 02/19/2026) | |
| 40 | 02/24/2026 | NOTICE OF INTERLOCUTORY APPEAL as to 37 Order, Memorandum & Opinion, 38 Order, Preliminary Injunction by PETE HEGSETH, JOHN C. PHELAN, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF THE NAVY. Fee Status: No | |

JA 10

Kelly V. Hegseth Et Al

| # | Date | Proceeding Text | Source |
|---|------|-----------------|--------|
| | | Fee Paid. Parties have been notified. (Bailey, John) (Entered: 02/24/2026) | |
| 41 | 02/25/2026 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 40 Notice of Interlocutory Appeal,. (mg) (Entered: 02/25/2026) | |
| | 02/26/2026 | MINUTE ORDER re 39 Request for Leave to File Review. Leave to file is denied. The filer is not a party to this case. SO ORDERED. Signed by Judge Richard J. Leon on 2/26/2026. (lcrjl1) (Entered: 02/26/2026) | |
| 42 | 02/26/2026 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: NON-PARTY'S MOTION for Leave to File Amicus Brief. Reason(s): Filer is not a party to the case. (Attachments: # 1 Text of Proposed Order) (mg) (Entered: 03/05/2026) | |
| | 02/27/2026 | USCA Case Number 26-5070 for 40 Notice of Interlocutory Appeal, filed by U.S. DEPARTMENT OF DEFENSE, PETE HEGSETH, JOHN C. PHELAN, U.S. DEPARTMENT OF THE NAVY. (mg) (Entered: 02/27/2026) | |
| | 03/13/2026 | MINUTE ORDER re 42 Request for Leave to File Review. Leave to file is denied. The filer is not a party to this case. SO ORDERED. Signed by Judge Richard J. Leon on 3/13/2026. (lcrjl1) (Entered: 03/13/2026) | |

Copyright © LexisNexis CourtLink, Inc. All Rights Reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

**End of Document**

JA 11

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARK KELLY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:26-CV-00081 |
| PETE HEGSETH, *et al.*, | ) ) | |
| Defendants. | ) ) ) ) | |

## <u>DEFENDANTS' NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that all Defendants hereby appeal to the United States

Court of Appeals for the District of Columbia Circuit from this Court's February 12, 2026

Memorandum Opinion and Order.  *See* ECF Nos. 37, 38.


Dated: February 24, 2026                    Respectfully submitted,


                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            ERIC HAMILTON
                                            Deputy Assistant Attorney General

                                            JEAN LIN
                                            Special Litigation Counsel

                                            JOSEPH E. BORSON
                                            Assistant Branch Director


                                            */s/ John Bailey*
                                            JOHN BAILEY
                                            Counsel to the Assistant Attorney
                                            General
                                            United States Department of Justice
                                            Civil Division

# JA 12

950 Constitution Ave. NW
Washington, DC 20005
Phone: (202) 514-6993
Email: john.bailey@usdoj.gov

*Counsel for Defendants*

JA 13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 26-81 (RJL) |
| | ) |
| PETE HEGSETH, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER

February __12__ 2026 [Dkt. #2]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff Mark Kelly's [Dkt. #2] Motion for Preliminary Injunction

and Stay under 5 U.S.C. § 705 is **GRANTED** in part; and it is further

**ORDERED** that Defendants and their agents are preliminarily **ENJOINED** from

implementing, enforcing, or otherwise giving effect to the Secretarial Letter of Censure

dated January 5, 2026 and addressed to Plaintiff ("the Letter"); and it is further

**ORDERED** that Defendants and their agents are preliminarily **ENJOINED** from

implementing, enforcing, or otherwise giving effect to the Department of Navy's

Notification of Retirement Grade Determination Proceedings dated January 5, 2026 and

addressed to Plaintiff ("the Notification"); and it is further

1

# JA 14

**ORDERED** that Defendants; Defendants' officers, agents, servants, employees, and attorneys; and all other persons in active concert with Defendants are preliminarily **ENJOINED** from:

(1) taking any other action in reliance on the findings, determinations, or threats of additional criminal or administrative action contained in the Letter;

(2) taking any steps to place the Letter in Plaintiff's file;

(3) relying on the Letter, or on the findings or determinations made therein, in any military, agency, or criminal proceeding;

(4) taking any steps to revisit Plaintiff's grade determination; and

(5) adjusting Plaintiff's grade pursuant to the Letter or Notification; and it is further

**ORDERED** that the parties shall file a joint status report within 30 days proposing further proceedings in this case.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge

JA 15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 26-81 (RJL) |
| v. | ) |
| | ) |
| PETE HEGSETH, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION
February **12**, 2026 [Dkt. #2]

United States Senator Mark Kelly, a *retired* naval officer, has been censured by Secretary of Defense Pete Hegseth for voicing certain opinions on military actions and policy. In addition, he has been subjected to proceedings to possibly reduce his retirement rank and pay and threatened with criminal prosecution if he continues to speak out on these issues. Secretary Hegseth relies on the well-established doctrine that military servicemembers enjoy less vigorous First Amendment protections given the fundamental obligation for obedience and discipline in the armed forces. Unfortunately for Secretary Hegseth, no court has ever extended those principles to *retired* servicemembers, much less a retired servicemember serving in Congress and exercising oversight responsibility over the military. This Court will not be the first to do so!

Worse still, Secretary Hegseth contends that this Court is not yet competent to decide the issues in this case. He and his fellow Defendants argue that military personnel

1

# JA 16

decisions are exempt from judicial review and, in any event, that Senator Kelly should first be required to go through the military appeals process so the *military* can have the first crack at adjudicating his First Amendment rights. I disagree. This Court has all it needs to conclude that Defendants have trampled on Senator Kelly's First Amendment freedoms and threatened the constitutional liberties of millions of military retirees. After all, as Bob Dylan famously said, "You don't need a weatherman to know which way the wind blows."[1] To say the least, our retired veterans deserve more respect from their Government, and our Constitution demands they receive it!

Senator Kelly's First Amendment claim is not only justiciable; he is likely to succeed on the merits. He has also shown irreparable harm, and the balance of the equities fall decidedly in his favor. As such, his motion for a preliminary injunction on his First Amendment claim is hereby **GRANTED**.

**BACKGROUND**

## I.     Factual Background

Plaintiff Mark Kelly is a retired United States Navy Captain and a sitting United States Senator from Arizona. Compl. [Dkt. #1] ¶ 1. Senator Kelly has a highly decorated record of service to our Nation. He flew 39 combat missions as a naval aviator during the First Gulf War and four space shuttle flights for NASA. *Id.* ¶ 21. In 2011, he retired honorably as a Captain with multiple awards for heroic service and dedication to duty. *Id.* ¶¶ 22–25. As a retired officer, the Senator continues to receive pay and benefits

---

[1] Bob Dylan, *Subterranean Homesick Blues* (Columbia Recs., Mar. 8, 1965).

2

# JA 17

commensurate with his retirement grade. *See* 10 U.S.C. § 8323; Compl. ¶ 8. In 2020, he was elected to the United States Senate as a member of the Democratic Party. Compl. ¶ 25. He serves on the Senate Armed Services Committee, which oversees the Department of Defense. *Id.* ¶¶ 27–29. He also serves on the Senate Select Committee on Intelligence. *Id.* ¶ 27.

The Department of Defense and the Trump Administration more broadly have been involved in two recent controversies relating to military law and policy. In June 2025, President Trump began deploying National Guard troops to American cities including Washington, D.C.; Los Angeles; and Chicago. *Id.* ¶ 32. And in September 2025, the Trump Administration initiated a campaign of lethal strikes against alleged drug smuggling boats in the Pacific Ocean and Caribbean Sea. *Id.* ¶ 39. According to public reporting, one strike on September 2 involved a secondary strike to kill survivors clinging to the wreckage. *Id.* ¶ 41. These actions have generated substantial discussion in the media and within Congress. *Id.* ¶¶ 41–43.

On both topics, Senator Kelly has been openly critical of the Trump Administration. Regarding the deployment of National Guard troops, Senator Kelly, along with the entire Senate Democratic caucus, sent a letter to President Trump in June 2025 urging him to withdraw National Guard troops deployed to Los Angeles. *Id.* ¶ 34. In November and December 2025, Senator Kelly co-sponsored legislation and participated in Armed Services Committee hearings on the same topic. *Id.* ¶¶ 36–38. And regarding the boat strikes, he has demanded an investigation and publicly criticized the Trump Administration. *Id.* ¶¶ 43, 49. In a November 30 interview with CNN, Senator Kelly was

JA 18

asked if he agreed that "if there was a second strike to eliminate any survivors, that that constitutes a war crime?" He responded, "it seems to," and stated that he would have refused to carry out the order if he had received it. *Id.* ¶ 49.

On November 18, 2025, Senator Kelly appeared in a video with five other members of Congress (all members of the Democratic Party and veterans of the armed forces or intelligence services) stating that members of the armed forces "can refuse illegal orders." *Id.* ¶¶ 51–53. In the video, Senator Kelly identified himself as a Navy veteran: "I was a captain in the United States Navy." *Id.* ¶ 53. The group sought to "speak directly to members of the military." *Id.* Acknowledging the "enormous stress and pressure" facing servicemembers, the group argued that the Trump Administration was "pitting our uniformed military . . . [a]gainst American citizens." *Id.* "Right now," the group argued, "the threats to our Constitution aren't just coming from abroad, . . . [b]ut from right here at home." *Id.* Senator Kelly then stated, "Our laws are clear. You can refuse illegal orders." *Id.*

On November 24, the Department of Defense ("DOD") announced a review of "serious allegations of misconduct" against Senator Kelly, noting that the allegations may warrant "recall to active duty for court-martial proceedings or administrative measures." *Id.* ¶ 75. The next day, Secretary of Defense Pete Hegseth posted a memorandum he had sent to Secretary of the Navy John Phelan requesting a review of Senator Kelly's "potentially unlawful comments" by December 10. *Id.* ¶ 78. On December 11, news reports surfaced that Secretary Phelan had delivered his report to Secretary Hegseth. *Id.* ¶ 80. Lawyers for Senator Kelly sought confirmation of the probe and requested that

# JA 19

Secretary Phelan immediately stop any proceeding against Senator Kelly. *Id.* ¶ 81. They received no substantive response.

On January 5, 2026, Secretary Hegseth issued a Secretarial Letter of Censure against Senator Kelly. *See* Compl. Ex. F ("Letter") [Dkt. #1-6]. Secretary Hegseth found that "[b]etween June 2025 and December 2025, [Senator Kelly] engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations." *Id.* at 1. Secretary Hegseth concluded that Senator Kelly's statements undermined the chain of command, counseled disobedience to lawful orders, created confusion about duty, and brought discredit upon the Armed Forces. *Id.* at 1–2. Accordingly, the Secretary formally censured the Senator "for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer." *Id.* at 2. Secretary Hegseth also determined, based on his findings, that "good cause" existed to "reopen the determination of [Senator Kelly's] retired grade," and he directed the Secretary of the Navy to recommend "whether a reduction in grade is appropriate." *Id.* at 3. Secretary Hegseth further warned Senator Kelly that he may "subject [himself] to criminal prosecution or further administrative action" if he continued "to engage in conduct prejudicial to good order and discipline." *Id.* Senator Kelly may submit a "written rebuttal" to the Letter, but he has no "right to appeal." *Id.*

The same day, Senator Kelly received a letter from the Chief of Naval Personnel referring the Senator to retirement grade determination proceedings (hereinafter, "Retirement Grade Proceeding"). *See* Compl. Ex. G ("Notification") [Dkt. #1-7]. The

5

JA 20

Notification confirmed that Senator Kelly's "retirement paygrade will be revisited," with the sole "factual basis supporting [the] action" being the "Secretary of War letter of censure." *Id.* at 1. The Notification instructed Senator Kelly to respond "within 10 working days"—*i.e.*, by January 20—and advised that failure to respond would "constitute a waiver of these rights." *Id.*

On January 7, Senator Kelly's lawyers sent a letter to Secretary Hegseth arguing that the Letter and Retirement Grade Proceeding violated the Constitution and DOD's statutory authority. Compl. ¶ 109. The letter requested that the Secretary "halt immediately any further proceedings" pending judicial review. *Id.* ¶ 110. Counsel advised that if no substantive response was received by January 9, the Senator would take appropriate action. *Id.* DOD acknowledged receipt of the letter but, again, provided no substantive response.

## II.   Procedural Background

On January 12, Senator Kelly sued Secretary Hegseth, the DOD, Secretary Phelan, and the Department of the Navy (collectively, "Defendants") in this Court. *See* Compl. In his Complaint, Senator Kelly asserts six claims: (1) violation of the First Amendment; (2) violation of the Speech or Debate Clause; (3) violation of the Separation of Powers; (4) violation of Due Process; (5) violation of 10 U.S.C. § 1370; (6) agency action contrary to law in violation of the Administrative Procedure Act ("APA"); and (7) arbitrary and capricious agency action in violation of the APA. *Id.* ¶¶ 119–93. Alongside his Complaint, Senator Kelly filed an emergency motion for a temporary restraining order, preliminary injunction, and stay under 5 U.S.C. § 705. *See* Mot. [Dkt. #2]. Given the January 20

JA 21

deadline to respond to the Retirement Grade Proceeding, the Senator requested a ruling by January 16.

On January 14, the parties proposed an expedited briefing schedule. *See* Joint Mot. [Dkt. #8]. Senator Kelly agreed to convert his motion for a temporary restraining order to a motion for a preliminary injunction; Defendants in turn agreed to (a) delay Senator Kelly's deadline to respond to the Letter and Retirement Grade Proceeding to February 4 and (b) "refrain from relying in any way on the determinations in the Letter" until the Court resolves Senator Kelly's request for a preliminary injunction. *Id*. at 2. I held a status conference on January 15 where Defendants agreed to defer Senator Kelly's deadline to respond until February 16. *See* Joint Mot. [Dkt. #11]. I then converted Senator Kelly's motion for a temporary restraining order to a motion for preliminary injunction and ordered briefing deadlines. *See* Minute Order (Jan. 16, 2026).

Senator Kelly's motion has now been fully briefed. *See* Pl.'s Mem. in Supp. of Prelim. Inj. ("Kelly Br.") [Dkt. #2-1]; Defs.' Mem. in Opp'n to Pl.'s Mot. ("Defs.' Opp'n") [Dkt. #20]; Reply in Supp. of Pl.'s Mot. ("Kelly Reply") [Dkt. #21]. I held a hearing on Senator Kelly's motion on February 3, 2026. The motion is now ripe for review.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, Senator Kelly must show (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor";

7

JA 22

and (4) "an injunction is in the public interest." *Id.* at 20. "The balance-of-equities and public-interest factors merge if the government is the opposing party." *Glob. Health Council v. Trump*, 153 F.4th 1, 12 (D.C. Cir. 2025).

**ANALYSIS**

## I.   Likelihood of Success on the Merits

Although Senator Kelly brings seven claims, he "need only show a likelihood of success on one to obtain preliminary relief, provided the other preliminary-injunction factors are satisfied." *Am. Bar Ass'n v. U.S. Dep't of Just.*, 783 F. Supp. 3d 236, 242 (D.D.C. 2025). The "merits" on which Senator Kelly must show a likelihood of success "encompass not only substantive theories" but also "that the action is justiciable." *Gomez v. Trump*, 485 F. Supp. 3d 145, 169 (D.D.C. 2020) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). For the following reasons, I find that Senator Kelly has made the requisite showing both as to justiciability and as to the merits of his First Amendment claim. I therefore reserve judgment on Senator Kelly's other claims.

### A.   *Justiciability*

Defendants, not surprisingly, raise multiple justiciability issues that they argue bar judicial review of Senator Kelly's claims, including (i) that the challenged actions against Senator Kelly are nonjusticiable military personnel decisions; (ii) that Senator Kelly must first exhaust the internal administrative remedies available for military servicemembers before seeking judicial review; and (iii) that Senator Kelly's challenge to the Retirement Grade Proceeding is not yet ripe. Unfortunately for Defendants, none of these arguments

8

JA 23

pose any impediment to reaching the merits of Senator Kelly's First Amendment claim. How so?

### i. Availability of Judicial Review

"The justiciability of a claim is not a question of subject matter jurisdiction, but rather of the court's competence to address a particular claim." *Reilly v. Sec'y of Navy*, 12 F. Supp. 3d 125, 139 (D.D.C. 2014). Justiciability turns on the propriety "of the subject matter for judicial consideration," including "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)).

Speaking broadly, federal courts grant substantial deference to the military when it acts within its sphere of authority. *See Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301, 1302 (2022) (Kavanaugh, J., concurring). Courts are rightly wary of second-guessing "professional military judgments" as to "the composition, training, equipping, and control of a military force." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973). These kinds of discretionary personnel decisions regarding "who should be allowed to serve on active duty, and in what capacity" are typically nonjusticiable. *Fisher v. United States*, 402 F.3d 1167, 1180–81 (Fed. Cir. 2005) (en banc); *see also Caez v. United States*, 815 F. Supp. 2d 184, 188 n.4 (D.D.C. 2011); *Reilly*, 12 F. Supp. 3d at 138–40. After all, "judges are not given the task of running the military." *Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006) (cleaned up).

Military personnel decisions, however, are not *entirely* exempt from judicial review. For instance, courts generally hear constitutional claims arising from military personnel

9

JA 24

matters. *See Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) ("[C]ourts have shown no hesitation to review [military] cases in which a violation of the Constitution, statutes, or regulations is alleged."); *Brown v. Glines*, 444 U.S. 348, 349–53 (1980) (reviewing reserve officer's First Amendment challenge to Air Force regulation regarding circulation of petitions); *Emory v. Sec'y of Navy*, 819 F.2d 291, 334 (D.C. Cir. 1987) ("The military has not been exempted from constitutional provisions that protect the rights of individuals."). Likewise, while the underlying *merits* of military personnel decisions are typically left to the discretion of military leadership, *see Wilson v. James*, 139 F. Supp. 3d 410, 431 (D.D.C. 2015), courts may review challenges to "the *procedure* that the military employed in its decision making process," *Daniels v. United States*, 947 F. Supp. 2d 11, 21 (D.D.C. 2013) (emphasis added). In such cases, judicial review is limited to "whether the 'Secretary's decision making process was deficient, not whether his decision was correct.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)).

In short, "when a case presents an issue that is amenable to judicial resolution," as opposed to "controversies arising from the use of discretionary powers" or the exercise of professional military judgment, courts will not withhold jurisdiction. *Dilley*, 603 F.2d at 920. After all, "[i]t is the duty of the federal courts to inquire whether an action of a military agency conforms to the law." *Id.*[2]

---

[2] My colleagues and I have taken a similar approach in other cases stemming from discretionary Executive Branch decision-making. While courts generally may not review the underlying merits of a decision to grant or revoke a security clearance, we have held that "courts may hear 'constitutional claims arising from the clearance revocation process.'" *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 100

10

JA 25

Here, Senator Kelly's First Amendment claim presents a justiciable controversy! While the Senator disagrees with Secretary Hegseth on whether his speech *in fact* disrupted the chain of command, eroded confidence in leadership, or constituted conduct unbecoming an officer, Senator Kelly's legal arguments do not, at their core, challenge those underlying discretionary judgments. Rather, Senator Kelly contends that Defendants' choice to censure him because of his speech violates the First Amendment *regardless* of Secretary Hegseth's ultimate judgment as to the effect of that speech. In other words, Senator Kelly's claims do not require this Court to adjudicate the merits of discretionary military decisions but only to ask whether Defendants' action "conforms to the law." *Dilley*, 603 F.2d at 920. And in our constitutional republic, "it is emphatically the province and duty of the judicial department to say what the law is," not the military. *Marbury v. Madison*, 1 Cranch 137, 177 (1803). Accordingly, Senator Kelly's claims are "amenable to judicial resolution." *Dilley*, 603 F.2d at 920.

### ii. Exhaustion

As a rule of thumb, courts "should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures." *Bois v. Marsh*, 801 F.2d 462, 478 (D.C. Cir. 1986) (internal quotation marks omitted); *see also Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021) ("[A]n aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." (quoting

---

(D.D.C. 2025) (internal quotation marks omitted); *see also Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 141–45 (D.D.C. 2025); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of President*, 784 F. Supp. 3d 127, 147–50 (D.D.C. 2025); *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 37–38 (D.D.C. 2025).

JA 26

*Bois*, 801 F.2d at 468)). This requirement follows from the prudential rule that parties should "exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992).

However, the exhaustion doctrine is "subject to exceptions," even in the military context. *Bois*, 801 F.2d at 468. Courts first consider whether there is an express statutory exhaustion requirement. *McCarthy*, 503 U.S. at 144. If not, courts then assess whether to require exhaustion as a prudential matter. "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. Accordingly, courts will *not* require exhaustion where (1) requiring exhaustion "may occasion undue prejudice" or cause "irreparable harm"; (2) the administrative remedy may not provide "effective relief" because, for example, the agency "lacks institutional competence to resolve the particular type of issue presented"; or (3) exhaustion would likely be "futile" because "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146–48 (internal quotation marks omitted); *see also Bois*, 801 F.2d at 468.

As an initial matter, Congress has not "specifically mandate[d]" exhaustion here. *McCarthy*, 503 U.S. at 144. Defendants contend that 10 U.S.C. § 1552(a)(1), which provides for correction of "any military record" where "necessary to correct an error or remove an injustice," does so. However, while this statute allows Senator Kelly to petition for review of the Letter by the Board for Correction of Naval Records ("the Board"), it does *not* "specifically mandate[]" that Senator Kelly do so prior to seeking federal court

12

JA 27

review. *McCarthy*, 503 U.S. at 144. Indeed, our Circuit, in an unpublished opinion, agrees that this provision includes no *express* exhaustion requirement. *Ostrow v. Sec'y of Air Force*, 48 F.3d 562, at *2 (D.C. Cir. 1995) (per curiam). Moreover, Defendants have identified no statutory requirement that Senator Kelly complete the Retirement Grade Proceeding prior to seeking relief in federal court.

With Defendants unable to identify any *express* statutory exhaustion requirement, I turn to prudential exhaustion. And the exceptions here swallow the rule.

*First*, Senator Kelly would suffer "irreparable harm" if he were "unable to secure immediate judicial consideration of his claim." *McCarthy*, 503 U.S. at 147; *see also Bois*, 801 F.2d at 468. As explained further below, *see infra* Section II, the Senator faces retaliation for exercising his First Amendment liberties, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (cleaned up). Indeed, *Bois* specifically recognized—and in the military context no less—that "exhaustion might not be required if [plaintiff] were challenging her incarceration by the military *or the ongoing deprivation of some other liberty interest*." 801 F.2d at 468 (emphasis added). Here, Senator Kelly is alleging unconstitutional action by Defendants that directly threatens his First Amendment liberties. Accordingly, he is justified in seeking federal court review *before* exhausting his administrative remedies within the military. The irreparable harm done is reason enough to allow immediate judicial review.

*Second*, exhaustion is not required because the Board has no particular "institutional competence to resolve" the weighty constitutional issues presented in this case. *McCarthy*,

13

JA 28

503 U.S. at 147–48. While military boards may hear constitutional claims, *see Bois*, 801 F.2d at 467, they are ill-equipped to remedy ongoing First Amendment violations of the kind alleged by Senator Kelly, *cf. Schlesinger v. Councilman*, 420 U.S. 738, 759 (1975); *see also Comm. for GI Rts. v. Callaway*, 518 F.2d 466, 474 (D.C. Cir. 1975) ("[M]ilitary tribunals are not designed to handle actions . . . seeking declaratory and injunctive relief."). Moreover, "agency adjudications are generally ill suited" to address "standard questions of administrative and constitutional law, detached from considerations of agency policy." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 194–95 (2023) (internal quotation marks omitted). To say the least, those issues are in the wheelhouse of Article III courts, not military officials!

*Third*, the outcome of the administrative process would, in all likelihood, be a *fait accompli*! Secretary Hegseth issued the Letter censuring Senator Kelly. The Letter cannot be appealed, and it serves as the sole factual basis for the Retirement Grade Proceeding. If Senator Kelly chooses to petition the Board to "correct" his military record, the ultimate decision would still lie with the Secretary of the Navy and—according to Defendants— with Secretary Hegseth himself, regardless of the Board's input. *See* 10 U.S.C. § 1552(a)(1) (providing that "[t]he Secretary . . . may correct any military record"); Defs.' Opp'n at 36–37. The record thus suggests that any exhaustion would be "unnecessary." *See Comm. for GI Rts.*, 518 F.2d at 474 n.20. The same goes for the Retirement Grade Proceeding, where Secretary Hegseth again retains ultimate authority. *See* 10 U.S.C. § 1370; Defs.' Opp'n at 33. Therefore, exhaustion of military remedies offers no "real

14

# JA 29

possibility of adequate relief" and would "in all likelihood be futile." *Bois*, 801 F.2d at 468 (internal quotation marks omitted).

Any one of these circumstances alone would relieve Senator Kelly of the need to exhaust administrative remedies before seeking judicial review. But all three together constitute a very strong showing that he may seek judicial review *now*.

### iii. Ripeness

The ripeness doctrine speaks to "when a federal court can or should decide a case." *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012). Ripeness is partially "subsumed into the Article III requirement of standing," which requires a plaintiff to allege an injury-in-fact that is "imminent" or "certainly impending." *Id.* (internal quotation marks omitted). But even if a case is "constitutionally ripe," there may be "prudential reasons for refusing to exercise jurisdiction" when the "administrative process" has not yet "run its course." *Id.* (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). For instance, declining jurisdiction may allow "the challenging party to 'convince the agency to alter a tentative position,'" "provide[] the agency 'an opportunity to correct its own mistakes and to apply its expertise,'" and "solidify or simplify the factual context and narrow the legal issues at play." *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 740 F.2d 21, 30–31 (D.C. Cir. 1984)).

In assessing ripeness, the Court considers "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *In re Al-Nashiri*, 47 F.4th 820, 826 (D.C. Cir. 2022) (quoting *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015)). Both factors cut in Senator Kelly's favor here.

15

# JA 30

*First*, the issues presented are fit for immediate judicial review. The "fitness" prong asks "whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Cobell*, 802 F.3d at 21 (quoting *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 463–64 (D.C. Cir. 2006)). That test is satisfied. The issues presented—the extent of the First Amendment's application to retired servicemembers, and whether the Retirement Grade Proceeding constitutes First Amendment retaliation—are "purely legal." *Id.* And for purposes of deciding these constitutional questions, Defendants' actions are "sufficiently final." *Id.* After all, the Letter of Censure and Retirement Grade Proceeding rest entirely and exclusively on Senator Kelly's "public statements," which have been detailed at length in the Complaint. *See* Letter at 2; Notification at 1 ("The factual basis supporting this action is a Secretary of War letter of censure . . . ."). No "more concrete setting" is needed to adjudicate the fundamental First Amendment issues presented. *Cobell*, 802 F.3d at 21.

Still, Defendants argue that the case would benefit from a more developed factual record. How so? They do not say. For instance, Defendants do not point to any additional factual context needed to decide whether Senator Kelly's public statements are protected by the First Amendment. Instead, at the hearing, counsel for Defendants suggested that *Senator Kelly* may be permitted to submit his own evidence and argument to the Board. *See* Hr'g Tr. [Dkt. #30] at 17:12–17. But it remains a mystery how that would assist the Court in its consideration of the First Amendment issues at play here. Those issues have

16

JA 31

already "crystallized into a concrete legal dispute," *Al-Nashiri*, 47 F.4th at 826, and no further factual development is needed.

*Second*, "the hardship to the parties of withholding court consideration" is severe! *Id.* (quoting *Cobell*, 802 F.3d at 21). Senator Kelly faces punishment for speaking on public issues, including a proceeding that jeopardizes his retirement grade and pay. Where "First Amendment rights are implicated and arguably chilled by a 'credible threat of prosecution,'" courts are especially "reluctan[t] to require parties to subject themselves to enforcement proceedings" before seeking judicial review. *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010) (quoting *Chamber of Com. of U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995)); *cf. Axon*, 598 U.S. at 903 ("[B]eing subjected to unconstitutional agency authority . . . is a here-and-now injury." (internal quotation marks omitted)). Indeed, "denying prompt judicial review would impose a substantial hardship" on the Senator, forcing him to choose between "refraining from core political speech on the one hand" or risking a retirement grade reduction and even "criminal prosecution on the other." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167–68 (2014). Accordingly, given the "purely legal" constitutional problems raised by Defendants' actions and the attendant harm to Senator Kelly's First Amendment interests, the prudential ripeness factors are "easily satisfied here." *Id.* at 167.[3]

---

[3] Defendants also argue that the Letter of Censure and the Retirement Grade Proceeding are not final agency action subject to the APA. Because I conclude that Senator Kelly's First Amendment claim is justiciable, I need not also decide whether his APA claim is viable at this stage. *See Am. Bar Ass'n*, 783 F. Supp. 3d at 242.

JA 32

## B.   *First Amendment Retaliation*

Being safely assured that Senator Kelly raises a "strong likelihood" that his claims are justiciable, I now move to the merits. Senator Kelly advances two frameworks for First Amendment review: viewpoint discrimination and retaliation. Here, the retaliation framework fits like a glove.

The "First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech." *Lozman v. Riviera Beach*, 585 U.S. 87, 90 (2018). To demonstrate First Amendment retaliation, Senator Kelly must show (1) he "engaged in conduct protected under the First Amendment"; (2) Defendants "took some retaliatory action sufficient to deter a person of ordinary firmness in [his] position from speaking again"; and (3) there is "a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (internal quotation marks omitted).

### i.  Protected Speech

This case largely hinges on the first prong: whether Senator Kelly engaged in protected speech. Defendants boldly argue that Senator Kelly's speech was *unprotected*, citing to a line of precedent establishing that First Amendment protections are more limited in the military context. *See, e.g., Parker v. Levy*, 417 U.S. 733, 758 (1974). Senator Kelly understandably disagrees, arguing that Defendants cite to *no* authority extending *Parker* and its progeny to retired servicemembers as opposed to active-duty servicemembers. Based on a careful review of the law, I agree with Senator Kelly. How so?

18

JA 33

Well, let's start with the basics. Under ordinary First Amendment principles, the speech at issue here is unquestionably protected speech. Speech "on matters of public concern" lies at the core of First Amendment protection. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985)). This broad category includes speech on "any matter of political, social, or other concern to the community" or any "subject of general interest and of value and concern to the public." *Id.* at 453 (internal quotation marks omitted). It includes "opposition to national foreign policy," *Bond v. Floyd*, 385 U.S. 116, 132 (1966), and even "vehement, caustic, and . . . unpleasantly sharp attacks on government and public officials," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Here, the Letter of Censure identifies a "sustained pattern of public statements" including, primarily, the November 18 video in which Senator Kelly stated that members of the armed forces "can refuse illegal orders." Letter at 1. It also identifies the Senator's statements characterizing certain military orders as "unlawful" and criticizing military leadership. *Id.* Under any reading of the law, Senator Kelly's statements constitute "speech on matters of public concern" and are therefore "entitled to special protection." *Snyder*, 562 U.S. at 451–52.

Defendants rest their entire First Amendment defense on the argument that the more limited First Amendment protection for *active-duty* members of the military extends to a *retired* naval captain. To be sure, while soldiers "are not excluded from" the First Amendment's coverage, "the different character of the military community and of the military mission requires a different application of those protections." *Parker*, 417 U.S. at 758. From *Parker* onward, the Supreme Court has recognized that "[t]he fundamental

19

JA 34

necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." *Id.*; *see also Brown v. Glines*, 444 U.S. 348, 357 (1980); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Therefore, given the countervailing interests at stake in the line of duty, "speech by a member of the military that undermines the chain of command, and the obedience, order, and discipline it is designed to ensure, does not receive First Amendment protection." *Wilson v. James*, 139 F. Supp. 3d 410, 426 (D.D.C. 2015); *see also Millican v. United States*, 744 F. Supp. 2d 296, 307–08 (D.D.C. 2010); *United States v. Wilcox*, 66 M.J. 442, 446–47 (C.A.A.F. 2008) (noting that the First Amendment protects speech in the military unless the speech "interferes with or prevents the orderly accomplishment of the mission or presents a clear danger to loyalty, discipline, mission, or morale of the troops").

However, the cases in this area uniformly involve *active-duty* servicemembers or speech on military bases. *See Parker*, 417 U.S. at 761 (upholding court-martial of active-duty captain who encouraged soldiers at his base to refuse to fight in the Vietnam War); *Brown*, 444 U.S. at 357–58 (upholding regulations on circulating petitions criticizing military policy); *Goldman*, 475 U.S. at 509–10 (rejecting First Amendment challenge to Air Force dress code by active-duty officer); *Wilson*, 139 F. Supp. 3d at 426 (upholding censure of enlisted National Guard member for emails regarding same-sex marriage); *Millican*, 744 F. Supp. 3d at 307–08 (upholding discipline of reserve active-status officer for urging squadron members to disregard orders). While *retired* servicemembers have an "ongoing duty to obey military orders" and may be recalled to active duty, *see Wilson v.*

20

JA 35

*Curtis*, 150 F.4th 1359, 1365 (10th Cir. 2025), Defendants have not identified a single case extending *Parker*'s reasoning outside the context of active-duty soldiers.[4]

This makes sense. Active-duty soldiers operate in "a specialized society separate from civilian society," where the "law is that of obedience," lest the military's critical mission of maximum effectiveness and lethality be undermined. *Parker*, 417 U.S. at 743–44 (internal quotation marks omitted). As such, active-duty soldiers urging others to "disregard orders" or "calling into question a commander's credibility" may directly "undermine the effectiveness of response to command." *Millican*, 744 F. Supp. 2d at 307 (quoting *Parker*, 417 U.S. at 759). The military therefore has a "legitimate interest in prohibiting [such] conduct to promote discipline and uphold order among its members." *Id.*

The same rationale does not hold true for retired servicemembers—and certainly not those in Senator Kelly's position. While still members of the military community, retired servicemembers are also part of the "civilian community" and are not fully immersed in the "specialized society" of the active armed forces. *Parker*, 417 U.S. at 743. Speech from retired servicemembers—even speech opining on the lawfulness of military operations—does *not* threaten "obedience, unity, commitment, and esprit de corps" in the

---

[4] Defendants uncovered *one* case involving punishment against a military retiree for speech: *Closson v. U.S. ex rel. Armes*, 7 App. D.C. 460 (D.C. Cir. 1896). *Closson* involved a habeas petition from a retired U.S. Army captain who was arrested and subjected to court-martial after sending a "letter of an offensive character" to a high-ranking general. *Id.* at 461. However, the petition challenged only the manner of the retiree's arrest and conditions of confinement. *Id.* at 472–77. The retiree did not assert, and our Circuit did not analyze, any violation of the First Amendment. Indeed, the content of the letter is barely discussed. *Id.* at 477. Given the lack of First Amendment analysis—not to mention the case's vintage, predating most applicable First Amendment precedent on protected speech—I find *Closson* unpersuasive and inapplicable.

21

JA 36

same way as speech from active-duty soldiers. *Goldman*, 475 U.S. at 507. Nor can speech from retired servicemembers "undermine the effectiveness of response to command" as directly as speech from active-duty soldiers. *Parker*, 417 U.S. at 759 (quoting *United States v. Priest*, 45 C.M.R. 338, 344 (1972)). As such, the military cannot claim the same "legitimate interest in prohibiting" speech by retired veterans. *Millican*, 744 F. Supp. 2d at 308.

As applied to a sitting Member of Congress, the *Parker* rule has even less force! Our system of "representative government *requires* that legislators be given the widest latitude to express their views on issues of policy." *Bond*, 385 U.S. at 135–36 (emphasis added). Legislators like Senator Kelly carry "an obligation to take positions on controversial political questions" both so their constituents may be "fully informed" as to the legislator's views and so constituents "may be represented in governmental debates by the person they have elected to represent them." *Id.* at 136–37; *cf. Whitney v. California*, 274 U.S. 357, 375 (1927) (Brandeis, J., concurring) ("public discussion is a political duty"). Indeed, if legislators do *not* feel free to express their views and the views of their constituents without fear of reprisal by the Executive, our representative system of Government cannot function! Between the lack of precedent extending *Parker* outside the context of active-duty military and the heightened free speech protection for legislators, Senator Kelly's speech *must* receive full First Amendment protection.

Defendants respond that Senator Kelly is seeking to exempt himself from the rules of military justice that "Congress has expressly made applicable to retired servicemembers." Defs.' Opp'n at 1. Horsefeathers! While Congress has chosen to apply

22

JA 37

the Uniform Code of Military Justice to military retirees as well as active-duty servicemembers, *see* 10 U.S.C. § 802(a)(4), that choice has little bearing on the scope of First Amendment protections for retirees. The First Amendment "is a limitation on the power of Congress," *NLRB v. Cath. Bishop of Chicago*, 440 U.S. 490, 499 (1979), not the other way around!

Without the benefit of *Parker*, Defendants have no other arguments for how Senator Kelly's speech is unprotected under the First Amendment.[5] As such, Senator Kelly has shown that he "engaged in conduct protected under the First Amendment," *Aref*, 833 F.3d at 258, thus satisfying the first prong of the retaliation framework.

### ii.  Retaliatory Action

The next factor of the retaliation test is whether Defendants took retaliatory action against Senator Kelly sufficient to deter "a person of ordinary firmness." *Aref*, 833 F.3d at 258. The "bar is not a high one," *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 95 n.7 (D.D.C. 2025), and Defendants' actions here clearly pass the bar. The Letter of Censure, which is placed in Senator Kelly's military personnel file and may be used in future administrative actions, formally censures Senator Kelly for his speech and reopens the determination of his retired grade. Letter at 2–3; Kelly Br. at 17 (citing *Manual of the Judge Advocate General*, JAGINST 5800.7G CH-2, § 0114A(b) (Dec. 1, 2023)). Further, the Letter threatens "criminal prosecution or further administrative action" should Senator

---

[5] Senator Kelly points out that the social media video does not fit into any other recognized category of unprotected speech, like incitement. *See* Kelly Br. at 14 (citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969)). Defendants do not press an incitement argument here—and for good reason. The video was not, in any meaningful sense, likely to produce "*imminent* lawless action." *Brandenburg*, 395 U.S. at 447 (emphasis added).

JA 38

Kelly "continue to engage in conduct prejudicial to good order and discipline"—that is, should Senator Kelly continue to engage in protected speech. Letter at 3. And the Retirement Grade Proceeding requires Senator Kelly to participate in an administrative process and threatens to dock Senator Kelly's rank and pay grade—concrete, tangible, and undoubtedly punitive measures. Notification at 1. Secretary Hegseth himself described the Retirement Grade Proceeding as a "serious administrative action that sends real signals that we take these things incredibly seriously." Compl. ¶ 114.

There is no question that such actions would deter "a person of ordinary firmness in plaintiff's position." *Aref*, 833 F.3d at 258. Indeed, they already have. Per an amicus brief submitted by forty-one retired officers, many veterans are today "declining" to "participate in public debate on important and contested issues" out of fear of "official reprisal." *See* Brief of *Amici Curiae* Former Service Secretaries, Retired Senior Military Officers, and Vet Voice Foundation ("Amicus Brief") [Dkt. #13-1] at 4. That is a troubling development in a free country! And whether Senator Kelly himself has *actually* been deterred is largely beside the point. *See Pinson v. U.S. Dep't of Just.*, 246 F. Supp. 3d 211, 224 (D.D.C. 2017) (noting that plaintiff's "actual response to a defendant's conduct is not dispositive" (internal quotation marks omitted)). That Senator Kelly may be an "unusually staunch individual" does not minimize his entitlement to be free from reprisal for exercising his First Amendment rights. *Id.*

# JA 39

### iii.  Causal Link

The final factor of the retaliation test is whether there is "a causal link" between the protected First Amendment activity and "the adverse action taken." *Aref*, 833 F.3d at 258. This factor cannot be disputed here. The Letter of Censure could hardly be clearer: it is censuring him for "engag[ing] in a sustained pattern of public statements" that criticized military operations as illegal and counseled military servicemembers to refuse illegal orders. Letter at 1. Thus, Senator Kelly was reprimanded for exercising his First Amendment right to speak on matters of public concern.

Because Senator Kelly has demonstrated a strong likelihood of success on his retaliation claim, I need not also decide whether Defendants' actions constitute viewpoint discrimination. But the analysis under this alternative theory would be just as straightforward.[6] Any way you slice it, Defendants' actions violate the First Amendment. Senator Kelly has thus demonstrated a strong likelihood of success on the merits warranting preliminary injunctive relief.

---

[6] Even under a viewpoint discrimination analysis, Defendants' actions would violate the First Amendment. Government regulation of speech based on the "opinion or perspective of the speaker" is presumptively unconstitutional. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). Such restrictions are justified only if they are "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). For the reasons described above, Senator Kelly's speech is fully protected under the First Amendment. *See supra* at Section II.B.i. And Defendants all but admit that Senator Kelly is being censured because of the "particular views taken" in his public comments. *Rosenberger*, 515 U.S. at 829. Indeed, the Letter states directly that Senator Kelly is being punished because he "characterized military operations as illegal," "counseled members of the Armed Forces to refuse orders related to those operations," "criticized military leadership," and "accuse[d] . . . senior military officers of war crimes." Letter at 1. That is viewpoint discrimination, plain and simple. And nowhere do Defendants begin to explain how the actions taken against Senator Kelly are "narrowly tailored" to achieve their intended purpose, *Reed*, 576 U.S. at 163, or "why counterspeech would not suffice" to achieve the same purpose, *United States v. Alvarez*, 567 U.S. 709, 726 (2012).

25

# JA 40

## II.    Irreparable Harm

Senator Kelly is suffering, and will suffer, immediate irreparable harm in the absence of injunctive relief.  Our Circuit has explained that "a prospective violation of a constitutional right constitutes irreparable injury for purposes of seeking equitable relief." *Karem v. Trump*, 960 F.3d 656, 667 (D.C. Cir. 2020) (cleaned up).  And the Supreme Court recently confirmed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (cleaned up); *see also Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) (retaliation in response to the exercise of First Amendment rights is "irreparable injury").  These First Amendment harms are irreparable because they "cannot be fully compensated by later damages." *Susman Godfrey LLP v. Exec. Off. of President*, 789 F. Supp. 3d 15, 56 (D.D.C. 2025) (internal quotation marks omitted).

By establishing a likelihood of success on his First Amendment retaliation claim, Senator Kelly has established that he "will suffer irreparable harm in the absence of preliminary relief." *Am. Bar Ass'n*, 783 F. Supp. 3d at 247.  Indeed, Senator Kelly has shown, through the Letter of Censure and the Retirement Grade Proceeding, that Defendants' actions "have already violated and continue to violate [his] First Amendment rights." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 385 (D.D.C. 2020).  "These current and anticipated harms are sufficient to demonstrate irreparable harm." *Id.*

Defendants' response is unavailing.  Defendants first cite to a handful of cases in our Circuit stating that courts should not "axiomatically" find irreparable harm when a plaintiff alleges a violation of constitutional rights. *See* Defs.' Opp'n at 38 (quoting *Hanson*

26

# JA 41

*v. Dist. of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024)); *see also id.* at 38–39 (citing *Ayele v. Dist. of Columbia*, 704 F. Supp. 3d 231, 239 (D.D.C. 2023); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). But none of those cases involved alleged abridgment of an individual's freedom of speech, much less First Amendment retaliation. *See Hanson*, 120 F.4th at 244 (Second Amendment); *Ayele*, 704 F. Supp. 3d at 240 (due process and equal protection); *Chaplaincy*, 454 F.3d at 302 (Establishment Clause).

Defendants also argue that Senator Kelly has pled himself out of irreparable injury by asserting that he "intends to continue to speak on matters of public concern" and "will not be silenced." Compl. ¶¶ 116, 118. Please! That is not the law. As Senator Kelly persuasively responds, Defendants' rule "would preclude intrepid speakers from ever showing irreparable First Amendment harm." Kelly Reply at 24. It is the *fact* of "[o]fficial reprisal for protected speech" that inflicts injury, *Hartman v. Moore*, 547 U.S. 250, 256 (2006), not whether that reprisal has its intended *effect* of silencing opposing views. Accordingly, this factor clearly favors injunctive relief.

## III.   Balance of Equities and the Public Interest

Finally, the balance of the equities and the public interest cut in Senator Kelly's favor. Where the Government is opposing injunctive relief, these factors "merge" and the court "weigh[s] the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined." *Doe v. Mattis*, 928 F.3d 1, 23 (D.C. Cir. 2019).

JA 42

Having demonstrated a strong likelihood of First Amendment retaliation, Senator Kelly has both the equities and the public interest on his side. Protecting the exercise of First Amendment freedoms is "always" in the public interest. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Indeed, "[t]he Constitution is the ultimate expression of the public interest," and therefore, "government actions in contravention of the Constitution are 'always contrary to the public interest.'" *Turner*, 502 F. Supp. 3d at 386 (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)). This is especially so where government actions threaten to chill core political speech, which is entitled to the highest First Amendment protection. *See Media Matters for Am.*, 138 F.4th at 585. Ultimately, "[r]etaliation against [Senator Kelly] . . . threatens retaliation against all." *Jenner & Block*, 784 F. Supp. 3d at 115.

More specifically, it is a particularly valuable asset for our country to have retired veterans contributing to public discussion on military matters and policy. Given their "distinct perspective and specialized expertise," it is essential for retired veterans to contribute to our "public discourse" on issues of military policy. Amicus Br. at 5. Allowing Defendants' actions against Senator Kelly to stand would further chill the speech of these retired servicemembers and thereby "impoverish public debate on critical issues relating to our military and its role in domestic and foreign affairs." *Id.*

Put simply, Defendants' response is anemic! They argue that injunctive relief would "interfere with the military's ability to maintain good order and discipline" and subject "routine mechanisms of military accountability" to "judicial veto." Defs.' Opp'n at 40. However, Defendants' argument runs up against our Nation's long tradition of retired

28

JA 43

service members, including those holding elected office, routinely contributing to the public discourse in ways critical of current military policy. *See* Kelly Reply at 5 (citing examples such as Alexander Hamilton denouncing President Adams's fitness to command during the Quasi-War and retired service members in Congress criticizing President Biden's withdrawal from Afghanistan). And to be sure, there is nothing "routine" about Defendants' actions here: punishing a sitting U.S. Senator for his views on military policy. Accordingly, Senator Kelly easily has the balance of the equities and the public interest on his side.

### CONCLUSION

Rather than trying to shrink the First Amendment liberties of retired servicemembers, Secretary Hegseth and his fellow Defendants might reflect and be grateful for the wisdom and expertise that retired servicemembers have brought to public discussions and debate on military matters in our Nation over the past 250 years. If so, they will more fully appreciate why the Founding Fathers made free speech the *first* Amendment in the Bill of Rights! Hopefully this injunction will in some small way help bring about a course correction in the Defense Department's approach to these issues.

For the foregoing reasons, Senator Kelly's motion for a preliminary injunction on his First Amendment claim is **GRANTED**.

RICHARD J. LEON
United States District Judge

29

# JA 44

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK KELLY,<br><br>    Plaintiff,<br><br>v.<br><br>PETE HEGSETH, *et al.*,<br><br>    Defendants. | Civil Action No. 1:26-cv-00081 |

**DECLARATION OF COL. (RET.) RICKY D. BURIA**

Pursuant to 28 U.S.C. § 1746, I, Col. (Ret.) Ricky D. Buria, declare as follows:

1.  I am employed as Chief of Staff to the Secretary of War.

2.  I have served in this position since December 2025. Previously, I served as a Senior Advisor to the Secretary of War from April 2025, until my appointment as Chief of Staff.

3.  In my current role, I am responsible for leading the Secretary of War's executive staff and providing counsel and advice to the Secretary on all matters concerning the Department. As part of my duties, I advise the Secretary on matters related to the Department's priorities, military activities and personnel, and Secretarial communications.

4.  I make this declaration in support of Defendants' opposition to Plaintiffs' motion for preliminary injunction and 5 U.S.C. § 705 Stay (ECF No. 2).

5.  Plaintiff is a retired Navy Captain and a sitting U.S. Senator.  In 2025, Plaintiff made a series of public statements on social media and in news interviews in which he criticized and

1

**JA 46**

questioned the legitimacy of specific U.S. military operations and directives and urged U.S. servicemembers to refuse to follow orders he characterized as unlawful.

6. Secretary of War Pete Hegseth reviewed Plaintiff's statements, and on January 5, 2026, the Secretary issued a Secretarial Letter of Censure ("Censure Letter") to Plaintiff based on the Secretary's determination that Plaintiff's statements constituted "a serious breach of the standards expected of officers in the United States Navy, even in retirement." Secretary Hegseth determined that Plaintiff's statements undermined respect for the military chain of command and encouraged servicemembers to refuse certain orders and disobey lawful command authority. In the Censure Letter, Secretary Hegseth also stated that "good cause exists to reopen the determination of [Plaintiff's] retired grade under the provisions of 10 U.S.C. § 1370" and directed the Secretary of the Navy to recommend "whether a reduction in grade is appropriate."

7. In the course of my duties, I reviewed Plaintiff's statements and assisted in preparing the Censure Letter. All of the statements relied upon in the Censure Letter were public statements that Plaintiff made on social media and in news interviews. None of the statements relied upon were made by Plaintiff as part of a legislative act, such as a speech on the Senate floor or participation in a Senate committee proceeding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 22th day of January, 2026.

_____
Ricky D. Buria
Chief of Staff, Secretary of War
Department of War

2

JA 47

# EXHIBIT E

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARK KELLY, United States Senator representing the State of Arizona, | |
| *Plaintiff,* | Case No. 26-cv-81 |
| v. | |
| PETE HEGSETH, in his official capacity as Secretary of Defense, *et al.*, | |
| *Defendants*. | |

**DECLARATION OF PAUL J. FISHMAN IN SUPPORT OF PLAINTIFF
SENATOR MARK KELLY'S MOTION FOR A TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND STAY UNDER 5 U.S.C. § 705**

JA 49

I, Paul J. Fishman, declare:

1.      I am an attorney at Arnold & Porter Kaye Scholer LLP. I am admitted to practice in this Court and I represent Plaintiff Senator Mark Kelly in the above-captioned litigation. I submit this declaration in support of Senator Kelly's Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705.  This declaration, which attests to communications with Defendants, is based on my personal knowledge.

2.      Exhibit 1 is a true and correct copy of a letter dated December 15, 2025, from me to Secretary of the Navy John Phelan. I transmitted this letter via email on December 15, 2025, 4:18 PM ET, to Captain Brent Troyan, Executive Assistant and Special Counsel to the Office of General Counsel of the Department of the Navy.

3.      Exhibit 2 is a true and correct copy of an email I received on December 15, 2025, at 4:47 PM ET, from Captain Troyan.

4.      Exhibit 3 is a true and correct copy of a letter dated December 18, 2025, from me to Secretary of Defense Pete Hegseth. I transmitted this letter via email on December 18, 2025, at 5:48 PM, to Earl G. Matthews, General Counsel of the Department of Defense.

5.      Exhibit 4 is a true and correct copy of an email I received on December 19, 2025, at 8:13 AM ET, from General Counsel Matthews.

6.      Exhibit 5 is a true and correct copy of a letter dated January 5, 2026, from Secretary Hegseth to Senator Mark E. Kelly. Although the document is addressed to Senator Mark E. Kelly, I received it via email on January 5, 2026, at 9:45 AM ET, from Colonel Anthony Fuscellaro, Executive Secretary of the Department of Defense.

7.      Exhibit 6 is a true and correct copy of a letter dated January 5, 2026, from the Chief of Naval Personnel J.J. Czerewko, with the subject line "NOTIFICATION OF RETIREMENT

2

JA 50

GRADE DETERMINATION PROCEEDINGS." Although the document is addressed to Senator Mark E. Kelly, I received it via email on January 5, 2026 at 12:12 PM ET, from Captain David A. Melson, Legal Counsel in the Judge Advocate General Corps.

8.      Exhibit 7 is a true and correct copy of a letter dated January 7, 2026, from me to Secretary Hegseth. I transmitted this letter via email on January 7, 2026, at 6:38 PM, to General Counsel Matthews and Colonel Fuscellaro.

9.      Exhibit 8 is a true and correct copy of an email that I received on January 8, 2026, at 8:21 AM, from General Counsel Matthews.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above is true and correct.

Executed in Newark, New Jersey, on January 12, 2026.

Respectfully submitted,

By:     */s/ Paul J. Fishman*
        Paul J. Fishman (DC Bar No. 449014)
        ARNOLD & PORTER KAYE SCHOLER LLP
        One Gateway Center
        Suite 1025
        Newark, NJ 07102
        (973) 776-1900
        paul.fishman@arnoldporter.com

        *Counsel for Plaintiff*

3

JA 51

# EXHIBIT E-1

# Arnold & Porter

December 15, 2025

**<u>BY EMAIL</u>**
Hon. John Phelan
Secretary of the Navy
1000 Navy Pentagon
Washington, DC  20350

Dear Mr. Secretary:

We represent Senator Mark Kelly.

On November 18, 2025, Senator Kelly and five other members of Congress posted a video in which they reiterated the duty of members of the armed forces to refuse illegal orders. Despite Secretary Hegseth's own repeated public articulation in 2016 of this same fundamental principle of military law, he directed you on November 25 to "review" Senator Kelly's "comments" and provide a "brief" by December 10. Secretary Hegseth's contemporaneous statements, as well as official statements from the Department of Defense, made clear that you were to consider recalling Senator Kelly to active duty for the purpose of a court-martial, and challenging the rank at which he retired.

We now understand from public reporting that you have completed your assignment and that you have submitted your brief to the Department of Defense's Office of General Counsel for "legal review and input."

To be clear: there is no legitimate basis for any type of proceeding against Senator Kelly, and any such effort would be unconstitutional and an extraordinary abuse of power. If the Executive Branch were to move forward in any forum—criminal, disciplinary, or administrative—we will take all appropriate legal action on Senator Kelly's behalf to halt the Administration's unprecedented and dangerous overreach.

Senator Kelly flew thirty-nine combat missions as a Naval Aviator and four space flights as a NASA astronaut. The people of Arizona have elected him twice as their United States Senator. He has dedicated his life and his career to defending our country and its Constitution. He will not stop doing so now.

Sincerely,

Paul J. Fishman

cc:    Earl G. Matthews, General Counsel, Department of Defense;
       Timothy Dill, Performing the Duties of the General Counsel, Department of the Navy

JA 53

# EXHIBIT E-2

| | |
|---|---|
| **From:** | Troyan, Brent E CAPT USN OGC WASH DC (USA) |
| **To:** | Fishman, Paul J. |
| **Cc:** | ██████████████████████████; Curtis, Deborah A.; Smith, Jeffrey H.; Mizer, Benjamin C. |
| **Subject:** | RE: Senator Mark Kelly |
| **Date:** | Monday, December 15, 2025 4:25:50 PM |
| **Attachments:** | image001.png |
| | smime.p7s |
| | ATT00001.txt |
| | ATT00002.htm |

Mr. Fishman,

I acknowledge receipt of your correspondence. Thank you.

Sincerely,
Brent


CAPT Brent Troyan, JAGC, USN

Executive Assistant and Special Counsel

Department of the Navy

Office of the General Counsel

Pentagon, Rm 4E782

Comm: ████████ / ███████████

NIPR: ██████████████ / ███████████████████████

SIPR: ████████████████████

CUI//PRVCY/LEGAL. PRIVACY SENSITIVE / ATTORNEY WORK PRODUCT. The information contained in this e-mail and/or accompanying documents was prepared and intended for the exclusive use of the individuals to whom it is addressed. It may contain information that is pre-decisional, privileged or protected from release under the Privacy Act, FOIA or other applicable laws. Do not disseminate this e-mail, or its contents, to anyone who does not have an official need for access, or without the express consent of the sender. If you are not the intended recipient, you are on notice that copying, disclosure or any distribution of this message, in any form, is prohibited. Any misuse or unauthorized disclosure can result in both civil and criminal penalties.

---

**From:** Fishman, Paul J. <Paul.Fishman@arnoldporter.com>
**Sent:** Monday, December 15, 2025 4:18 PM
**To:** Troyan, Brent E CAPT USN OGC WASH DC (USA) <████████████████████████>
**Cc:** ██████████████████████████; Curtis, Deborah A. <Deborah.Curtis@arnoldporter.com>; Smith, Jeffrey H. <Jeffrey.Smith@arnoldporter.com>; Mizer, Benjamin C. <Benjamin.Mizer@arnoldporter.com>
**Subject:** [Non-DoD Source] Senator Mark Kelly

Dear Captain Troyan:

I have attached a letter addressed to Secretary Phelan regarding our client, Senator Mark Kelly.  Please confirm receipt.

In addition, please address any correspondence regarding Senator Kelly to our attention.

JA 55

Best regards,

Paul J. Fishman

—————————
Paul J. Fishman
Partner | Bio



One Gateway Center | Suite 1025
Newark, NJ 07102
T: +1 973.776.1901 | M: +1 973.495.4884
Paul.Fishman@arnoldporter.com
www.arnoldporter.com | LinkedIn

| | | | | | | |

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

—————————
For more information about Arnold & Porter, click here:
http://www.arnoldporter.com

JA 56

# EXHIBIT E-3

# Arnold & Porter

December 18, 2025

**BY EMAIL**

Hon. Pete Hegseth
Secretary of Defense
1000 Defense Pentagon
Washington, DC  20301

Dear Mr. Secretary:

As your office is aware, we represent Senator Mark Kelly. We write regarding press reports that your office "is escalating the preliminary review of Captain Mark Kelly, USN (Ret.), to an official Command Investigation" regarding supposed "serious allegations of misconduct."

The investigation appears to be premised entirely on accurate statements of law that the Senator made in his capacity as a member of the Senate Armed Services Committee. The First Amendment plainly protects those statements, just as it would protect similar statements by other retired servicemembers. In addition, a command investigation of a sitting Member of Congress who is not subject to military command authority would breach numerous constitutional and statutory safeguards.

Disregarding those fundamental defects, your office elected to announce its intentions through the press without communicating with Senator Kelly or his counsel. Now that we are aware of those reports, we request that the Department immediately provide the following information:

1.  Has the Department in fact commenced a command investigation concerning Senator Kelly?

2.  If so, which official ordered the investigation and under what authority? Which command or office is conducting the investigation?

3.  What are the purported "serious allegations of misconduct" under investigation?

4.  On what basis does the Department claim to assert jurisdiction over Senator Kelly?

Please direct all further communications regarding this matter to our law firm. We look forward to your prompt reply.

Sincerely,

Paul J. Fishman

cc:   Earl G. Matthews, General Counsel, Department of Defense
      John C. Phelan, Secretary of the Navy

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave, NW  |  Washington, DC 20001-3743  |  www.arnoldporter.com

JA 58

# EXHIBIT E-4

 Outlook

---

Fw: Senator Mark Kelly

---

**From:** Matthews, Earl G HON (USA) < ▇▇▇▇▇▇▇▇ >
**Sent:** Friday, December 19, 2025 8:13:36 AM
**To:** Fishman, Paul J. <Paul.Fishman@arnoldporter.com>
**Cc:** Troyan, Brent E CAPT USN OGC WASH DC (USA) < ▇▇▇▇▇▇▇▇ >; Curtis, Deborah A.
<Deborah.Curtis@arnoldporter.com>; Smith, Jeffrey H. <Jeffrey.Smith@arnoldporter.com>; Mizer, Benjamin C.
<Benjamin.Mizer@arnoldporter.com>
**Subject:** RE: Senator Mark Kelly

Mr. Fishman:

Receipt confirmed.


Best,
Earl Matthews

Earl G. Matthews
General Counsel
Department of War

Office: 703-695-3341 (DSN 227)

NIPR: ▇▇▇▇▇▇▇▇
SIPR: ▇▇▇▇▇▇▇▇
JWICS: ▇▇▇▇▇▇▇▇

 *CAUTION: This message, including any attachments, may contain information that is protected by the attorney/client, attorney-work product, deliberative process, or other privileges. Do not disseminate further without approval from the Office of General Counsel, Department of Defense.*

---

**From:** Fishman, Paul J. <Paul.Fishman@arnoldporter.com>
**Sent:** Thursday, December 18, 2025 5:48 PM
**To:** Matthews, Earl G HON (USA) < ▇▇▇▇▇▇▇▇ >
**Cc:** Troyan, Brent E CAPT USN OGC WASH DC (USA) < ▇▇▇▇▇▇▇▇ >; Curtis, Deborah A.

JA 60

<Deborah.Curtis@arnoldporter.com>; Smith, Jeffrey H. <Jeffrey.Smith@arnoldporter.com>; Mizer, Benjamin C. <Benjamin.Mizer@arnoldporter.com>
**Subject:** Senator Mark Kelly

 You don't often get email from paul.fishman@arnoldporter.com. Learn why this is important
Daer Mr. Matthews:

I have attached a letter addressed to Secretary Hegseth regarding our client, Senator Mark Kelly. Please confirm receipt.

I am also copying Capt. Brent Troyan on this email so that he can transmit a copy to Secretary Phelan.

Please address any correspondence regarding Senator Kelly to our attention.

Best regards,

Paul J Fishman


_____

Paul J. Fishman
Partner | Bio

## Arnold&Porter

One Gateway Center | Suite 1025
Newark, NJ 07102
T: +1 973.776.1901 | M: +1 973.495.4884
Paul.Fishman@arnoldporter.com
www.arnoldporter.com | LinkedIn

---

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

_____

For more information about Arnold & Porter, click here:

http://www.arnoldporter.com

# EXHIBIT E-5



**SECRETARY OF WAR**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

JAN 0 5 2026

Captain Mark E. Kelly, USN (Ret)
c/o Arnold & Porter
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

ATTN: Mr. Paul J. Fishman, Esq.

### Re: Secretarial Letter of Censure

Dear Captain Kelly:

Pursuant to my authority as Secretary of War, I hereby issue this Secretarial Letter of Censure for conduct that I have determined to be prejudicial to good order and discipline in the Armed Forces of the United States, conduct which brings discredit upon the same and conduct unbecoming an officer.

Between June 2025 and December 2025, you engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations.

Additionally, on November 18, 2025, you participated in and distributed a video titled "Don't Give Up the Ship," in which you identified yourself as "a Captain in the United States Navy" and stated: "We want to speak directly to members of the military… This administration is pitting our uniformed military… against American citizens… You can refuse illegal orders. You must refuse illegal orders… Know we have your back… Stand up for our laws, for our Constitution."

On November 20, 2025, you issued a joint statement defending the video and reinforcing your call for refusal of what you characterized as "unlawful orders." On November 21 and 23, 2025, you criticized military leadership for "firing admirals and generals" and surrounding themselves with "yes men," asserting you would "ALWAYS defend the Constitution." On November 25, 2025, you stated that intimidation would not work and called your advice to refuse orders "non-controversial."

Throughout December 2025, you continued to accuse me and senior military officers of war crimes and to frame resistance to lawful orders as protecting against overreach.

It is my determination that your conduct:

JA 63

1. **Undermines the Chain of Command**: By publicly accusing the Secretary of War and senior military officers of war crimes and characterizing lawful operations as illegal, you have directly attacked the legitimacy of military leadership and the lawfulness of their orders.

2. **Counsels Disobedience**: By telling servicemembers they "can refuse illegal orders" and "must refuse illegal orders" in the context of operations you have specifically characterized as illegal, you have counseled members of the armed forces to refuse lawful orders related to National Guard deployments and counter-narcotics operations.

3. **Creates Confusion About Duty**: Your statements create confusion among servicemembers about their duty to obey lawful orders. When a retired officer with your credentials tells servicemembers that current operations constitute war crimes and illegal orders, it directly prejudices good order and discipline by encouraging servicemembers to second-guess lawful orders.

4. **Brings Discredit Upon the Armed Forces**: Your public accusations of war crimes and illegal conduct by military leadership bring discredit upon the armed forces by falsely portraying lawful military operations as criminal acts.

5. **Is Conduct Unbecoming an Officer**: By counseling servicemembers to refuse orders while simultaneously characterizing specific operations as illegal, you have engaged in conduct that seriously compromises your standing as an officer and brings dishonor to the officer corps.

When viewed in totality, your pattern of conduct demonstrates specific intent to counsel servicemembers to refuse lawful orders. This pattern demonstrates that you were not providing abstract legal education about the duty to refuse patently illegal orders. You were specifically counseling servicemembers to refuse particular operations that you have characterized as illegal.

Your conduct has had, and continues to have, a detrimental impact on military discipline and good order. When a retired officer with a previously distinguished service record and a current position of authority tells servicemembers that their appointed leaders are committing war crimes and that they must refuse orders, it: undermines trust in leadership; creates legal confusion; encourages insubordination; damages morale; and harms public confidence.

For the reasons stated above, I hereby formally CENSURE you for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer.

Your conduct represents a serious breach of the standards expected of officers in the United States Navy, even in retirement. Your use of your military rank and credentials to undermine lawful military operations and to counsel servicemembers to refuse lawful orders is incompatible with the trust and confidence placed in commissioned officers.

This Letter of Censure will be placed in your official military personnel file.

You have the right to submit a written rebuttal to this Letter of Censure within thirty (30) days of receipt. Any rebuttal you submit will be placed in your official military personnel file along with this Letter of Censure. However, you do not have a right to appeal this administrative action.

Additionally, for the reasons set forth above, I believe good cause exists to reopen the determination of your retired grade under the provisions of 10 U.S.C. §1370. Accordingly, I will direct the Secretary of the Navy to recommend to me whether a reduction in grade is appropriate in your case.

After receiving the Secretary of the Navy's recommendation, I will determine if a reduction is warranted. Any reduction in retired grade would result in a corresponding reduction in retired pay.

I remind you that, as a retired Naval officer, you remain subject to the Uniform Code of Military Justice. If you continue to engage in conduct prejudicial to good order and discipline, you may subject yourself to criminal prosecution or further administrative action. Your status as a sitting United States Senator does not exempt you from accountability for conduct that undermines good order and discipline in our Armed Forces.

JA 65

# EXHIBIT E-6

**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
701 SOUTH COURTHOUSE ROAD
ARLINGTON VA 22204-2472

1811
N00
5 Jan 26

From:  Chief of Naval Personnel
To:    CAPT Mark E. Kelly, USN (Ret)

Subj:  NOTIFICATION OF RETIREMENT GRADE DETERMINATION PROCEEDINGS

Ref:    (a) Title 10, U.S. Code, Section 1370
        (b) SECNAVINST 1920.6D
        (c) SECWAR ltr of 5 Jan 26

Encl:   (1) Retirement Grade Determination Acknowledgment of Rights Form

1.   In accordance with references (a) through (c), your retirement paygrade will be revisited under the provisions of paragraph 4(a) of enclosure (9) to reference (b).

2.   The factual basis supporting this action is a Secretary of War letter of censure, reference (c).

3.   The Secretary of the Navy will review the circumstances of reference (c) and make a recommendation to the Secretary of War on an appropriate retirement grade.

4.   The least favorable outcome in your case is that your separation is characterized as Honorable and that you are retired at an inferior pay grade.

5.   You may exercise or waive the following rights:

    (a) You may submit a statement (to include matters in mitigation), rebuttal, or decline to make a statement.

    (b) You may confer with appointed military counsel or civilian counsel at no expense to the government as provided in paragraph 3 of enclosure (10) to reference (b).

    (c) You may request copies of the materials that will be forwarded to the Secretary of the Navy to support his recommendation.

6.   Return enclosure (1) within 10 working days of the date of this letter.  Failure to respond shall constitute a waiver of these rights.

J. J. CZEREWKO

JA 67

DATE: _____

From: CAPT Mark E. Kelly, USN (Ret)
To:     Chief of Naval Personnel

Subj:  RETIREMENT GRADE DETERMINATION ACKNOWLEDGMENT OF RIGHTS

Ref:    (a) CHNAVPERS ltr 1811 N00 of 5 Jan 26

1.  ( ) I acknowledge receipt of reference (a) informing me of the pending retirement grade determination by the Secretary of the War via the Secretary of the Navy.

2.  ( ) I desire to make a statement (attached).  ( ) I do not desire to make a statement.

3.  My daytime telephone is                    .

4.  My official e-mail address is                    .

5.  My personal e-mail address is                    .

M. E. KELLY

JA 68

# EXHIBIT E-7

# Arnold & Porter

January 7, 2026

**<u>BY EMAIL</u>**

Hon. Pete Hegseth
Secretary of Defense
1000 Defense Pentagon
Washington, D.C. 20301

Dear Mr. Secretary:

We write on behalf of Senator Mark Kelly regarding your Secretarial Letter of Censure ("the Letter") dated January 5, 2026. That correspondence, though directed to Senator Kelly, is a chilling message to every retired member of the military: if you speak out, and say something that the President or the Secretary of Defense dislikes, you will be censured, threatened with a reduction in retirement grade, or even prosecuted. In other words, the clear implication of your Letter is that those in power will wield their authority to silence voices they find inconvenient— even when the speech is protected by the First Amendment. That warning is not just alarming; it is unconstitutional, as are the "determinations" the Letter recites about Senator Kelly; the "reopening" of his retirement it purports to initiate; and the threats of criminal prosecution it announces.

The Chief of Naval Personnel's Notification of Retirement Grade Determination Proceedings, also dated January 5, 2026—which rests on your Letter as its supposed "factual basis"— compounds the constitutional injury and is patently illegal. Neither you, nor the Department you head, can use bureaucratic might to punish and deter protected speech by a retired veteran, regardless of whether that person is a sitting United States Senator.

Accordingly, you must immediately rescind the Letter; direct the Chief of Naval Personnel to withdraw the Notification; and vacate and halt any other adverse actions against Senator Kelly. To be clear, neither you nor the Department should: (1) take any action to implement or give effect to the Letter's "determination[s]"; (2) make any effort to reopen the grade at which Senator Kelly retired; or (3) include or place the Letter in his military file. You should also withdraw your threat of criminal prosecution.

In addition, given the prospect of litigation or other disputes, we assume that the Department has already taken necessary steps to preserve all documents, electronically stored information, and other tangible materials that are potentially relevant to this matter. You should certainly reinforce that direction now.

JA 70

**Arnold&Porter**

January 7, 2026
Page 2

Please confirm in writing by close of business on January 9 that you have taken all of these steps. If we do not receive a response, we will assume that the Department is continuing to pursue its unconstitutional and unlawful actions, and we will proceed accordingly.

## I.    The Department's Actions Are Unconstitutional and Dangerous

The Letter itself—and the other Departmental actions it proposes, directs, contemplates, or threatens—violate the Constitution in at least four ways, exceed your and the Department's statutory authority, and defy the Administrative Procedure Act. Accordingly, there are compelling legal reasons that require you to halt immediately any further proceedings—and stay the effects of any further determinations, should you nevertheless proceed—pending judicial review. *See* 5 U.S.C. § 705.

First, as you must be aware, the First Amendment forbids the government, including its officials, from punishing or suppressing disfavored expression, *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024), and from retaliating against protected speech, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018). Yet the Letter makes clear that the only basis for your targeting Senator Kelly is his political speech on important public issues. Such discipline would, therefore, be unconstitutional for any former member of the military. Moreover, the Supreme Court made clear sixty years ago that the government cannot do what the Department attempts here: punish a legislator for his speech. *Bond v. Floyd*, 385 U.S. 116, 135-37 (1966).

The Department's actions also run roughshod over the Senator's immunity under both the Speech or Debate Clause and core separation-of-powers principles. The Speech or Debate Clause provides absolute immunity for legislative acts. U.S. Const. art. I, § 6, cl. 1. And the separation of powers provides additional protection against the Executive Branch's abusing its power to personally punish members of Congress for acts clearly within the scope of their duties. Here, the statements your Letter ascribes to Senator Kelly relate to his duties as a sitting Senator and member of the Senate Armed Services Committee.

The Letter's conclusions and directions also would deny Senator Kelly the Constitution's right to due process. Indeed, it is hard to imagine a more predetermined outcome of the grade determination you have ordered: the Letter announces your conclusion that Senator Kelly's protected speech "undermines the chain of command," "counsels disobedience," "creates confusion about duty," "brings discredit upon the Armed Forces," and is "unbecoming" of an officer. After such findings by the Secretary—no matter how baseless and unconstitutional they may be—any subsequent procedure for a new grade determination by an inferior officer would be a sham, precisely the kind of preordained decision-making the Due Process Clause forbids. In fact, the Constitution requires notice and a meaningful opportunity to be heard before the government considers whether to deprive Senator Kelly retroactively of the rank he earned with

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave, NW | Washington, DC 20001-3743 | **www.arnoldporter.com**

JA 71

**Arnold&Porter**

January 7, 2026
Page 3

his service. But you have already announced the verdict—and set the machinery in motion to implement it—without affording Senator Kelly the very procedures he fought to protect for all Americans.

The Department's actions also violate statutory limitations. The laws of the United States explicitly provide that officers "*shall* be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1), (3) (emphasis added); *see Spellissy v. United States*, 103 Fed. Cl. 274, 281 (2012). As your Letter admits, and as Senator Kelly's service records show, he retired as Captain with a "distinguished service record." Accordingly, he was "entitled" to retire at that grade. *Spellissy*, 103 Fed. Cl. at 281-82. There is no statute or regulation that provides the Department with the legal authority to do what your Letter directs: to "reopen" Senator Kelly's grade determination based on his post-retirement speech. And, for all of these reasons—and more—the Department's actions also violate the Administrative Procedure Act.

## II.    The Department Must Preserve All Relevant Records

Given the prospect of litigation or other disputes arising from this matter, we also write to reiterate the Department's fundamental obligation to preserve all documents, electronically stored information, and other tangible materials that are potentially relevant to this matter, including those that anyone in the Department, the White House, or executive agencies considered or reviewed in connection with Senator Kelly's speech, as well as all materials that may be exculpatory or relevant to potential defenses. *See* Fed. R. Civ. P. 37(e); *Brady v. Maryland*, 373 U.S. 83 (1963); R.C.M. 701(a)(6). Of course, the Department is also required by law to preserve all federal records in accordance with the Federal Records Act. *See* 44 U.S.C. § 3101; *Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991).

Without limitation, the Department's preservation obligations include maintaining the following categories of information:

1. **Communications**, in any form, including hard copy and electronic communications, emails, letters, memos, Signal messages, texts/SMS messages, instant messages/chats, direct messages, voicemail, video/voice messages, meeting chats, posts/comments, attachments, and all drafts, that may contain potentially relevant information to this matter.

    o    Personnel must immediately disable disappearing and auto-delete features on Signal or any other application with disappearing or auto-delete messages.

JA 72

**Arnold & Porter**

January 7, 2026
Page 4

- o  Do not delete or clear chats, uninstall the app, or replace or wipe any devices, whether government or personal, that may contain potentially relevant information to this matter.

2. **Policies, procedures, legal memoranda, manuals, advisories, white papers, or interpretive guidance** that relate in any way to the legal principles at issue in this matter or otherwise contain potentially relevant information.

3. **Doctrine, regulations, directives, manuals, and official guidance** promulgated by the Department or any military service that articulate, explain, or discuss the legal obligation to refuse unlawful orders or otherwise contain potentially relevant information to this matter.

4. **Associated metadata** sufficient to identify authorship, dissemination, and chronology of any of these records.

This preservation obligation applies to all relevant custodians; official systems, devices, and repositories, including but not limited to email systems, messaging platforms, shared drives, learning management systems; as well as relevant communications on personal devices.

Once again, please confirm in writing by January 9 that the Department has taken all appropriate preservation measures.

* * *

Senator Kelly earned his rank and retirement through years of sacrifice. He will continue to fight for the Constitution he has proudly defended his entire career.

Sincerely,

Paul J. Fishman

cc:    Hon. Earl G. Matthews, General Counsel, Department of Defense
       Hon. John C. Phelan, Secretary of the Navy

JA 73

# EXHIBIT E-8

 Outlook

**Fw: Senator Mark Kelly**

---

**From:** Matthews, Earl G HON (USA) < ██████████████ >
**Sent:** Thursday, January 8, 2026 8:21 AM
**To:** Fishman, Paul J. <Paul.Fishman@arnoldporter.com>; Fuscellaro, Anthony COL USARMY OSW SECWAR (USA)
< ████████ >
**Cc:** Curtis, Deborah A. <Deborah.Curtis@arnoldporter.com>; Mizer, Benjamin C.
<Benjamin.Mizer@arnoldporter.com>; Smith, Jeffrey H. <Jeffrey.Smith@arnoldporter.com>; Troyan, Brent E CAPT
USN OGC WASH DC (USA) < ████████████ >; Flynn, Shawn M SES (USA)
< ████████████ >; Nicholson, Brian P CIV OSD OGC (USA) ██████████████████ >
**Subject:** RE: Senator Mark Kelly

Mr. Fishman:

This email is to acknowledge receipt of your 7 January 2026 letter to Secretary Hegseth.  We will
preserve all relevant materials as required by law.  Thank You.


Regards,

Earl G. Matthews
General Counsel
Department of War

Office: 703-695-3341 (DSN 227)

NIPR: ██████████████
SIPR: ██████████████
JWICS: ██████████

*CAUTION: This message, including any attachments, may contain information that is
protected by the attorney/client, attorney-work product, deliberative process, or other
privileges. Do not disseminate further without approval from the Office of General
Counsel, Department of Defense.*

---

**From:** Fishman, Paul J. <Paul.Fishman@arnoldporter.com>
**Sent:** Wednesday, January 7, 2026 6:38 PM
**To:** Matthews, Earl G HON (USA) ██████████████ >; Fuscellaro, Anthony COL USARMY OSW
SECWAR (USA) < ████████████ >
**Cc:** Curtis, Deborah A. <Deborah.Curtis@arnoldporter.com>; Mizer, Benjamin C.
<Benjamin.Mizer@arnoldporter.com>; Smith, Jeffrey H. <Jeffrey.Smith@arnoldporter.com>; Troyan, Brent E CAPT

JA 75

USN OGC WASH DC (USA) ██████████ >

**Subject:** Senator Mark Kelly

You don't often get email from paul.fishman@arnoldporter.com. Learn why this is important

Mr. Matthews & Col. Fuscellaro:

On behalf of Senator Mark Kelly, I enclose a letter to Secretary Hegseth.

I have also copied Capt. Troyan for transmission of a copy to Secretary Phelan.

I would appreciate your confirming receipt.

Best regards,

_____

Paul J. Fishman

Partner | Bio

**Arnold&Porter**

One Gateway Center | Suite 1025

Newark, NJ 07102

T: +1 973.776.1901 | M: +1 973.495.4884

Paul.Fishman@arnoldporter.com

www.arnoldporter.com | LinkedIn

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter, click here:

http://www.arnoldporter.com

JA 76

# EXHIBIT D

JA 77

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARK KELLY, United States Senator representing the State of Arizona, | |
| *Plaintiff*, | Case No. 26-cv-81 |
| v. | |
| PETE HEGSETH, in his official capacity as Secretary of Defense, *et al.*, | |
| *Defendants*. | |

**DECLARATION OF SAMUEL F. CALLAHAN IN SUPPORT OF PLAINTIFF
SENATOR MARK KELLY'S MOTION FOR A TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND STAY UNDER 5 U.S.C. § 705**

JA 78

I, Samuel F. Callahan, declare:

1.      I am an attorney at Arnold & Porter Kaye Scholer LLP. I am admitted to practice in this Court and I represent Plaintiff Senator Mark Kelly in the above-captioned litigation. I submit this declaration in support of Senator Kelly's Motion for a Temporary Restraining Order, Preliminary Injunction, and Stay Under 5 U.S.C. § 705.  It is based on my personal knowledge and on information that has become available to me in the course of this representation.

2.      This declaration attests to relevant social media posts by Senator Kelly, by Defendants, and by other individuals and entities.

3.      Below are true and correct screenshots of social media posts from X and Truth Social that I have viewed. The links reflect the original form and manner in which I viewed these posts.

4.      On November 18, 2025, at 8:30 AM ET, Senator Elissa Slotkin posted the following video on X: Sen. Elissa Slotkin (@SenatorSlotkin), X (Nov. 18, 2025, at 08:30 ET), x.com/SenatorSlotkin/status/1990774492356902948 [perma.cc/8C37-HJLL]. Senator Mark Kelly reposted this video on his X account on the same day.



JA 79

5.      On November 19, 2025, at 4:19 PM ET, a White House social media account called "Rapid Response 47" posted the following video on X, depicting White House Deputy Chief of Staff Stephen Miller participating in a Fox News interview: Rapid Response 47 (@RapidResponse47), X (Nov. 19, 2025, at 16:19 ET), x.com/RapidResponse47/status/1991255078485835960?s=20 [perma.cc/UVN7-EUQ3].



# JA 80

6.      On November 20, 2025, at 9:08 AM ET, President Donald J. Trump posted the following on Truth Social: Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 ET), truthsocial.com/@realDonaldTrump/115582417825161974 [perma.cc/M6N2-U6GJ?type=image].



7.      On November 20, 2025, at 9:17 AM ET, President Trump posted the following on Truth Social: Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:17 ET), truthsocial.com/@realDonaldTrump/posts/115582451169685243 [perma.cc/RZ8F-B76X?type=image].



4

JA 81

8.      On November 20, 2025, at 10:21 AM ET, President Trump posted the following on Truth Social: Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 10:21 ET), truthsocial.com/@realDonaldTrump/posts/115582703277798715 [web.archive.org/web/2025121 4203221/https://truthsocial.com/@realDonaldTrump/posts/115582703277798715].



9.      It is my understanding that on November 21, 2025, President Trump reposted the following on Truth Social. It is my understanding that this post is no longer on President Trump's Truth Social page. The original post is available using a website service, the Internet Archive, which preserves historical snapshots of publicly available webpages as they existed at specific points in time. This particular screenshot was pulled from President Trump's Truth Social page as it appeared on November 21, 2025. It is the twentieth post available at this link: Donald Trump (@realDonaldTrump), Truth Social (Nov. 21, 2025), web.archive.org/web/20251121091506/ https://truthsocial.com/@realDonaldTrump.



5

# JA 82

10.     On November 20, 2025, at 6:39 PM ET, Senator Kelly posted the following on X: Senator Mark Kelly (@SenMarkKelly), X (Nov. 20, 2025, at 18:39 ET), x.com/SenMarkKelly/status/1991652720306958602 [perma.cc/V7GQ-HXSY].



11.     On November 22, 2025, at 11:18 PM ET, a White House social media account called "Rapid Response 47" posted the following on X: Rapid Response 47 (@RapidResponse47), X (Nov. 22, 2025, at 23:18 ET), x.com/RapidResponse47/status/1992447629641609327 [perma.cc/9ULY-D35J].



6

JA 83

12. On November 22, 2025, at 11:27 PM ET, President Trump posted the following on Truth Social: Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 22, 2025, at 23:27 ET), truthsocial.com/@realDonaldTrump/posts/115597116924552201 [perma.cc/V6XC-XKTZ?type= image].



**Donald J. Trump** @realDonaldTrump

MANY GREAT LEGAL SCHOLARS AGREE THAT THE DEMOCRAT TRAITORS THAT TOLD THE MILITARY TO DISOBEY MY ORDERS, AS PRESIDENT, HAVE COMMITTED A CRIME OF SERIOUS PROPORTION!

**9.99k** ReTruths   **36.7k** Likes                    Nov 22, 2025, 11:27 PM

7

13.    On November 23, 2025, at 3:16 PM ET, President Trump posted the following on Truth Social: Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), truthsocial.com/@realDonaldTrump/posts/115600849874066478 [perma.cc/AAP2-YMJ5?type= image].



8

JA 85

14.    On November 23, 2025, at 3:21 PM ET, President Trump posted the following on

Truth Social: Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET),

truthsocial.com/@realDonaldTrump/posts/115600871102876776 [perma.cc/MC8W-2S2D?type=

image].



9

JA 86

15.    On November 24, 2025, at 11:50 AM ET, the Department of Defense posted the following on X: Department of War (@DeptofWar), X (Nov. 24, 2025, at 11:50 ET), x.com/DeptofWar/status/1992999267967905905 [perma.cc/Y98G-HA4C].



# JA 87

16.    On November 24, 2025, at 12:27 PM ET, Secretary of Defense Pete Hegseth posted the following on X: Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 ET), x.com/PeteHegseth/status/1993008532187148582 [perma.cc/CUU8-9DPK].



**Pete Hegseth** ✔ 🔲
@PeteHegseth

The video made by the "Seditious Six" was despicable, reckless, and false. Encouraging our warriors to ignore the orders of their Commanders undermines every aspect of "good order and discipline." Their foolish screed sows doubt and confusion — which only puts our warriors in danger.

Five of the six individuals in that video do not fall under @DeptofWar jurisdiction (one is CIA and four are former military but not "retired", so they are no longer subject to UCMJ). However, Mark Kelly (retired Navy Commander) is still subject to UCMJ—and he knows that.

As was announced, the Department is reviewing his statements and actions, which were addressed directly to all troops while explicitly using his rank and service affiliation—lending the appearance of authority to his words. Kelly's conduct brings discredit upon the armed forces and will be addressed appropriately.

> **Department of War** 🇺🇸 ✔ @DeptofWar · Nov 24, 2025
> OFFICIAL STATEMENT:
>
> The Department of War has received serious allegations of misconduct against Captain Mark Kelly, USN (Ret.). In accordance with the Uniform Code of Military Justice, 10 U.S.C. § 688, and other applicable regulations, a thorough...
> Show more

Last edited 12:27 PM · Nov 24, 2025 · **6.5M** Views

💬 12K          🔁 17K          ♡ 74K          🔖 2.1K          ↥

11

JA 88

17.    On November 25, 2025, at 7:29 AM ET, Secretary Hegseth posted the following on X: Pete Hegseth (@PeteHegseth), X (Nov. 25, 2025, at 07:29 ET), x.com/petehegseth/status/1993295993321009570?s=46&t=lhrgkUkTYpdTXbRYJMY4mg [perma.cc/QFP4-MKQW].



JA 89

18.   On November 25, 2025, at 4:46 PM ET, the Department of Defense posted the following on X: Dep't of War (@DeptofWar), X (Nov. 25, 2025, at 16:46 ET), x.com/DeptofWar/status/1993436056008507865 [perma.cc/GKQ6-64YF].



# JA 90

19.    On December 16, 2025, at 9:35 PM ET, Secretary Hegseth posted the following on X:    Pete    Hegseth    (@PeteHegseth),    X    (Dec.    19,    2025,    at    21:35    ET), x.com/PeteHegseth/status/2001118961073639492 [perma.cc/PA4B-RXXG].



14

JA 91

20.     On January 5, 2026, at 9:50 AM ET, Secretary Hegseth's official account posted the following on X: Secretary of War Pete Hegseth (@SecWar), X (Jan. 5, 2026, at 09:50 ET), x.com/SecWar/status/2008189258528665898 [perma.cc/679E-92JM].



15

JA 92

21.     On January 7, 2026, at 2:40 PM ET, a Department of Defense account called "DOW Rapid Response" posted the following video on X: DOW Rapid Response (@DOWResponse), X (Jan. 7, 2026, at 14:40 ET), x.com/DOWResponse/status/2008987076293984706 [perma.cc/CSK4-RUEU].



16

JA 93

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above is true and correct.

Executed in Washington, D.C., on January 12, 2026.

Respectfully submitted,

By:    /s/ Samuel F. Callahan
Samuel F. Callahan (DC Bar No. 888314461)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave NW
Washington, DC 20001
(202) 942-6978
sam.callahan@arnoldporter.com

*Counsel for Plaintiff*

17

JA 94

# EXHIBIT B

JA 95

**DEPARTMENT OF THE NAVY**
CHIEF OF NAVAL PERSONNEL
701 SOUTH COURTHOUSE ROAD
ARLINGTON VA 22204-2472

1811
N00
5 Jan 26

From: Chief of Naval Personnel
To:   CAPT Mark E. Kelly, USN (Ret)

Subj:  NOTIFICATION OF RETIREMENT GRADE DETERMINATION PROCEEDINGS

Ref:   (a) Title 10, U.S. Code, Section 1370
       (b) SECNAVINST 1920.6D
       (c) SECWAR ltr of 5 Jan 26

Encl:  (1) Retirement Grade Determination Acknowledgment of Rights Form

1.  In accordance with references (a) through (c), your retirement paygrade will be revisited under the provisions of paragraph 4(a) of enclosure (9) to reference (b).

2.  The factual basis supporting this action is a Secretary of War letter of censure, reference (c).

3.  The Secretary of the Navy will review the circumstances of reference (c) and make a recommendation to the Secretary of War on an appropriate retirement grade.

4.  The least favorable outcome in your case is that your separation is characterized as Honorable and that you are retired at an inferior pay grade.

5.  You may exercise or waive the following rights:

    (a) You may submit a statement (to include matters in mitigation), rebuttal, or decline to make a statement.

    (b) You may confer with appointed military counsel or civilian counsel at no expense to the government as provided in paragraph 3 of enclosure (10) to reference (b).

    (c) You may request copies of the materials that will be forwarded to the Secretary of the Navy to support his recommendation.

6.  Return enclosure (1) within 10 working days of the date of this letter.  Failure to respond shall constitute a waiver of these rights.

J. J. CZEREWKO

JA 96

DATE: _____

From:  CAPT Mark E. Kelly, USN (Ret)
To:      Chief of Naval Personnel

Subj:   RETIREMENT GRADE DETERMINATION ACKNOWLEDGMENT OF RIGHTS

Ref:    (a) CHNAVPERS ltr 1811 N00 of 5 Jan 26

1.  ( ) I acknowledge receipt of reference (a) informing me of the pending retirement grade determination by the Secretary of the War via the Secretary of the Navy.

2.  ( ) I desire to make a statement (attached).  ( ) I do not desire to make a statement.

3.  My daytime telephone is                    .

4.  My official e-mail address is                    .

5.  My personal e-mail address is                    .


M. E. KELLY


JA 97

# EXHIBIT A



**SECRETARY OF WAR**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

JAN 0 5 2026

Captain Mark E. Kelly, USN (Ret)
c/o Arnold & Porter
601 Massachusetts Avenue, NW
Washington, DC 20001-3743

ATTN: Mr. Paul J. Fishman, Esq.

**Re: Secretarial Letter of Censure**

Dear Captain Kelly:

Pursuant to my authority as Secretary of War, I hereby issue this Secretarial Letter of Censure for conduct that I have determined to be prejudicial to good order and discipline in the Armed Forces of the United States, conduct which brings discredit upon the same and conduct unbecoming an officer.

Between June 2025 and December 2025, you engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations.

Additionally, on November 18, 2025, you participated in and distributed a video titled "Don't Give Up the Ship," in which you identified yourself as "a Captain in the United States Navy" and stated: "We want to speak directly to members of the military… This administration is pitting our uniformed military… against American citizens… You can refuse illegal orders. You must refuse illegal orders… Know we have your back… Stand up for our laws, for our Constitution."

On November 20, 2025, you issued a joint statement defending the video and reinforcing your call for refusal of what you characterized as "unlawful orders." On November 21 and 23, 2025, you criticized military leadership for "firing admirals and generals" and surrounding themselves with "yes men," asserting you would "ALWAYS defend the Constitution." On November 25, 2025, you stated that intimidation would not work and called your advice to refuse orders "non-controversial."

Throughout December 2025, you continued to accuse me and senior military officers of war crimes and to frame resistance to lawful orders as protecting against overreach.

It is my determination that your conduct:

JA 99

1.  **Undermines the Chain of Command**: By publicly accusing the Secretary of War and senior military officers of war crimes and characterizing lawful operations as illegal, you have directly attacked the legitimacy of military leadership and the lawfulness of their orders.

2.  **Counsels Disobedience**: By telling servicemembers they "can refuse illegal orders" and "must refuse illegal orders" in the context of operations you have specifically characterized as illegal, you have counseled members of the armed forces to refuse lawful orders related to National Guard deployments and counter-narcotics operations.

3.  **Creates Confusion About Duty**: Your statements create confusion among servicemembers about their duty to obey lawful orders. When a retired officer with your credentials tells servicemembers that current operations constitute war crimes and illegal orders, it directly prejudices good order and discipline by encouraging servicemembers to second-guess lawful orders.

4.  **Brings Discredit Upon the Armed Forces**: Your public accusations of war crimes and illegal conduct by military leadership bring discredit upon the armed forces by falsely portraying lawful military operations as criminal acts.

5.  **Is Conduct Unbecoming an Officer**: By counseling servicemembers to refuse orders while simultaneously characterizing specific operations as illegal, you have engaged in conduct that seriously compromises your standing as an officer and brings dishonor to the officer corps.

When viewed in totality, your pattern of conduct demonstrates specific intent to counsel servicemembers to refuse lawful orders. This pattern demonstrates that you were not providing abstract legal education about the duty to refuse patently illegal orders. You were specifically counseling servicemembers to refuse particular operations that you have characterized as illegal.

Your conduct has had, and continues to have, a detrimental impact on military discipline and good order. When a retired officer with a previously distinguished service record and a current position of authority tells servicemembers that their appointed leaders are committing war crimes and that they must refuse orders, it: undermines trust in leadership; creates legal confusion; encourages insubordination; damages morale; and harms public confidence.

For the reasons stated above, I hereby formally CENSURE you for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer.

Your conduct represents a serious breach of the standards expected of officers in the United States Navy, even in retirement. Your use of your military rank and credentials to undermine lawful military operations and to counsel servicemembers to refuse lawful orders is incompatible with the trust and confidence placed in commissioned officers.

JA 100

This Letter of Censure will be placed in your official military personnel file.

You have the right to submit a written rebuttal to this Letter of Censure within thirty (30) days of receipt. Any rebuttal you submit will be placed in your official military personnel file along with this Letter of Censure. However, you do not have a right to appeal this administrative action.

Additionally, for the reasons set forth above, I believe good cause exists to reopen the determination of your retired grade under the provisions of 10 U.S.C. §1370. Accordingly, I will direct the Secretary of the Navy to recommend to me whether a reduction in grade is appropriate in your case.

After receiving the Secretary of the Navy's recommendation, I will determine if a reduction is warranted. Any reduction in retired grade would result in a corresponding reduction in retired pay.

I remind you that, as a retired Naval officer, you remain subject to the Uniform Code of Military Justice. If you continue to engage in conduct prejudicial to good order and discipline, you may subject yourself to criminal prosecution or further administrative action. Your status as a sitting United States Senator does not exempt you from accountability for conduct that undermines good order and discipline in our Armed Forces.

JA 101

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARK KELLY, United States Senator
representing the State of Arizona,
120 Constitution Ave NE, Suite 516
Washington, D.C. 20002

*Plaintiff*,

v.

PETE HEGSETH, in his official capacity as
Secretary of Defense,
1600 Defense Pentagon
Washington, D.C. 20301

U.S. DEPARTMENT OF DEFENSE,
1600 Defense Pentagon
Washington, D.C. 20301

JOHN PHELAN, in his official capacity as
Secretary of the Navy,
1000 Navy Pentagon
Washington, D.C. 20350

U.S. DEPARTMENT OF THE NAVY,
1000 Navy Pentagon
Washington, D.C. 20350

*Defendants*.

**Case No.**_____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

JA 102

## INTRODUCTION

1.      Senator Mark Kelly is a retired Navy Captain, a sitting United States Senator, and a member of the Senate's Armed Services Committee and Select Committee on Intelligence. Since his election to represent Arizona in 2020, Senator Kelly's experience and expertise have made him a prominent and highly respected leader on issues related to national security, the military, and veterans affairs. Consistent with that role, he has made numerous public statements and taken other legislative action to address the appropriateness of the Trump Administration's deployment of troops and the National Guard; military strikes; the conduct of senior defense officials; and the legal obligations of servicemembers—all of which are significant matters of public concern squarely within the First Amendment's protections and the Senator's responsibilities under Article I of the Constitution to oversee the armed forces and intelligence community.

2.      Executive Branch leaders swiftly responded to these statements with extreme rhetoric and punitive retribution. In November 2025, when Senator Kelly and five other Members of Congress released a video reiterating servicemembers' longstanding and widely accepted legal obligation to disregard unlawful orders, President Trump and Secretary Hegseth publicly branded his statements as "sedition" and "treason," and warned that there would be consequences.

3.      The Department of Defense then followed with formal punishment. On January 5, Secretary Hegseth issued a "Secretarial Letter of Censure" declaring that Senator Kelly's public statements since June have "undermined the chain of command," "counseled disobedience," and constitute "conduct unbecoming an officer." At Secretary Hegseth's direction, and relying expressly and exclusively on that determination, the Department of the Navy then initiated proceedings to "reconsider"—that is, to reduce—the rank (or "grade") and pay at which Senator

2

# JA 103

Kelly retired nearly fifteen years ago. Secretary Hegseth's letter also threatened "criminal prosecution or further administrative action" if Senator Kelly continues to make similar statements.

4. Defendants' actions violate numerous constitutional guarantees and have no basis in statute. They should proceed no further.

5. The First Amendment forbids the government and its officials from punishing disfavored expression or retaliating against protected speech. That prohibition applies with particular force to legislators speaking on matters of public policy. As the Supreme Court held 60 years ago, the Constitution "requires that legislators be given the widest latitude to express their views on issues of policy," and the government may not recharacterize protected speech as supposed incitement in order to punish it. *Bond v. Floyd*, 385 U.S. 116, 135-36 (1966). The Secretary's letter makes clear on its face that he is disciplining Senator Kelly solely for the content and viewpoint of his political speech.

6. The Executive's actions also trample on protections the Constitution singles out as essential to legislative independence. It appears that never in our nation's history has the Executive Branch imposed military sanctions on a Member of Congress for engaging in disfavored political speech. Allowing that unprecedented step here would invert the constitutional structure by subordinating the Legislative Branch to executive discipline and chilling congressional oversight of the armed forces. Indeed, the topics described in Secretary Hegseth's letter involved quintessential legislative and oversight activity. The letter cites statements about foundational principles of military law and concerns about potential commission of war crimes—areas squarely within the legislative and oversight jurisdiction of the committees on which Senator Kelly serves. And the letter highlights Senator Kelly's criticism of the "firing of admirals and generals"— personnel decisions by Secretary Hegseth and other senior defense officials over whom those same

JA 104

committees exercise oversight and whose appointments are subject to the Senate's advice and consent. All of those topics, and Senator Kelly's statements about them, lie at the core of the Speech or Debate Clause and the long-recognized immunity for legislative acts.

7. The process that the Secretary of Defense has directed for reconsidering Senator Kelly's retirement grade also violates due process. Before that proceeding even began, the President publicly accused Senator Kelly of sedition and treason and demanded punishment. The Secretary himself has echoed those accusations, announced an investigation, and then issued a Letter of Censure that—not tentatively, but conclusively—determined that Senator Kelly's speech met the very criteria that the Department must consider when reducing retirement grade. The outcome of any subsequent "review" of Senator Kelly's grade—even assuming it could lawfully proceed—is foreordained. The Constitution does not permit the government to announce the verdict in advance and then subject Senator Kelly or anyone else to a nominal process designed only to fulfill it.

8. Nor does the statute cited by Secretary Hegseth provide any basis to conduct such a proceeding. Defendants invoke 10 U.S.C. § 1370, which governs the grade at which an officer is retired based on whether the officer "served on active duty satisfactorily." 10 U.S.C. § 1370(a)(1). Senator Kelly's "active duty" is over; he retired honorably as a Captain with a remarkable record of awards and commendations, and his retirement grade (and the pension to which he is therefore entitled) became final by operation of law at the time of his retirement more than fourteen years ago. Nothing in the statute authorizes the Department of Defense to reopen that determination based on post-retirement political speech—and if it did, it would raise serious constitutional concerns and subject all of the nation's retired veterans to an ever-present threat against their retirement.

JA 105

9.      If permitted to stand, the Secretary's censure and the grade-determination proceedings that he has directed will inflict immediate and irreparable harm. The censure, the grade-reduction process, and its inevitable outcome impose official punishment for protected speech, chill legislative oversight, and threaten reductions in rank and pay. Each of these actions also signals to retired service members and Members of Congress that criticism of the Executive's use of the armed forces may be met with retaliation through military channels. The Constitution does not leave such injuries to be remedied after the fact. Speech or Debate, First Amendment, separation-of-powers, and due-process protections must be vindicated at the outset, before the Senator is forced to submit to an unconstitutional and legally baseless proceeding.

10.      Senator Kelly therefore brings this complaint for declaratory and injunctive relief. Defendants' actions violate the First Amendment, the Speech or Debate Clause, the separation of powers, due process, 10 U.S.C. § 1370, and the Administrative Procedure Act.

11.      In particular, Senator Kelly respectfully asks this Court to declare the censure letter, reopening determination, retirement grade determination proceedings, and related actions unlawful and unconstitutional; to vacate those actions; to enjoin their enforcement; and to preserve the status of a coequal Congress and an apolitical military.

**JURISDICTION AND VENUE**

12.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, including the U.S. Constitution and the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*; 28 U.S.C. § 1651 (All Writs Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). The United States has waived its sovereign immunity. *See* 5 U.S.C. §§ 702, 704.

5

JA 106

13. This Court has authority to grant the requested relief, including pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 704-06; the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; Fed. R. Civ. P. 65; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers. *See, e.g.*, *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195-96 (2023).

14. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because this action seeks relief against federal agencies and officials acting in their official capacities; a substantial part of the events or omissions giving rise to the claim occurred in this district; and at least one defendant resides or "conducts his official duties" in this district. *Chin Young v. Esper*, 2019 WL 4247260, at *5 (D.D.C. Sept. 6, 2019) (quoting *Webster v. Mattis*, 279 F. Supp. 3d 14, 19 (D.D.C. 2017)).

## PARTIES

15. **Plaintiff Mark Kelly** is a United States Senator representing the State of Arizona. Senator Kelly retired from the U.S. Navy in 2011 as an O-6, Captain. He is a member of the United States Senate Committee on Armed Services and the Senate Select Committee on Intelligence, among other committees.

16. **Defendant Pete Hegseth** is the Secretary of Defense and is sued in his official capacity.

17. **Defendant the Department of Defense** is a Department of the Executive Branch of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 551(1).

18. **Defendant John Phelan** is the Secretary of the Navy and is sued in his official capacity.

19. **Defendant the Department of the Navy** is a branch of the Armed Services, a Department of the Executive Branch of the U.S. Government, and is an agency within the meaning of 5 U.S.C. § 551(1).

JA 107

## FACTUAL ALLEGATIONS

### A.    Senator Kelly's Military and Congressional Service

20.    Senator Kelly is a highly decorated veteran who served in the United States Navy as an officer and naval aviator, and as an astronaut for the National Aeronautics and Space Administration (NASA).

21.    In his 25 years of military service, Senator Kelly served in multiple deployments on the USS Midway, 39 combat missions during the First Gulf War as a naval aviator, and four space shuttle flights at NASA, including commanding the final flight of Endeavour.

22.    Senator Kelly's awards and decorations reflect exceptionally distinguished service and valor. For example, for his service, Senator Kelly received the Defense Superior Service Medal (with one oak leaf cluster); the Legion of Merit; the Distinguished Flying Cross (with one gold star in lieu of a second award); the Air Medal (with Combat "V" and three bronze service stars); the Navy Commendation Medal (with Combat "V" and one gold star); the Navy Achievement Medal; the NASA Exceptional Service Medal; and the NASA Space Flight Medal (with three bronze service stars). *See, e.g.*, Compilation of Select Military Awards (attached as Ex. A).[1]

23.    Senator Kelly's military honors speak for themselves, describing Senator Kelly's "heroic" and "meritorious achievement[s]," Ex. A at 1, 12-19; "perseverance in the face of tremendous personal danger," Ex. A at 12; and "devotion to duty" even "in the face of enemy fire," Ex. A at 15.

---

[1] *See also* NASA, *Biographical Data, Mark E. Kelly (Captain, USN)* (July 2011), nasa.gov/wp-content/uploads/2019/04/kelly_mark.pdf.

JA 108

24.     Senator Kelly retired from the U.S. Navy in 2011 as an O-6, Captain. His retirement grade is also an O-6, Captain, which was—and remains—the highest grade in which he honorably and satisfactorily served while on active duty.

25.     Since his election to the Senate in 2020, Senator Kelly's congressional work has consisted of significant engagement on military and national security issues, through both his committee service and related legislative efforts, across presidential administrations.[2]

26.     Those legislative efforts have included introducing the Brandon Act to expand access to confidential mental healthcare for servicemembers;[3] cosponsoring the Afghanistan War Commission Act of 2021;[4] and championing the CHIPS and Science Act of 2022 to secure the military supply chain for semiconductors and reduce reliance on foreign manufacturers.[5]

27.     Among his other committee assignments in the Senate, Senator Kelly serves as a member of both the Committee on Armed Services and the Select Committee on Intelligence.

28.     The Armed Services Committee has legislative and oversight jurisdiction over all matters pertaining to "[a]eronautical . . . activities peculiar to or primarily associated with . . . military operations," the "Common defense," and the "Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally."[6] The committee is therefore tasked with obligations such as ensuring implementation of and amending the Uniform Code of Military Justice ("UCMJ"). The committee also has

---

[2] *See*, *e.g.*, Press Release, Sen. Mark Kelly Statement on Afghanistan, kelly.senate.gov (Aug. 21, 2021), perma.cc/3AZ8-NUMQ (attributing the "rapidly deteriorating situation in Afghanistan" to the Biden Administration's "failure to prepare for a scenario where the Afghan government and military would refuse to fight the Taliban's advances").
[3] Brandon Act, S. 2088, 117th Cong. (2021).
[4] Afghanistan War Commission Act of 2021, S. 2922, 117th Cong. (2021).
[5] CHIPS and Science Act of 2022, Pub. L. No. 117-167, 136 Stat. 1366 (2022).
[6] Standing Rules of the Senate, S. Doc. No. 113-18, at 20, 113th Cong. (1st Sess. 2013) (Rule XXV, 1(c)(1).

JA 109

jurisdiction over all appointments to posts in the armed forces and Department of Defense that require Senate confirmation.[7]

29. The Select Committee on Intelligence oversees "the intelligence activities and programs of the United States government . . . to assure that such activities are in conformity with the Constitution and laws of the United States."[8] It exerts legislative and oversight authority over "proposed legislation, messages, petitions, memorials, and other matters relating to . . . [i]ntelligence activities of . . . the Department of Defense," among other agencies.[9]

30. Senator Kelly continues to be a prominent voice in the ongoing national debate and congressional oversight regarding the Administration's military actions.

**B.      The Trump Administration's Military Actions and Congressional Responses**

31. Over the last six months, the Administration has taken a series of military actions that have been the subject of intense public debate, as well as ongoing congressional oversight within the jurisdiction of the Senate and House Armed Services Committees and Select Committees on Intelligence, including congressional inquiries and investigations,[10] briefings,[11] hearings,[12] proposed legislation,[13] new restrictions on Department of Defense funding.[14] Senator Kelly, particularly as a member of those committees, has played an active role in those legislative activities.

---

[7] *See id.* at 43-44 (Rule XXXI, 1) (nominations by the President "shall . . . be referred to appropriate committees"); *id.* at 20 Rule XXV, 1(c)(1)(conferring jurisdiction over "all proposed legislation, messages, petitions, memorials, *and other matters* relating to . . . Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally." (emphasis added)).

[8] S. Res. 400, 94th Cong., 2d Sess. pmbl. (1976).

[9] S. Res. 400, 94th Cong., 2d Sess. § 3(a)(3) (1976).

[10] *See infra* ¶¶ 45, 48.

[11] *See infra* ¶ 44.

[12] *See infra* ¶ 37.

[13] *See infra* ¶¶ 35, 36, 38.

[14] *See infra* ¶ 47.

JA 110

### *(i)    National Guard Deployments*

32.    Beginning in June 2025, President Trump began deploying National Guard troops to cities across the country, including Washington, D.C.; Los Angeles, California; Portland, Oregon; and Chicago, Illinois.

33.    These deployments sparked litigation by states and local government across the country,[15] and federal courts in Tennessee, Oregon, Illinois, California, and the District of Columbia have issued emergency orders blocking the deployments.[16] The Supreme Court declined a stay application of the ruling that bars the Trump Administration from deploying National Guard troops in Illinois.[17]

34.    On June 14, 2025, Senator Kelly along with the entire Senate Democratic caucus sent a letter urging President Trump "to immediately withdraw all military personnel that have been deployed to Los Angeles unless their presence is explicitly requested by the Governor and local leaders."[18]

35.    Senator Kelly was one of 24 Senators who cosponsored the "Insurrection Act of 2025," which would restrict the President's authority to deploy national guard troops.[19]

---

[15] *E.g.*, *Illinois v. Trump*, 155 F.4th 929 (7th Cir. 2025); *Oregon v. Trump*, No. 25-6268 (9th Cir. 2025); *District of Columbia v. Trump*, No. 25-5418 (D.C. Cir. 2025); *Newsom v. Trump*, No. 25-3727 (9th Cir. 2025).

[16] *Illinois v. Trump*, 155 F.4th 929, 933 (7th Cir. 2025); *Oregon v. Trump*, 3:25-cv-01756 (D. Or. Oct. 4, 2025) (Dkt. 56); *District of Columbia v. Trump*, 1:25-cv-03005-JMC (D.D.C. Nov. 20, 2025) (Dkt. 89); *Newsom v. Trump*, 3:25-cv-04870 (N.D. Cal. June 12, 2025) (Dkt. 64); *Harris v. Lee*, No. 25-1461-I (Tenn. 12th Dist. Ch. Ct. Nov. 17, 2025), perma.cc/28J4-TSHT.

[17] *Trump v. Illinois*, 2025 WL 3715211 (U.S. Dec. 23, 2025).

[18] Letter from Sen. Alex Padilla to President Donald Trump (June 14, 2025), perma.cc/85Q5-LZ9N.

[19] Insurrection Act of 2025, S. 2070, 119th Cong. (2025).

## JA 111

36.     On November 7, 2025, Senator Kelly co-sponsored and introduced proposed legislation, the No Troops in Our Streets Act of 2025, which would enhance congressional authority to terminate National Guard deployments.[20]

37.     On December 11, 2025, Senator Kelly participated in a Senate Armed Services Committee hearing on the Administration's deployment of National Guard troops to U.S. cities.[21]

38.     That same day, Senator Kelly co-sponsored and introduced legislation—the Notification of Troop Involvement and Congressional Engagement (NOTICE) Act—that would require the President to notify Congress and provide a clear justification before deploying the National Guard for law enforcement purposes.[22]

### (ii)     Boat Strikes in the Caribbean Sea and Pacific Ocean

39.     The Administration also initiated a campaign of lethal strikes against boats that were allegedly being used to smuggle drugs. Between September 2, 2025, and November 15, 2025, the United States military engaged in 21 strikes on boats in the Caribbean Sea and Pacific Ocean, sinking 22 boats and claiming 83 casualties.[23]

40.     One strike in particular has been the subject of extensive public discussion, including among members of Congress.

41.     Specifically, on September 2, two survivors of a targeted civilian boat suspected of transporting drugs were reportedly observed via surveillance video clinging to the ship's wreckage, whereupon the commander directing the operation ordered a second strike, killing both

---

[20] No Troops in Our Streets Act of 2025, S. 3167, 119th Cong. (2025).

[21] David Klepper et al., *Senators Clash Over National Guard Deployments as Military Leaders Face Questions*, NBC Wash. (Dec. 11, 2025), perma.cc/D7A9-XBYZ?type=image.

[22] NOTICE Act, S. 3449, 119th Cong. (2025).

[23] Michael Rios et al., *A Timeline of US Strikes on Boats that have Killed 87*, CNN (Dec. 5, 2025), perma.cc/W697-JBFU.

survivors.[24] That reporting prompted robust discussion and debate about a possible violation of the laws of war.[25]

42.     Members of Congress from across the political spectrum, including Senator Kelly, have voiced grave concerns about the legality of the strikes on boats allegedly transporting narcotics, and about the September 2 incident in particular. For example, Democratic Senator Tim Kaine of Virginia maintained that, if the event occurred as reported, the double-tap strike "rises to the level of a war crime."[26] Republican Representative Mike Turner of Ohio, a member of the House Armed Service Committee, stated that it would be "an illegal act" that is "completely outside of anything that has been discussed with Congress."[27] And Republican Senator Rand Paul of Kentucky underscored that "there's a broad consensus that it's illegal to kill people who are clinging to wreckage."[28]

43.     Senator Kelly, as a member of the Senate Armed Services Committee, demanded an investigation into the strikes and made statements about them following the Washington Post's reporting.[29]

---

[24] Former JAGs Working Group, Statement of the "Former JAGs Working Group" on Media Reports of Pentagon "No Quarter" Orders in Caribbean Boat Strikes (Nov. 29, 2025), perma.cc/VW2N-AJYY.

[25] *See infra* n.**Error! Bookmark not defined.**.

[26] Kaia Hubbard, *Sen. Tim Kaine Says Reported Second Strike on Alleged Drug Boat "Rises to the Level of a War Crime if It's True"*, CBS News (Nov. 30, 2025), perma.cc/5S6J-V8LZ.

[27] *Transcript: Rep. Mike Turner on "Face the Nation with Margaret Brennan"*, CBS News (Nov. 30, 2025), perma.cc/YH4P-9E87.

[28] Caitlin Yilek, *Trump's Venezuela Boat Strikes Fuel War Crimes Allegations. Are They Legal?*, CBS News (Dec. 4, 2025), perma.cc/AY4N-HMA9.

[29] *Sen. Kelly on Venezuelan Boat Strikes Report*, CNN (Nov. 30, 2025), cnn.com/2025/11/30/politics/video/mark-kelly-venezuela-boat-strikes-vrtc; Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me," kelly.senate.gov (Dec. 1, 2025), perma.cc/28C6-YNZR.

JA 113

44.    On October 1, 2025, the Senate Committee on the Armed Services received briefing on the three September strikes.[30] Several Members said they were "disturbed" by what they saw in a briefing.[31] Separately, in a related briefing, "lawmakers from both sides of the aisle . . . condemned the decision and called for a bipartisan investigation of the early September strikes."[32]

45.    On October 6, the Committee requested that Secretary Hegseth provide them with "additional information" on the "legal and policy" justifications for the strikes, including "[a]ny written opinion issued by the Department of Justice's Office of Legal Counsel opining on the domestic or international legal basis for these operations and strikes."[33]

46.    On October 8, two Senators attempted to discharge a resolution to limit the Trump Administration's strikes.[34]

47.    The National Defense Authorization Act for Fiscal Year 2026 required that the Department of Defense "provide[] to the Committees on Armed Services of the House of Representatives and the Senate unedited video of strikes conducted against designated terrorist organizations in the area of responsibility of the United States Southern Command," or else lose one quarter of funds available for "operation and maintenance, defense-wide, and available for the Office of the Secretary of Defense for travel expenses."[35]

---

[30] Letter from Sen. Jack Reed, Ranking Member, Sen. Armed Services Comm., & Sen. Roger Wicker, Chairman, Sen. Armed Services Comm., to Pete Hegseth, Secr'y of Defense (Oct. 6, 2025), perma.cc/W799-GBSE.

[31] Solcyré Burga, *Democrats 'Deeply Disturbed' by Briefing on Caribbean Strike as Republicans Defend It*, Time (Dec. 4, 2025), perma.cc/L8J3-M8EU.

[32] *Id.*

[33] Letter from Sen. Jack Reed, Ranking Member, Sen. Armed Services Comm., & Sen. Roger Wicker, Chairman, Sen. Armed Services Comm., to Pete Hegseth, Secretary of Defense (Oct. 6, 2025), available at www.armed-services.senate.gov/imo/media/doc/wicker_reed_joint_letter_southcom_operations.pdf.

[34] S. J. Res. 83, 119th Cong. (2025-2026).

[35] National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 1052(5) (Dec. 18, 2025).

13

JA 114

48.     The Admiral in command of the September 2 operation—who authorized the second strike—and the Chairman of the Joint Chiefs were called to deliver briefings to various House and Senate Committees as part of ongoing oversight.[36]

49.     On November 30, Senator Kelly was interviewed on CNN about the September 2 strike. Senator Kelly was asked if he agreed that "if there was a second strike to eliminate any survivors, that that constitutes a war crime?"[37] Senator Kelly responded "it seems to." He was then asked "if you received that order, would you have carried it out?" Senator Kelly replied: "No."[38]

50.     On December 1, 2025, Senator Kelly made his views clear: "if there is anyone who needs to answer questions in public and under oath, it is Pete Hegseth."[39]

### C.      The Video From Members of Congress Regarding the Obligation to Disregard Unlawful Orders

51.     On November 18, Senator Kelly and five other members of Congress—Senator Elissa Slotkin and Representatives Jason Crow, Christopher Deluzio, Maggie Goodlander, and Chrissy Houlahan—posted a video titled "Don't Give Up The Ship."[40]

52.     Like Senator Kelly, the other five Members had distinguished careers in either the armed forces or the intelligence community, and each serves on either the House or Senate Armed Services Committee.

---

[36] NBC News, *Admiral Who Ordered Alleged Drug Boat Strike Briefs Lawmakers*, YouTube, (Dec. 2, 2023), www.youtube.com/watch?v=qez38yk3JjA.

[37] CNN, *Sen. Kelly on Venezuelan Boat Strikes Report*, YouTube (Nov. 30, 2025), https://www.youtube.com/shorts/llUIbNQWKjM.

[38] *Id.*

[39] Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me," kelly.senate.gov (Dec. 1, 2025), perma.cc/28C6-YNZR.

[40] Sen. Elissa Slotkin (@SenatorSlotkin), X (Nov. 18, 2025, at 08:30 ET), x.com/SenatorSlotkin/status/1990774492356902948, perma.cc/8C37-HJLL.

14

JA 115

53.     In that video, the Members stated:

SEN. SLOTKIN: I'm Senator Elissa Slotkin.
SEN. KELLY: I'm Senator Mark Kelly.
REP. DELUZIO: Representative Chris Deluzio.
REP. GOODLANDER: Congresswoman Maggie Goodlander.
REP. HOULAHAN: Representative Chrissy Houlahan.
REP. CROW: Congressman Jason Crow.
SEN. KELLY: I was a captain in the United States Navy.
SEN. SLOTKIN: Former CIA officer.
REP. DELUZIO: Former Navy.
REP. CROW: Former paratrooper and Army Ranger.
REP. GOODLANDER: Former intelligence officer.
REP. HOULAHAN: Former Air Force.
SEN. KELLY: We want to speak directly to members of the military,
SEN. SLOTKIN: And the intelligence community,
REP. CROW: Who take risks each day,
REP. DELUZIO: To keep Americans safe.
SEN. SLOTKIN: We know you are under enormous stress and pressure right now.
REP. HOULAHAN: Americans trust their military.
REP. DELUZIO: But that trust is at risk.
SEN. KELLY: This Administration is pitting our uniformed military,
SEN. SLOTKIN: And intelligence community professionals,
REP. CROW: Against American citizens.
SEN. KELLY: Like us, you all swore an oath,
REP. GOODLANDER: To protect and defend this Constitution.
REP. DELUZIO: Right now, the threats to our Constitution aren't just coming from abroad,
REP. CROW: But from right here at home.
SEN. KELLY: Our laws are clear. You can refuse illegal orders.
SEN. SLOTKIN: You can refuse illegal orders.
REP. DELUZIO: You must refuse illegal orders.
SEN. SLOTKIN: No one has to carry out orders that violate the law,
REP. HOULAHAN: or our Constitution.
REP. CROW: We know this is hard,
SEN. KELLY: and that it's a difficult time to be a public servant.
SEN. SLOTKIN: But whether you're serving in the CIA,
REP. CROW: The Army,
REP. DELUZIO: Our Navy,
REP. HOULAHAN: The Air Force,
SEN. KELLY: Your vigilance is critical.
SEN. SLOTKIN: And know that we have your back.
REP. CROW: Because now, more than ever,
REP. HOULAHAN: The American people need you.
SEN. SLOTKIN: We need you to stand up for our laws,
REP. DELUZIO: Our Constitution,
SEN. KELLY: And who we are as Americans. Don't give up,

JA 116

REP. DELUZIO: Don't give up,
REP. CROW: Don't give up,
SEN. SLOTKIN: Don't give up the ship.[41]



54.    The video's message—that service members "can refuse illegal orders"—is a plain statement of blackletter law.

55.    The UCMJ subjects service members to courts-martial if they "violate[] or fail[] to obey any *lawful* general order or regulation."[42] The Rules for Courts-Martial therefore provide: "It is a defense to any offense that the accused was acting pursuant to orders unless the accused knew the orders to be unlawful or a person of ordinary sense and understanding would have known the orders to be unlawful."[43] The UCMJ underscores that, although orders from superior officers are

---

[41] *Id.*

[42] 10 U.S.C. § 892 (UCMJ Art. 92) (emphasis added).

[43] *Manual for Courts-Martial*, United States, Rules for Courts-Martial 916(d) (2024) (emphasis added).

# JA 117

presumed lawful, "[t]his inference does not apply to a patently illegal order, such as one that directs the commission of a crime."[44]

56.    The U.S. Court of Appeals for the Armed Forces has reiterated that service members can be held accountable for following orders that they "knew . . . to be unlawful" or that "a person of ordinary sense and understanding would have known" were unlawful.[45] The prosecution "bears the burden of proving beyond a reasonable doubt that the defense does not exist."[46]

57.    Secretary Hegseth himself has previously embraced this core principle. In a 2016 speech, Hegseth made clear that, "[i]f you're doing something that is just completely unlawful and ruthless, then there is a consequence for that. That's why the military said it won't follow unlawful orders from their commander-in-chief . . . . There's a belief that we are above what so many things that our enemies or others would do."[47]

58.    Before her appointment to Attorney General, Pamela Bondi also endorsed this principle. In March 2024, she wrote a section in a court filing titled "Military Officers Are Required Not to Carry Out Unlawful Orders."[48]

59.    Secretary Hegseth's and Attorney General Bondi's statements of military law were correct. This bedrock tenet of military law—that service members are required not to follow illegal orders—is also among the first things taught to every service member at the inception of their service.

---

[44] *Id.* at pt. IV, ¶ 16(c)(2)(a)(i).

[45] *United States v. Smith*, 68 M.J. 316, 319 (C.A.A.F. 2010).

[46] *Id.*

[47] Andrew Kaczynski, *In 2016 Video, Hegseth Says US Troops 'Won't Follow Unlawful Orders' From The President*, CNN (Dec. 2, 2025), www.cnn.com/2025/12/02/politics/video/pete-hegseth-video-illegal-commands-kfile-vrtc.

[48] *See* Brief for Three Former Senior Military Officers and Executive Branch Officials as Amici Curiae Supporting Petitioner at 9, 14, *Trump v. United States*, No. 23-939, 603 U.S. 593 (2024).

JA 118

60. The Department of Defense Law of War Manual provides that "[m]embers of the armed forces must refuse to comply with clearly illegal orders to commit law of war violations."[49]

61. An August 6, 2020, memorandum by the then-General Counsel of the Department of Defense confirms that "[a]ll servicemembers must: . . . refuse to comply with clearly illegal orders to commit violations of the law of war."[50]

### D.    The Administration's Responses to the Video

62. Despite the accuracy of the video and the statements of its participants, and the Members' right to make those statements, the Administration immediately responded with threats of death, prosecution, imprisonment, and violence.

63. On November 19, 2025, the "Official White House Rapid Response account" reposted an interview of Stephen Miller, who labeled the statements an "insurrection" and a "general call for rebellion."[51]

64. On November 20, 2025, President Trump posted: "It's called SEDITIOUS BEHAVIOR AT THE HIGHEST LEVEL. Each one of these traitors to our Country should be ARRESTED AND PUT ON TRIAL. Their words cannot be allowed to stand - We won't have a Country anymore!!! An example MUST BE SET."[52]

---

[49] Dep't of Defense, *Department of Defense Law of War Manual* § 18.3.2 (June 2015, updated July 31, 2023), perma.cc/324P-AZ6T.

[50] Paul C. Ney, Jr., *Memorandum for the Heads of the DoD Components* § 1.4 (Aug. 6, 2020), perma.cc/7Z27-7MUV.

[51] Rapid Response 47 (@RapidResponse47), X (Nov. 19, 2025, at 16:19 ET), x.com/RapidResponse47/status/1991255078485835960?s=20 [perma.cc/UVN7-EUQ3].

[52] Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:08 ET), perma.cc/M6N2-U6GJ?type=image.

# JA 119



65.   Nine minutes later, President Trump reposted a news article about the video and added: "This is really bad, and Dangerous to our Country. Their words cannot be allowed to stand. SEDITIOUS BEHAVIOR FROM TRAITORS!!! LOCK THEM UP???"[53]



---

[53]   Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 09:17 ET), perma.cc/RZ8F-B76X?type=image.

# JA 120

66.     Approximately an hour later, President Trump wrote: "SEDITIOUS BEHAVIOR, punishable by DEATH!"[54]



67.     President Trump reposted a post calling for the hanging of the six congressmembers.[55]



68.     In response to the President's threats, Senator Kelly and his five colleagues quickly issued a joint statement:

> We are veterans and national security professionals who love this country and swore an oath to protect and defend the Constitution of the United States. That oath lasts a lifetime, and we intend to keep it . . . . What's most telling is that the President considers it punishable by death for us to restate the law. Our servicemembers should know that we have their backs as they fulfill their oath to

---

[54] Donald Trump (@realDonaldTrump), Truth Social (Nov. 20, 2025, at 10:21 ET), https://web.archive.org/web/20251214203221/https://truthsocial.com/@realDonaldTrump/posts/115582703277798715.

[55]     Donald     Trump     (@realDonaldTrump),     Truth     Social, https://web.archive.org/web/20251121091506/https://truthsocial.com/@realDonaldTrump   (see twentieth post); *see also* Jennifer Bendery, *'HANG THEM': Trump Boosts Message Calling For Executing Democrats in Congress*, MSN (Nov. 20, 2025), https://perma.cc/RCT2-Z2LR.

JA 121

the Constitution and obligation to follow only lawful orders. It is not only the right thing to do, but also our duty."[56]

69.     In addition, Senator Kelly posted his own response on *X*:

My wife @GabbyGiffords nearly lost her life in an act of political violence. Words have consequences, especially when they come from the President of the United States.

What Trump said this morning — that my colleagues and I should be put to death — is dangerous. We can disagree fiercely and say what we think without resorting to stoking violence.[57]

70.     Undaunted, a White House social media page posted a statement by President Trump two days later in which he reiterated his view that the six congressmembers are "TRAITORS" and accused them of "SEDITION AT THE HIGHEST LEVEL."[58]



---

[56] Press Release, Joint Statement from Kelly, Slotkin, Crow, Deluzio, Goodlander, Houlahan, kelly.senate.gov (Nov. 20, 2025), https://perma.cc/GA75-EMYQ.
[57] Senator Mark Kelly (@SenMarkKelly), X (Nov. 20, 2025, at 18:39 ET), https://perma.cc/V7GQ-HXSY.
[58] Rapid Response 47 (@RapidResponse47), X (Nov. 22, 2025, at 23:18 ET), https://perma.cc/9ULY-D35J.

21

# JA 122

71.    Nine minutes later, the President posted again and claimed that "MANY GREAT LEGAL SCHOLARS AGREE THAT THE DEMOCRAT TRAITORS THAT TOLD THE MILITARY TO DISOBEY MY ORDERS, AS PRESIDENT, HAVE COMMITTED A CRIME OF SERIOUS PROPORTION!"[59]



72.    The following day, President Trump reposted a flurry of messages and memes shared by other users on Truth Social—including several messages accusing the six members of sedition and treason.[60] Among the reposts were a post calling the six members "Domestic

---

[59] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 22, 2025, at 23:27 ET), perma.cc/V6XC-XKTZ?type=image.

[60] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), https://web.archive.org/web/20251124031109/https://truthsocial.com/@realDonaldTrump/posts/115600870191145883; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:33 ET), https://web.archive.org/web/20251201110628/https://truthsocial.com/@realDonaldTrump/posts/115601861771424365; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:08 ET), https://web.archive.org/web/20260109171305/https://truthsocial.com/@realDonaldTrump/posts/115600819326972434; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 21:59 ET), https://web.archive.org/web/20251128054721/https://truthsocial.com/@realDonaldTrump/posts/115602435550231993; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:42 ET), https://web.archive.org/web/20251124232913/https://truthsocial.com/@realDonaldTrump/posts/115601898049338376; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:39 ET), https://web.archive.org/web/20251203043023/https://truthsocial.com/@realDonaldTrump/posts/115601883571083274; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:38 ET), https://web.archive.org/web/20251212051508/https://truthsocial.com/@realDonaldTrump/posts/115601881346143952; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:38 ET), https://web.archive.org/web/20251130015636/https://truthsocial.com/@realDonaldTrump/posts/115601880468945014; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:35 ET), https://web.archive.org/

---

JA 123

Terrorists" [61] and other allegations that the six members were "traitorous sons of bitches" and "traitorous communists" who "should be impeached and prosecuted." [62]

73.    Shortly after the President's posts, Senator Kelly and other congressmembers received so many threatening messages that law enforcement agencies provided them, their families, and their staffs with special security. Senator Kelly received numerous death threats.

74.    Senator Kelly explained:

> What [the President] is doing is sending a very chilling message across our entire nation, not only in the military, but the civilian workforce. Who's going to speak up and say anything if they see something that's unlawful or see something—waste, fraud, and abuse? Why would anyone speak out if they can go and prosecute a U.S. senator?[63]

---

web/20251226002832/https://truthsocial.com/@realDonaldTrump/posts/115601867440120506; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:34 ET), https://web.archive.org/web/20251127142826/https://truthsocial.com/@realDonaldTrump/posts/ 115601863709910309; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 19:33 ET), https://web.archive.org/web/20251129080524/https://truthsocial.com/ @realDonaldTrump/posts/115601862810818001; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), https://web.archive.org/web/20251126193125/ https://truthsocial.com/@realDonaldTrump/posts/115600871102876776; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:20 ET), https://web.archive.org/ web/20251124025946/https://truthsocial.com/@realDonaldTrump/posts/115600866711887448; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), https://web.archive.org/web/20251127002758/https://truthsocial.com/@realDonaldTrump/posts/ 115600849874066478; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), https://web.archive.org/web/20251124014433/https://truthsocial.com/ @realDonaldTrump/posts/115600848722682473; Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:10 ET), https://web.archive.org/web/20251124025657/ https://truthsocial.com/@realDonaldTrump/posts/115600826280908004.
[61] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:16 ET), perma.cc/AAP2-YMJ5?type=image.
[62] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 23, 2025, at 15:21 ET), perma.cc/MC8W-2S2D?type=image.
[63] *ICYMI: On State of the Union and Meet the Press, Kelly Pushes Back Against Trump Administration Efforts to Silence Him* (Nov. 30, 2025), perma.cc/N46A-MAN2.

# JA 124

### E.   Defendants' Announcement of an Official Military Investigation

75.   On November 24, the official X page of the Department of Defense published a post announcing that it assumed responsibility for investigating and disciplining Senator Kelly for his statements:

> The Department of War has received serious allegations of misconduct against Captain Mark Kelly, USN (Ret.). In accordance with the Uniform Code of Military Justice, 10 U.S.C. § 688, and other applicable regulations, a thorough review of these allegations has been initiated to determine further actions, which may include recall to active duty for court-martial proceedings or administrative measures.[64]

76.   Secretary Hegseth reposted this statement on his *X* page, calling the congressmembers the "Seditious Six" and stating that "Mark Kelly (retired Navy Commander [sic]) is still subject to UCMJ . . . . [T]he Department is reviewing his statements and actions."[65]

77.   The following day, Secretary Hegseth posted that "'Captain' Kelly['s] . . . sedition video intentionally undercut good order & discipline" and referred to "When/if [Senator Kelly is] recalled to active duty."[66]

78.   The Department of Defense then posted a scan of a memorandum from Secretary Hegseth directed to the Secretary of the Navy, with the subject line "Potentially Unlawful Conduct by Captain Mark E. Kelly, U.S. Navy (Ret.)."[67] The memo stated in its entirety:

> The Department of War recently received information regarding potentially unlawful comments made by CAPT (Ret) Mark E. Kelly in a public video, on or about November 18, 2025. I am referring this, and any other related matters, for your review, consideration, and disposition as you deem appropriate. Please provide me a brief on the outcome of your review by no later than December 10, 2025.

---

[64] Dep't of War (@DeptofWar), X (Nov. 24, 2025, at 11:50 ET), perma.cc/Y98G-HA4C.
[65] Pete Hegseth (@PeteHegseth), X (Nov. 24, 2025, at 12:27 ET), perma.cc/CUU8-9DPK.
[66] Pete Hegseth (@PeteHegseth), X (Nov. 25, 2025, at 07:29 ET), perma.cc/QFP4-MKQW.
[67] Dep't of War (@DeptofWar), X (Nov. 25, 2025, at 16:46 ET), perma.cc/GKQ6-64YF.

79.    Despite the deadline, December 10 came and went, and Senator Kelly heard nothing.

80.    On December 11, there were news reports that the Secretary of the Navy had delivered his report regarding Senator Kelly to Secretary Hegseth.[68]

81.    On December 15, Senator Kelly's counsel sent by email a letter addressed to Secretary Phelan, *see* Letter from Paul J. Fishman to John Phelan, U.S. Sec'y of the Navy (Dec. 15, 2025) (attached as Ex. B), recounting "public reporting" that Secretary Phelan had submitted his brief to the Department of Defense's Office of General Counsel for "legal review and input." The letter then made clear that "there is no legitimate basis for any type of proceeding against Senator Kelly, and any such effort would be unconstitutional and an extraordinary abuse of power." *Id.* at 1. The letter warned that "[i]f the Executive Branch were to move forward in any forum," including a "disciplinary, or administrative" forum, counsel would "take all appropriate legal action on Senator Kelly's behalf to halt the Administration's unprecedented and dangerous overreach." *Id.* A Department of Defense official acknowledged receipt of that letter on December 15, *see* Email from Brent E. Troyan, Exec. Assistant and Special Couns., U.S. Dep't of Defense, to Paul J. Fishman (Dec. 15, 2025, at 16:26 ET) (attached as Ex. C).

82.    The next day, December 16, Secretary Hegseth shared on *X* a media report titled "Hegseth's office 'escalating' probe of Sen. Mark Kelly, Pentagon says." The Secretary's post confirmed the report was "accurate."[69]

83.    On December 18, Senator Kelly's counsel responded by emailing a letter to the General Counsel of the Department of Defense, *see* Letter from Paul J. Fishman to Pete Hegseth,

---

[68] *See, e.g.*, Zachary Cohen, *Navy Delivers Report to Hegseth on Potential of Punishment for Sen. Mark Kelly Over 'Illegal Orders' Video*, CNN (Dec. 11, 2025), edition.cnn.com/2025/12/11/politics/navy-report-kelly-illegal-orders-video.
[69] Pete Hegseth (@PeteHegseth), X (Dec 16, 2025, 2025, at 21:35 ET), perma.cc/PA4B-RXXG.

JA 126

U.S. Sec'y of Defense (Dec. 18, 2025) (attached as Ex. D), regarding "press reports that [the Secretary's] office 'is escalating the preliminary review of Captain Mark Kelly, USN (Ret.), to an official Command Investigation.'" That letter explained that the "investigation appears to be premised entirely on accurate statements of law that the Senator made in his capacity as a member of the Senate Armed Services Committee," that "[t]he First Amendment plainly protects those statements," and that a "command investigation of a sitting Member of Congress who is not subject to military command authority would breach numerous constitutional and statutory safeguards."

84.    The letter then requested information from the General Counsel about the command investigation, asking:

> (1) Has the Department in fact commenced a command investigation concerning Senator Kelly?
>
> (2) If so, which official ordered the investigation and under what authority? Which command or office is conducting the investigation?
>
> (3) What are the purported "serious allegations of misconduct" under investigation?
>
> (4) On what basis does the Department claim to assert jurisdiction over Senator Kelly?

85.    Other than confirming receipt, Defendants have not responded to that letter. *See* Email from Earl G. Matthews, General Counsel, U.S. Dep't of Defense, to Paul J. Fishman (Dec. 19, 2025, at 08:13 ET) (attached as Ex. E),

**F.    Defendants' Punitive Actions Against Senator Kelly Based on Public Statements**

*(i)    Secretary Hegseth's Letter of Censure*

86.    On January 5, 2026, at 9:45 AM ET, Senator Kelly was notified by email that Secretary Hegseth had issued a Secretarial Letter of Censure against him. Letter from Pete Hegseth, U.S. Sec'y of Defense, to Mark Kelly, U.S. Senator (Jan. 5, 2026) ("Ltr.") (attached as Ex. F).

87.    While naval regulations authorize the Secretary of the *Navy* (and not the Secretary of Defense) to "censure members, including retirees," by "send[ing] communications to subordinate officers that may be in the nature of a reprimand," U.S. Dep't of the Navy, JAGINST 5800.7G CH-2, *Manual of the Judge Advocate General* § 0114A(a) (Dec. 1, 2023), secnav.navy.mil/doni/SECNAV%20Manuals1/5800.7G_CH-2.pdf, Secretary Hegseth did not identify the legal basis for his letter.

88.    Naval regulations provide that "[u]nless otherwise directed, a copy of [a censure] letter will be filed in the official record of the member censured." *Id*. Once in the file, "[t]he issuance of a Secretarial letter of censure and the underlying facts may be mentioned . . . and used to support . . . any . . . administrative action on the part of the service concerned." *Id.* at § 0114A (b).

89.    The censure letter identified three categories of statements on which the Senator's censure was based: (1) reminders to servicemembers of their duty to refuse unlawful orders; (2) criticism of military leadership for "firing admiral and generals" and surrounding themselves with "yes men"; and (3) concerns that certain military operations may be illegal.

90.    As to the first category, the censure letter stated that "[b]etween June 2025 and December 2025, [Senator Kelly] engaged in a sustained pattern of public statements that characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse orders related to those operations." Ltr. at 1. The letter relied specifically on the November 18 video:

> [O]n November 18, 2025, you participated in and distributed a video titled "Don't Give Up the Ship," in which you identified yourself as "a Captain in the United States Navy" and stated: "We want to speak directly to members of the military . . . This administration is pitting our uniformed military . . . against American citizens . . . You can refuse illegal orders. You must refuse illegal

JA 128

orders . . . Know we have your back . . . Stand up for our laws, for our Constitution."

Ltr. at 1.

91.     The censure letter concluded that the "joint statement" Senator Kelly and his colleagues released on November 20, 2025 "reinforc[ed]" Senator Kelly's alleged "call for refusal of what [he] characterized as 'unlawful orders.'" Ltr. at 1.

92.     Second, the censure letter faulted Senator Kelly for "criticiz[ing] military leadership for 'firing admirals and generals' and surrounding themselves with 'yes men,'" as well as his statement that Senator Kelly would "ALWAYS defend the Constitution." Ltr. at 1.

93.     Third, the censure letter alleged that Senator Kelly "continued to accuse [Secretary Hegseth] and senior military officers of war crimes and to frame resistance to lawful orders as protecting against overreach" throughout December 2025. Ltr. at 1.

94.     Based on these findings, the Secretary made five "determination[s]" regarding Senator Kelly's statements:

> 1. **Undermines the Chain of Command:** By publicly accusing the Secretary of War and senior military officers of war crimes and characterizing lawful operations as illegal, you have directly attacked the legitimacy of military leadership and the lawfulness of their orders.
>
> 2. **Counsels Disobedience:** By telling servicemembers they "can refuse illegal orders" and "must refuse illegal orders" in the context of operations you have specifically characterized as illegal, you have counseled members of the armed forces to refuse lawful orders related to National Guard deployments and counter-narcotics operations.
>
> 3. **Creates Confusion About Duty:** Your statements create confusion among servicemembers about their duty to obey lawful orders. When a retired officer with your credentials tells servicemembers that current operations constitute war crimes and illegal orders, it directly prejudices good order and discipline by encouraging servicemembers to second-guess lawful orders.
>
> 4. **Brings Discredit Upon the Armed Forces:** Your public accusations of war crimes and illegal conduct by military leadership bring discredit upon the armed forces by falsely portraying lawful military operations as criminal acts.

JA 129

5. **Is Conduct Unbecoming an Officer:** By counseling servicemembers to refuse orders while simultaneously characterizing specific operations as illegal, you have engaged in conduct that seriously compromises your standing as an officer and brings dishonor to the officer corps.

Ltr. at 1-2.

95.     The censure letter continued: "For [these] reasons . . . I hereby formally CENSURE you for conduct prejudicial to good order and discipline in the armed forces and conduct unbecoming an officer." Ltr. at 2. The letter specified that Senator Kelly may submit a written rebuttal within thirty days of receipt. But the letter made clear that he "do[es] not have a right to appeal this administrative action." *Id.* at 3.

96.     Relying on the same determinations, Secretary Hegseth's letter announced his conclusion that "good cause exists to reopen the determination of your retired grade under the provisions of 10 U.S.C. § 1370. Accordingly, I will direct the Secretary of the Navy to recommend to me whether a reduction in grade is appropriate in your case." Ltr. at 3.

97.     Navy regulations provide "[e]xamples" of conduct that "should" result in a recommendation for "retirement in a lesser grade." U.S. Dep't of Navy, Sec'y of Navy Instr. 1920.6D, Enclosure 9, 2(a) (July 24, 2019), bit.ly/4a3oAuy. These include a finding that an officer committed an act that "abuse[s] . . . a special position of trust," "brings discredit upon the armed services," prejudices the "ability of the military unit or the organization to maintain discipline, good order, and morale." *Id.*

98.     The censure letter made several such accusations, framed as conclusive "determination[s]," including that Senator Kelly's conduct in a "current position of authority" "undermines the chain of command," "counsels disobedience," "creates confusion about duty,"

# JA 130

"brings discredit upon the Armed Forces," has "a detrimental impact on military discipline and good order," and is "unbecoming" of an officer. Ltr. at 3 (capitalization and emphasis modified).

99.     The letter ended with a stark warning: "as a retired Naval officer, you remain subject to the Uniform Code of Military Justice. If you continue to engage in conduct prejudicial to good order and discipline, *you may subject yourself to criminal prosecution or further administrative action*." Ltr. at 3 (emphasis added).

100.    On January 5, 2026, at 9:50 AM ET, Secretary Hegseth posted on *X*:

Six weeks ago, Senator Mark Kelly — and five other members of Congress — released a reckless and seditious video that was clearly intended to undermine good order and military discipline. . . .

[I]n response to Senator Mark Kelly's seditious statements — and his pattern of reckless misconduct — the Department of War is taking administrative action against Captain Mark E. Kelly, USN (Ret). The department has initiated retirement grade determination proceedings under 10 U.S.C. § 1370(f), with reduction in his retired grade resulting in a corresponding reduction in retired pay.

To ensure this action, the Secretary of War has also issued a formal Letter of Censure, which outlines the totality of Captain (for now) Kelly's reckless misconduct. . . .

    . . . .

These [administrative] actions are based on Captain Kelly's public statements from June through December 2025 in which he characterized lawful military operations as illegal and counseled members of the Armed Forces to refuse lawful orders. This conduct was seditious in nature and violated Articles 133 and 134 of the Uniform Code of Military Justice, to which Captain Kelly remains subject as a retired officer receiving pay.[70]

101.    At 12:12 PM ET, Senator Kelly's counsel received by email a letter from the Chief of Naval Personnel referring Senator Kelly to retirement grade determination proceedings ("grade-determination letter"). *See* Letter from J.J. Czerkewko, Chief of Naval Personnel, to Mark Kelly,

---

[70] Pete Hegseth (@PeteHegseth), X (Jan. 5, 2026, at 09:50 ET), perma.cc/679E-92JM.

U.S. Senator (Jan. 5, 2026) (attached as Ex. G). That letter confirmed that Senator Kelly's "retirement paygrade will be revisited." Ex. G at 1.

102.    According to the grade-determination letter, "[t]he factual basis supporting this action is [the] Secretary of War letter of censure." Ex. G at 1.

103.    The grade-determination letter cited 10 U.S.C. § 1370 as its authority to revisit Senator Kelly's grade determination.

104.    Under § 1370, officers are ordinarily retired at the highest grade at which they served while on active duty, if their service was satisfactory. 10 U.S.C. § 1370(a)(1), (3). In general, that determination of satisfactory service is "administratively final" and can only be "reopened," as relevant here, for "good cause." *Id.* § 1370(f)(1), (2)(D).

105.    A finding of "good cause" sufficient to reopen the initial determination must concern whether an officer "served *on active duty* satisfactorily." *See Spellissy v. United States*, 103 Fed. Cl. 274, 281-82 (2012) (emphasis added).

106.    The grade-determination letter specified that the "least favorable outcome" as a result of the proceedings would be "retire[ment] at an inferior pay grade." Ex. G at 1.

107.    The grade-determination letter instructed Senator Kelly to provide a response "within 10 working days of the date of this letter," and advised that the "[f]ailure to respond shall constitute a waiver of these rights." Ex. G at 1.

108.    Secretary Hegseth's determinations stated in his censure letter, as well as his other public statements, have inflicted reputational harm related to the Senator's service record, placed his grade and pay in jeopardy, and prejudged the outcome of the grade-determination proceeding. Any further attempts to exhaust remedies for correcting these determinations within the agency would be futile.

31
JA 132

### G. Ensuing Events

109. In response to the censure letter and the grade-determination letter, Senator Kelly's counsel transmitted a letter to Defendants on January 7, 2026. *See* Letter from Paul J. Fishman to Pete Hegseth, U.S. Sec'y of Defense (Jan. 7, 2026) (attached as Ex. H). That letter explained that the censure and other Departmental actions it proposed (including grade-determination proceedings) "violate the Constitution in at least four ways, exceed [Secretary Hegseth's] and the Department's statutory authority, and defy the Administrative Procedure Act." Ex. H at 2. In particular, the letter explained that Defendants' actions were impermissible under the First Amendment, the Speech or Debate Clause, the constitutional separation of powers, and the Due Process Clause, and that it exceeded the Secretary's authority under § 1370. Ex. H at 2-3.

110. That letter thus called on the Secretary to "halt immediately any further proceedings—and stay the effects of any further determinations, should [he] nevertheless proceed—pending judicial review." Ex. H at 2. It also specifically called for Secretary Hegseth to "immediately rescind the Letter; direct the Chief of Naval Personnel to withdraw the Notification; and vacate and halt any other adverse actions against Senator Kelly." That includes "reopen[ing] the grade at which Senator Kelly retired; or includ[ing] or plac[ing] the Letter in his military file." Ex. H at 1. And it demanded the "withdraw[al] of [the Secretary's] threat of criminal prosecution." Ex. H at 1. Counsel requested that the Department respond in writing by January 9 that it had taken these steps, and advised that the Senator would proceeding accordingly if he received no satisfactory response.

111. The letter also asked the Department to "take[] necessary steps to preserve all documents, electronically stored information, and other tangible materials that are potentially relevant to this matter," given the "prospect of litigation or other disputes." Ex. H at 1.

JA 133

112.    On January 8, 2026, the General Counsel of the Department of Defense acknowledged receipt of the letter and confirmed that "[w]e will preserve all relevant materials as required by law." *See* Email from Earl G. Matthews, General Counsel, U.S. Dep't of Defense, to Paul J. Fishman (Jan 8, 2026, at 08:21 ET) Ex. I. He did not, however, respond to the substance of the letter.

113.    Also on January 7, 2026, Secretary Hegseth reiterated in a media appearance that his conclusions are firm:

> We have evaluated those statements, not just that one video, which was incredibly reckless. He knew exactly what he was doing . . . And watching the, I don't know, hissy fit that he's been throwing ever since, shows us just how over the target we are. He knew exactly what he was saying . . . He understood the doubt and uncertainty he was putting into the process by vaguely alluding to illegal orders but . . . never pointing to what that would mean.[71]

114.    Secretary Hegseth continued that the Administration's "reaction underscores how serious this action is. Reducing a rank or pay is a serious administrative action that sends real signals that we take these things incredibly seriously. So he's got the time, by statute, or by directive, to reply, we'll review after that, but . . . I don't think anybody should . . . minimize how significant this is."[72]

115.    On January 5, Common Defense, a grassroots organization of veterans and military families, issued the following statement:

> This campaign against Senator Kelly is not about accountability, it is about silencing dissent against the Trump administration. It is designed to send a message to every retired service member and every veteran in public life that speaking honestly about unlawful orders and constitutional limits will put a target on their back.[73]

---

[71] DOW Rapid Response (@DOWResponse), X (Jan 7, 2026, at 14:40 ET), perma.cc/CSK4-RUEU.
[72] *Id.*
[73] Press Release, Common Defense, Common Defense Stands By Senator Kelly Amid Hegseth's Threats of Demotion and Censure (Jan. 5, 2026), perma.cc/458Z-EG6W.

JA 134

116.    Despite the ongoing threats against him, Senator Kelly intends to continue to speak on matters of public concern, including military operations. He is also committed to fulfilling his duties as a member of the Senate Armed Services Committee and as a representative for the people of Arizona. He also recognizes the danger that the Defendants' actions pose to the rights of all retired veterans to speak out on matters of public concern.

117.    As Senator Kelly explained: Defendants "aren't going to silence me. They aren't going to keep me from speaking out. And they aren't going to stop me from doing my job. Enough of the bullying. Enough of the intimidation. Enough of the threats."[74]

118.    While Senator Kelly himself will not be silenced, Senators from across the aisle have acknowledged that the Secretary's censure letter has, in Senator Thom Tillis's words, "a chilling effect on speech."[75]

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE FIRST AMENDMENT

119.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

120.    The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The government cannot "punish or suppress disfavored expression," *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 188 (2024), or retaliate against such expression, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018).

121.    Defendants' actions punish Senator Kelly for his protected speech. Defendants' actions seek to discipline the Senator for three categories of public statements: (1) reminders to

---

[74] Press Release, Kelly: "I've been through a lot worse in service to my country. The president and Pete Hegseth aren't going to silence me" (Dec. 1, 2025), perma.cc/CB3X-NKBJ.
[75] Alexander Bolton, *2 GOP Senators Caution Hegseth on Punishing Kelly*, The Hill (Jan. 5, 2026), perma.cc/CZS6-UEEU.

JA 135

servicemembers of their duty to refuse unlawful orders; (2) criticism of military leadership for "firing admirals and generals" and surrounding themselves with "yes men"; and (3) concerns that certain military operations might be illegal. All three categories are protected political speech. *See, e.g.*, *Bond v. Floyd*, 385 U.S. 116 (1966).

122.    Defendants' actions are subject to strict scrutiny because they seek to punish Senator Kelly based on the content and viewpoint of his speech. *See, e.g.*, *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The censure letter states that Defendants' actions are predicated exclusively on Senator Kelly's public statements, and are punishing Senator Kelly based on both the content of his statements (*e.g.*, that they relate to the lawfulness of "military operations" and the "firing [of] admirals and generals") and their viewpoint (*e.g.*, "criticizing military leadership for 'firing admirals and generals'").

123.    Even assuming that the Secretary's inferences about Senator Kelly's statements are fair, the statements are entitled to First Amendment protection because they were neither "directed to inciting or producing imminent lawless action" nor "likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

124.    Furthermore, Defendants' actions amount to unconstitutional First Amendment retaliation. Senator Kelly's speech is protected by the First Amendment; Defendants took materially adverse action against the Senator that would deter a person of ordinary firmness in his position; and a causal link exists between the protected speech and the adverse action. *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019).

125.    Defendants' censure and reopening of his grade determination as a punishment for his protected speech would deter a person of ordinary firmness. *See, e.g.*, *Jenner & Block LLP v.*

35
JA 136

*U.S. Dep't of Just.*, 784 F. Supp. 3d 76 & n.7, 95 (D.D.C. 2025); *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994).

126.    The censure letter explicitly states that these adverse actions are taken in response to Senator Kelly's "public statements." Ltr. at 1.

127.    Defendants' actions must be enjoined and declared unlawful.

128.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

**COUNT II**
**VIOLATION OF THE SPEECH OR DEBATE CLAUSE**
**AND LEGISLATIVE IMMUNITY**

129.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

130.    The Speech or Debate Clause provides that "for any Speech or Debate in either House," Members of Congress "shall not be questioned in any other Place." U.S. Const. art. I, § 6.

131.    The "fundamental purpose" of this Clause is to free "the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *United States v. Helstoski*, 442 U.S. 477, 492 (1979) (quoting *Gravel v. United States*, 408 U.S. 606, 618 (1972)).

132.    The Clause covers all "legislative activity," not just "literal speech or debate." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501, 503-05 (1975).

133.    The Speech or Debate Clause provides "absolute" immunity from all manner of adversarial questioning in the form of any civil or criminal proceedings. *Eastland*, 421 U.S. at 502-03.

134.    Senator Kelly's statements were legislative acts protected by the Speech or Debate Clause for which he cannot be subject to any adversarial proceedings.

JA 137

135.    All three categories of statements identified in Secretary Hegseth's letter fall within the legislative sphere.

136.    First, the letter references statements reminding servicemembers of their duty to refuse unlawful orders. Article I of the Constitution expressly places regulation of the armed forces within Congress's legislative powers. *See* U.S. Const. art. I, § 8, cl. 14. Congress has, since the founding, exercised those authorities to legislate a military justice system, *see, e.g.*, Act of Apr. 10, 1806, 2 Stat. 359, including through its enactment of the UCMJ, Act of May 5, 1950, Pub. L. No. 81-506, ch. 169, 64 Stat. 108 (1950).

137.    Second, the letter references statements criticizing military leadership for "firing admirals and generals" and surrounding themselves with "yes men." Such statements fall within the legislative sphere. Congress has authority over military and civilian defense appointments. *See, e.g.*, 10 U.S.C. § 1161 (articulating circumstances under which a "commissioned officer may be dismissed"). For example, the Senate Armed Services Committee, of which Senator Kelly is a member, exercises the Senate's constitutional advice-and-consent authority by reviewing presidential nominations for, and overseeing, senior appointments to the Department of Defense and military branches. *See* Standing Rules of the Senate, S. Doc. No. 113-18, at 43-44 113th Cong. (1st Sess. 2013) (Rule XXXI, 1) (nominations by the President "shall . . . be referred to appropriate committees"); *id.* at 20 (Rule XXV, 1(c)(1)) (conferring jurisdiction to the Armed Services Committee over all "matters relating to . . . Department of Defense, the Department of the Army, the Department of the Navy, and the Department of the Air Force, generally").

138.    Third, the letter ascribes to Senator Kelly statements expressing concern that certain military operations might constitute war crimes. Congress has long codified the international laws of war into the domestic legal architecture, including by criminalizing war crimes, *see, e.g.*, 18

37

JA 138

U.S.C. § 2441, and by exercising the Senate's constitutional treaty-ratifying role, *see, e.g.*, Geneva Convention for the Amelioration of the Condition of Wounded, Sick and Shipwrecked Members of Armed Forces at Sea, Aug. 12, 1949, 6 U.S.T. 3217, 75 U.N.T.S. 85; Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T. 3516, 75 U.N.T.S. 287.

139. These identified statements also came amid ongoing committee investigations and hearings about the military's actions and while Senator Kelly and others actively have been pursuing legislation related to these same issues.

140. These statements also are protected by a presumptive immunity for official acts, which Defendants here cannot overcome. *See Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880).

141. Defendants' actions must be enjoined and declared unlawful.

142. If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT III
## VIOLATION OF THE SEPARATION OF POWERS

143. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

144. The Constitution presumes coequal branches, and the "doctrine of separation of powers" lies "at the heart of our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 119 (1976).

145. Separation-of-powers jurisprudence is animated by two primary concerns, "encroachment and aggrandizement." *Mistretta v. United States*, 488 U.S. 361, 382 (1989). Defendants' actions do both.

146. Allowing Defendants to punish a Senator through military proceedings for his political speech erodes the separation of powers and gives the Executive a power over legislators that the Constitution does not contemplate.

38

JA 139

147.    Defendants' actions impermissibly usurp Congress's authority to punish its own members and directly burden Congress's ability to investigate, oversee, and criticize the Executive's use of the armed forces, including by targeting a sitting Senator based on his political speech.

148.    Defendants' actions rest on the premise that Senator Kelly remains part of the military and subject to military discipline, even while serving as Senator. That premise is foreclosed by the Incompatibility Clause of the Constitution, which expressly forbids Members of Congress from simultaneously "holding any Office under the United States," including a military office, U.S. Cont. art. I, § 6. *See, e.g.*, *United States v. Lane*, 64 M.J. 1, 7 (C.A.A.F. 2006).

149.    To Plaintiff's knowledge, a sitting Member of Congress has never been subject to military punishment based solely on his speech. The novelty of Defendants' actions confirms their unconstitutionality. *See, e.g.*, *Seila Law LLC v. CFPB*, 591 U.S. 197, 204-05 (2020); *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014).

150.    Defendants' actions violate the separation of powers.

151.    Defendants' actions must be enjoined, vacated, and declared unlawful.

152.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT IV
## VIOLATION OF DUE PROCESS

153.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

154.    The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend V.

155.    The Due Process Clause requires government decisionmakers to keep an open mind before taking adverse action against an individual.

JA 140

156. Agency decisions violate due process when they have been "prejudged" by pertinent Executive Branch officials, because agencies must "exercise [discretionary] authority according to [their] own understanding and conscience." *Bufalino v. Kennedy*, 322 F.2d 1016, 1019 (D.C. Cir. 1963) (quoting *Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954)).

157. Where a "disinterested observer may conclude that [an agency adjudicator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it," the agency has "deni[ed] due process." *Cinderella Career & Finishing Schs., Inc. v. FTC*, 425 F.2d 583, 591 (D.C. Cir. 1970) (citation omitted).

158. Secretary Hegseth is the relevant agency decisionmaker here, having issued the censure letter and made the relevant "determination[s]." Ltr. at 2. His letter states that the "Secretary of the Navy [will] *recommend* to me whether a reduction in grade is appropriate in your case," but ultimately, "*I* will determine if a reduction is warranted." *Id.* at 3 (emphasis added).

159. Secretary Hegseth has already adjudged the decision to reduce Senator Kelly's grade. The censure letter declares without qualification that Senator Kelly's protected speech "undermines the chain of command," "counsels disobedience," "creates confusion about duty," "brings discredit upon the Armed Forces," and is "unbecoming" of an officer. Ltr. at 2 (capitalization omitted). These determinations parrot the standards that, under Naval regulations, justify a reduction in grade. And the grade-determination letter confirms that the sole "factual basis supporting this action" is Secretary Hegseth's letter of censure. Ex. G at 1.

160. Secretary Hegseth's public statements further establish that the underlying decision to censure Senator Kelly is preordained. On the same day that the Department of Defense announced it was reviewing "serious allegations of misconduct against Captain Mark Kelly," Secretary Hegseth posted that the video Senator Kelly participated in was "Seditious." *See supra*

40

JA 141

¶ 76. The next day, Secretary Hegseth posted again that "'Captain' Kelly['s] . . . sedition video intentionally undercut good order & discipline." *See supra* ¶ 77. And Secretary Hegseth questioned Senator Kelly's grade publicly. *See supra* ¶ 100.

161. Defendants' actions must be enjoined and declared unlawful.

162. If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

**COUNT V**
**VIOLATION OF 10 U.S.C. § 1370**

163. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

164. Under 10 U.S.C. § 1370, an officer's retirement grade must be determined *exclusively* by active-duty conduct: Officers "shall be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily," unless "an officer committed misconduct in a lower grade than the retirement grade otherwise provided for the officer by this section." 10 U.S.C. § 1370(a)(1), (3).

165. Under § 1370, the Secretary of the Navy—not the Secretary of Defense—"shall" make the "determination of satisfactory service" for officers "serving in a grade at or below the grade of major general or rear admiral." 10 U.S.C. § 1370(a)(2)(A).

166. An O-6, Navy Captain is a grade "below the grade of major general or rear admiral."

167. Absent limited exceptions not applicable here, an officer's retirement grade is "final on the day the officer is retired." 10 U.S.C. § 1370(f)(1).

168. One such exception is that the Secretary of the Navy—but not the Secretary of Defense—may reopen an officer's retirement grade determination if he finds "good cause." 10

41

# JA 142

U.S.C. § 1370(f)(2)(D). He may do so only "pursuant to regulations prescribed by the Secretary of Defense." *Id.*

169. Defendants' reopening of Senator Kelly's grade determination violates § 1370 for three independent reasons.

170. First, Defendants' reopening is based impermissibly on post-retirement conduct in violation of these provisions and in excess of Defendant's authority.

171. Defendants' forthcoming, and preordained, grade determination violates these provisions and exceeds Defendants' statutory authority because it is also based impermissibly on post-retirement conduct.

172. Reading § 1370 to allow reopening and reducing the grade of a sitting Member of Congress based on post-military-retirement speech would raise serious constitutional concerns under the First Amendment, the Speech or Debate Clause, the separation of powers, and the "make Rules" Clause of Article I. Under the "constitutional-avoidance principle," the statute should therefore be construed to foreclose Defendants' action. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 775-76 (2025).

173. Second, Defendants' actions violate these provisions and exceed their statutory authority because the Secretary of Defense, and not the Secretary of the Navy as is required by law, determined that there was good cause to reopen Senator Kelly's grade determination, attempted to reopen Senator Kelly's grade determination, and reserved for himself the final decision on whether to reduce Senator Kelly's retirement grade.

174. Third, Defendants' actions violate these provisions and exceed their statutory authority because they attempt to reopen Senator Kelly's retirement grade determination for "good cause," but no such "good cause" exists.

42

JA 143

175.    Defendants' actions must be enjoined and declared unlawful.

176.    If Defendants' actions are not enjoined, vacated, and declared unlawful, Plaintiff will suffer substantial injury, including irreparable injury.

## COUNT VI
## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## CONTRARY TO LAW

177.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

178.    Under the Administrative Procedure Act ("APA"), courts shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

179.    Defendants' actions are contrary to law under each of the constitutional and statutory provisions described in Counts I through V above.

180.    Defendants' actions are final because they "mark the consummation of the agency's decisionmaking process" and determine "rights or obligations . . . from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (cleaned up).

181.    Defendants' actions must be enjoined and declared unlawful, and vacated and set aside under 5 U.S.C. § 706(2).

182.    The Court should also "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

183.    If Defendants' actions are not enjoined and declared unlawful, and vacated and set aside, Plaintiff will suffer substantial injury, including irreparable injury.

JA 144

## COUNT VII
## VIOLATION OF ADMINISTRATIVE PROCEDURE ACT
## ARBITRARY AND CAPRICIOUS

184.    Plaintiff incorporates by reference the allegations of the preceding paragraphs.

185.    Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2).

186.    Defendants' actions are arbitrary and capricious because the agency failed to "examine the relevant [information] and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted). The agency has not offered any "rational connection" between Senator Kelly's statements and Defendants' actions. *Id.*

187.    The agency failed to consider less burdensome, alternative ways of achieving its objectives short of punishment and reopening the Senator's grade determination. *State Farm*, 463 U.S. at 48; *see also, e.g.*, *Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 746 n.36 (D.C. Cir 1986) ("The failure of an agency to consider obvious alternatives has led uniformly to reversal.").

188.    The agency also took into account impermissible factors in reaching its decision, including content and viewpoint-discriminatory purposes and protected legislative activity. *See State Farm*, 463 U.S. at 43.

189.    Defendants' actions are also pretextual, in that the stated reasons are not "genuine." *Dep't of Com. v. New York*, 588 U.S. 752, 780, 785 (2019). Agency action that "rest[s] on a pretextual basis" must be set aside. *Id.* at 780. In determining whether an agency's given explanation for its action is pretextual, courts are "not required to exhibit a naiveté from which

44

# JA 145

ordinary citizens are free." *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.). Here, the benign content of Senator Kelly's speech and the repeated attacks by Defendants against Senator Kelly surrounding the decisions confirm that a desire to silence his views, and not genuine concerns related to military discipline, drove the decisions.

190. Defendants' actions are final because they "mark the consummation of the agency's decisionmaking process" and determine "rights or obligations . . . from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (citation omitted).

191. Defendants' actions must be enjoined and declared unlawful, and vacated and set aside under 5 U.S.C. § 706(2).

192. The Court should also "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

193. If Defendants' actions are not enjoined and declared unlawful, and vacated and set aside, Plaintiff will suffer substantial injury, including irreparable injury.

## PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests an order:

a) declaring Defendants' actions unlawful;

b) enjoining the enforcement of Defendants' actions;

c) vacating and setting aside Defendants' actions under 5 U.S.C. § 706;

d) staying the effective date of Defendants' actions under 5 U.S.C. § 705;

e) preliminarily and permanently enjoining Defendants, their agents, employees, appointees, successors, and anyone acting in concert or participation with Defendants from

JA 146

implementing, maintaining, or giving effect to Defendants' actions, including the Secretary

of Defense's determinations and threats of further criminal or administrative action;

f)  awarding Plaintiff reasonable costs and attorney's fees in accordance with law, including

but not limited to 28 U.S.C. § 2412; and

g)  issuing any and all other such relief as the Court deems just and proper.


Dated: January 12, 2026                    Respectfully submitted,

                          By:    */s/ Paul J. Fishman*
                                 Paul J. Fishman (DC Bar No. 449014)
                                 ARNOLD & PORTER KAYE SCHOLER LLP
                                 One Gateway Center
                                 Suite 1025
                                 Newark, NJ 07102
                                 (973) 776-1900
                                 paul.fishman@arnoldporter.com

                                 Benjamin C. Mizer (DC Bar No. 204906) (*pro hac vice* forthcoming)
                                 Deborah A. Curtis (DC Bar No. 451716)
                                 Jeffrey H. Smith (DC Bar No. 419-521)
                                 Samuel F. Callahan (DC Bar No. 888314461)
                                 Bonnie E. Devany (*pro hac vice* forthcoming)[*]
                                 Aaron X. Sobel (DC Bar No. 90018659) (*pro hac vice* forthcoming)
                                 ARNOLD & PORTER KAYE SCHOLER LLP
                                 601 Massachusetts Avenue, NW
                                 Washington, DC 20001
                                 (202) 942-5000
                                 benjamin.mizer@arnoldporter.com
                                 deborah.curtis@arnoldporter.com
                                 jeffrey.smith@arnoldporter.com
                                 sam.callahan@arnoldporter.com
                                 bonnie.devany@arnoldporter.com
                                 aaron.sobel@arnoldporter.com

---

[*] *Admitted only in Texas; practicing in D.C. pursuant to D.C. Ct. of Appeals R. 49(c)(8), under supervision of D.C. Bar Members.*

JA 147

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed the foregoing Joint Appendix with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ John Bailey*
John Bailey