ORAL ARGUMENT SCHEDULED FOR MAY 7, 2026

No. 26-5070

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

MARK KELLY,
*Plaintiff-Appellee,*

*v.*

PETE HEGSETH, *ET AL.*,
*Defendants-Appellants.*

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA*
*DISTRICT COURT NO. 1:26-CV-81 (HON. RICHARD J. LEON)*

## BRIEF OF *AMICUS CURIAE* NATIONAL SECURITY LEADERS FOR AMERICA IN SUPPORT OF PLAINTIFF-APPELLEE URGING AFFIRMANCE OF DECISION BELOW

DARCI MADDEN
BRITTAINY CAVENDER
ALEX DUBINSKY
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102

JEAN-CLAUDE ANDRÉ
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401

MARK SRERE
DANIEL C. SCHWARTZ
Bryan Cave Leighton Paisner LLP
1155 F St NW
Washington, DC 20004

BAILEY ROHLIN
Bryan Cave Leighton Paisner LLP
1290 Avenue of the Americas
New York, NY 10104

Attorneys for NATIONAL SECURITY LEADERS FOR AMERICA

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), *amicus curiae* National Security Leaders for America hereby submits this certificate.

A. Parties and Amici

All parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Brief for Appellee, except for Vet Voice Foundation, joined by former service secretaries and retired military officers, who submitted an additional *amicus* brief in this Court and the *amicus* submitting this brief, National Security Leaders for America.

B. Rulings Under Review

References to the rulings at issue appear in the Brief for Appellee.

C. Related Cases

*Amicus curiae* National Security Leaders for America is not aware of any related cases pending before this Court or any other court.

DATED: April 20, 2026          */s/  Daniel C. Schwartz*

Attorney for NATIONAL SECURITY
LEADERS FOR AMERICA

i

# DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 26.1, *amicus curiae* National Security Leaders for America states that it has no parent corporation and no publicly held corporation owns 10% or more of its stock.


DATED: April 20, 2026                     */s/  Daniel C. Schwartz*

                                          Attorney for NATIONAL SECURITY
                                          LEADERS FOR AMERICA

ii

## CERTIFICATE OF SEPARATE BRIEF

Pursuant to D.C. Circuit Rule 29(d), counsel for *amicus curiae* National Security Leaders for America certifies that a separate brief is necessary for the following reasons. National Security Leaders for America, through its membership of over 1,500 members who were involved in national security issues at a senior level, including retired Generals, Admirals, and other senior officers, can provide a distinctive perspective on the impact of Appellants' position on the First Amendment freedoms of retired service members. Further, this brief will provide concrete examples of the chilling effect Appellants' actions already had on the organization's members, which no other party or *amici* has provided. For these reasons, National Security Leaders for America believes this separate brief is necessary and serves the interests of the Court.

DATED: April 20, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Daniel C. Schwartz*

Attorney for NATIONAL SECURITY LEADERS FOR AMERICA

iii

## TABLE OF CONTENTS

**DESCRIPTION**                                                        **PAGE**

TABLE OF AUTHORITIES ................................................................v

GLOSSARY OF ABBREVIATIONS .......................................viii

INTEREST OF *AMICUS CURIAE* .........................................1

INTRODUCTION ...........................................................3

ARGUMENT ................................................................9

I.     The Department of Defense Has Long Recognized that Retired Service Members Not on Extended Callbacks for Duty Have Greater First Amendment Rights than Active-Duty Service Members. ...................................................................9

II.    Threatened Retribution Against Captain Kelly Has Significantly Chilled the Exercise of First Amendment Rights by Many Other Retired Service Members Who Fear Being Threatened with Similar Retribution for Exercising their Constitutional Rights. ...................................................15

CONCLUSION ..........................................................20

DECLARATION OF REAR ADMIRAL MICHAEL SMITH (USN, RET.)

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**DESCRIPTION** **PAGE(S)**

**Cases**

*Cohen v. California,*
403 U.S. 15 (1971)......................................................................... 10

*Crawford-El v. Britton,*
523 U.S. 574 (1998)........................................................................ 8

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
472 U.S. 749 (1985)...................................................................... 10

*Hartman v. Moore,*
547 U.S. 250 (2006)........................................................................ 8

*Kelly v. Hegseth,*
No. 1:26-cv-0081-RJL, 2026 WL 391777 (D.D.C. Feb. 12,
2026)............................................................................................... 4

*NAACP v. Button,*
371 U.S. 415 (1963)...................................................................... 19

*New York Times Co. v. Sullivan,*
376 U.S. 254 (1964)...................................................................... 10

*Snyder v. Phelps,*
562 U.S. 443 (2011)...................................................................... 10

*Speiser v. Randall,*
357 U.S. 513 (1958)...................................................................... 19

*United States v. Bergdahl,*
80 M.J. 230 (C.A.A.F. 2020, *vacated in part,* 683 F. Supp.
3d. 24 (D.D.C. 2023))............................................................. 14, 15

*United States v. Hooper,*
26 C.M.R. 417 (C.M.A. 1958) ........................................................ 7

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION** <div style="float:right">**PAGE(S)**</div>

*White v. Treibly,*
  19 F.2d 712 (D.C. Cir. 1927) ............................................................. 8

**Statutes**

10 U.S.C. § 802(a)(4) .......................................................................... 11

10 U.S.C. § 825 .................................................................................... 10

10 U.S.C. § 888 .................................................................................... 11

10 U.S.C. § 933 .................................................................................... 11

10 U.S.C. § 12307 ................................................................................ 10

**Regulations**

DoDD 1325.06(3) ................................................................................. 14

DoDD 1344.10 § 4 ................................................................................ 12

DoDD 1344.10 § 4.1.2 .................................................................... 12, 13

DoDD 1344.10 § 4.1.3 .......................................................................... 11

DoDD 1344.10 § 4.2.2. .......................................................................... 13

DoDD 1344.10 § 4.2.3. .......................................................................... 13

DoDD 1344.10 § 4.3.3 ..................................................................... 12, 13

DoDD 1344.10 § 4.4.2 ........................................................................... 13

# TABLE OF AUTHORITIES (continued)

**DESCRIPTION**                                                    **PAGE(S)**

## Other Authorities

*Another General Joins Ranks Opposing Rumsfeld*, CNN (Apr. 15, 2006), https://www.cnn.com/2006/POLITICS/04/13/iraq.rumsfeld/index.html .................................................................................... 4

Dean G. Falvy, Rumsfeld's Revenge: *How the Retired Generals Who Have Called for His Resignation Could Be Court-Martialed, and Why They Won't Be*, FindLaw (May 3, 2006), https://supreme.findlaw.com/legal-commentary/rumsfelds-revenge-how-the-retired-generals-who-have-called-for-his-resignation-could-be-court-martialed-and-why-they-wont-be.html ................................................ 11

Def. Instr. 1308.03, *DoD Physical Fitness / Body Composition Program* ¶ 1.2 (Mar. 10, 2022) (as amended June 25, 2025)................................................................................................ 10

Drew DeSilver, *What We Know About Veterans Who Work for the Federal Government*..................................................................... 5

James Mattis, *In Union There Is Strength*, The Atlantic (June 3, 2020), https://www.theatlantic.com/ideas/archive/2020/06/united-states-in-crisis/612424/ ................................................................... 5

Pew Rsch. Ctr. (Apr. 10, 2025), https://www.pewresearch.org/short-reads/2025/04/10/what-we-know-about-veterans-who-work-for-the-federal-government/  ...................................................... 5

*President Eisenhower Goes to Korea*, HISTORY (Nov. 13, 2009), https://www.history.com/this-day-in-history/november-29/eisenhower-goes-to-korea (last visited Apr. 15, 2026)......................................................................... 4

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Department of Defense Directive | DoDD |
| National Security Leaders for America | NSL4A |
| Uniform Code of Military Justice | UCMJ |

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* National Security Leaders for America ("NSL4A")[1] is a volunteer, non-partisan network of former military and civilian leaders from across the political spectrum who are uniquely qualified to provide expert insight on U.S. national security and its impact on our democracy and economic stability. NSL4A's mission is to (1) raise public awareness of national security and democratic governance through events, reports, and educational programs, (2) provide nonpartisan expertise to policymakers and other stakeholders on defense, foreign policy, and governance issues to inform sound decision-making, and (3) amplify credible experienced voices to promote fact-based democratic discourse through media interviews and other public commentary.

NSL4A has over 1,500 members who were involved in national security issues at a senior level. Over 800 NSL4A members previously served in the uniformed services of the United States, including retired Generals, Admirals, and other senior officers. Members of NSL4A also

---

[1] No counsel for a party authored this brief in whole or in part, and no one other than *amicus curiae*, its members, or its counsel made a monetary contribution intended to fund this brief's preparation or submission. All parties have consented to its filing.

include many former ambassadors, diplomats, and federal government employees who served in Senior Executive Service positions in areas relating to United States national security, intelligence, public service, and diplomacy.

NSL4A's members are acutely aware of, and concerned about, the United States government's actual and prospective actions against Captain Mark Kelly, USN (retired). The actions against Captain Kelly contradict long-standing Department of Defense policy clearly endorsing the largely unencumbered First Amendment rights of retired military personnel, in contrast to the limits on the exercise of those rights for active-duty military service personnel.

Moreover, these suppressive threats do not fall on Captain Kelly alone. Indeed, the Administration's public censure of Captain Kelly and threats to demote and/or prosecute him have already impaired and otherwise chilled NSL4A members' First Amendment rights. As described herein, these events have caused many NSL4A members to temper their public speech, or even refrain from speaking in some cases, for fear that similar disciplinary actions would be threatened against them.

These threats and actions against Captain Kelly have directly and negatively limited NSL4A's ability to fulfill its organizational mission. NSL4A was organized for the purposes of educating the public and providing non-partisan expertise to policymakers on national security issues. It cannot carry out these missions if its members are afraid to speak publicly. The chilling effect of the Administration's actions is not hypothetical for NSL4A and its members; it is very real, as demonstrated herein.

## INTRODUCTION

The retired members of our uniformed services play a key role not only in our national defense but also in our national discussion. They have spent their careers protecting America's interests around the world, often in challenging and even life-threatening circumstances. Their service gives them unique insight into the operation of the military services, as well as the political, historical, and cultural circumstances of the parts of the world where they have served. Thus, as the district court recognized and, as other *amici* have stated, retired members of the uniformed services have a "distinct perspective and specialized expertise" to contribute to the "public discourse" on national security matters. *Kelly*

3

*v. Hegseth,* No. 1:26-cv-0081-RJL, 2026 WL 391777, at \*12 (D.D.C. Feb. 12, 2026) (citing Brief of *Amici Curiae* Former Services Secretaries, Retired Senior Military Officers, and Vet Voice Foundation). Throughout American history, retired military members have shared their expertise with the American public in ways that have helped to shape public policy, from General Eisenhower's criticism of then-President Truman's handling of the Korean War[2] to more recent examples of retired General John Batiste and others publicly calling for Secretary of Defense Donald Rumsfeld's resignation in 2006 because of his management of the Iraq War,[3] to retired Marine General and former Secretary of Defense Jim Mattis publicly criticizing President Trump in 2020 for "making a mockery of the Constitution" for the use of military forces against protestors.[4] The exercise of First Amendment rights is particularly

---

[2] *President Eisenhower Goes to Korea*, HISTORY (Nov. 13, 2009), https://www.history.com/this-day-in-history/november-29/eisenhower-goes-to-korea (last visited Apr. 15, 2026).

[3] *Another General Joins Ranks Opposing Rumsfeld*, CNN (Apr. 15, 2006), https://www.cnn.com/2006/POLITICS/04/13/iraq.rumsfeld/index.html (last visited Apr. 15, 2026).

[4] James Mattis, *In Union There Is Strength*, THE ATLANTIC (June 3, 2020), https://www.theatlantic.com/ideas/archive/2020/06/united-states-in-crisis/612424/ (last visited Apr. 15, 2026).

4

important for the nation's veterans, like Captain Kelly and the retired service personnel who are members of NSL4A.[5]

Yet the Administration's actions against Captain Kelly would require that he and other retired military service members exercise substantially fewer First Amendment rights than the civilians whose freedoms they spent 20 years or more defending with their lives. The Administration's actions against Captain Kelly, and their threatened actions against NSL4A's military members, run counter to the Department of Defense's *own regulations.* DoD Directive 1344.10, the version of the Hatch Act for the uniformed services, clearly recognizes that retired military personnel have greater freedom to exercise their First Amendment rights than active-duty personnel. This expressly includes the right to participate in political activity and debate. Appellants fail even to acknowledge the distinction made in their own

---

[5] Veterans generally exhibit higher rates of civic engagement and government participation compared to civilians, including increased voting, volunteering and holding public office. Drew DeSilver, *What We Know About Veterans Who Work for the Federal Government*, PEW RSCH. CTR. (Apr. 10, 2025), https://www.pewresearch.org/short-reads/2025/04/10/what-we-know-about-veterans-who-work-for-the-federal-government/ (last visited Apr. 15, 2026).

regulations, much less explain how they can be reconciled with Appellants' position here.

While retired officers may be recalled to service, there are substantial differences between active-duty and retired service personnel. Retired service members do not have authority over active-duty personnel: they are not in the chain of command and cannot impose orders on active-duty personnel. Thus, statements from retired service personnel could not be seen as coercive because retired service personnel cannot compel active-duty personnel to act in accordance with their speech or to exact any retribution for failing to defer to their opinions or expressions. While the opinions and views of retired service members may be persuasive to active-duty personnel because of the speakers' experience or the soundness of their views, that could be equally said of the statements of many other well-credentialed and/or respected public commentators who are not retired service members.

Appellants and others in this current Administration seek to stifle the willingness of retired members of the uniformed services from speaking out and sharing their expertise and worldview with others in "public discourse." By censuring Captain Kelly and directing a potential

reduction in his retirement status—including a potential loss of retirement compensation—for statements Appellants do not like, they send a clear message to all retired service personnel to hold their tongues or face similar risks to their retirement status and pay.

This chilling effect is not hypothetical. The Administration's actions have already silenced informed voices in the national security arena to the great detriment of not only the individual retired service members who have refrained from speaking out, but also of the general population deprived of that experience and those voices.

In their brief on appeal to this Court, Appellants make the unprecedented argument that restrictions on the free speech of active-duty service members "are equally applicable to materially identical speech by retired officers." Appellants' Br. 48. Although Appellants cite a barrage of cases to supposedly support their argument, *none* of the cited cases (and no case of which NSL4A is aware) so holds. That a retired officer can be disciplined by the military for committing certain crimes in the same manner as an active-duty soldier (as in *United States v. Hooper*, 26 C.M.R. 417 (C.M.A. 1958), cited by Appellants at p. 23) or that a retired service member, like an active-duty soldier, could be committed

7

to a military hospital for treatment when unable to care for himself as a result of his service (as in *White v. Treibly*, 19 F.2d 712, 712 (D.C. Cir. 1927), cited by Appellants at p. 39) does not support the argument that retired military members are subject to the same restrictions and conditions as active-duty personnel when it comes to exercising the First Amendment's right of free speech. "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit [the] exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10, 592 (1998)). Appellants do not point to a single case that could justify such a novel and sweeping restriction on the protections of our First Amendment. To the contrary, our Constitution demands that retired military members be permitted to exercise their First Amendment freedoms.

8

## ARGUMENT

### I. The Department of Defense Has Long Recognized that Retired Service Members Not on Extended Callbacks for Duty Have Greater First Amendment Rights than Active-Duty Service Members.

There is no precedent, and Appellants cite none, holding that the Constitution permits the same restrictions on free speech rights for retired military personnel as active-duty service members. Appellants argue that retired military personnel are considered members of the armed forces for certain purposes and, therefore, are subject to certain military restrictions and obligations. Appellants' Br. 18. That is beyond dispute. For example, they have access to certain military rights, privileges and obligations, such as the ability to wear their uniforms in appropriate situations and being subject to possible callup to active duty. But it does not follow from this uncontroversial statement that retired military personnel are subject to *all* of the same restrictions and obligations as active-duty members. For example, retirees are not subject

9

to physical fitness and grooming standards,[6] are not eligible for promotion, even if recalled, *see* 10 U.S.C. § 12307, and may not serve as panel members for courts-martial, *see* 10 U.S.C. § 825.

The right to exercise free speech under the First Amendment has long been recognized as paramount and can be restrained in only limited and specific situations. "[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985)). The Supreme Court has emphasized our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *see also Cohen v. California*, 403 U.S. 15, 24 (1971) (emphasizing that freedom of expression "is designed

---

[6]     Dep't of Def. Instr. 1308.03, *DoD Physical Fitness/Body Composition Program* ¶ 1.2 (Mar. 10, 2022) (as amended June 25, 2025) (applying fitness and body-composition requirements to "Service members"—namely, those in an active status).

and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us"). Similarly, while recognizing the need to restrict First Amendment rights in order to maintain discipline among active-duty service members, the Department of Defense has long recognized that the restrictions on the free speech rights of active-duty service members do not, for the most part, apply to retired members.[7] Department of Defense Directive ("DoDD") 1344.10 (Feb. 19, 2008),

---

[7] Arguably, retired service officers may be called up and subjected to court martial for violating articles of the Uniform Code of Military Justice (10 U.S.C. § 802(a)(4); UCMJ art. 2(a)(4)), such as for using "contemptuous words" against the President, or others in the government (10 U.S.C. § 888 (UCMJ art. 88)), or for conduct unbecoming of an officer (10 U.S.C. § 933 (UCMJ art. 133)). *See also* DoDD 1344.10, § 4.1.3. NSL4A is aware of only one time a retired service member—a musician—was charged with such use of "contemptuous words." That was in 1918, and the retired military musician was acquitted of violations of the Sedition Act, the civilian predecessor to Article 88. *See* Dean G. Falvy, *Rumsfeld's Revenge: How the Retired Generals Who Have Called for His Resignation Could Be Court-Martialed, and Why They Won't Be*, FindLaw (May 3, 2006), https://supreme.findlaw.com/legal-commentary/rumsfelds-revenge-how-the-retired-generals-who-have-called-for-his-resignation-could-be-court-martialed-and-why-they-wont-be.html.
Captain Kelly has not been charged with using "contemptuous words" and has not been recalled and subjected to a court martial for his statements. Had he been, he would have been entitled to due process rights not available to him in the present administrative review.

"Political Activities by Members of the Armed Forces", https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/1344 10p.pdf. Appellants have not informed the Court about their own regulation, DoDD 1344.10, and do not try to explain to the Court how the actions against Captain Kelly can be justified in light of it.

DoD Directive 1344.10 expressly states that all members of the Armed Forces, including retired members, are encouraged "to carry out the obligations of citizenship." At the same time, the Directive acknowledges the "traditional concept" that (a) "members on active duty should not engage in partisan political activit[ies]" and (b) members not on active duty "should avoid inferences that their political activities imply or appear to imply official sponsorship, approval, or endorsement." DoD Directive 1344.10 § 4. The Directive goes on to list the political activities in which active-duty service personnel may not engage. For example, Section 4.1.2 of DoDD 1344.10 prohibits members of the Armed Forces "on active duty" from participating in partisan political fundraising activities (§ 4.1.2.1.), allowing or causing to be published partisan political articles, letters or endorsements (§ 4.1.2.3), speaking before a partisan political gathering (§ 4.1.2.5.), or participating in any

12

radio, television, or other program to advocate for or against a partisan political party, candidate, or cause (§ 4.1.2.6.). Similarly, Section 4.3.3. provides that any active-duty member who has been authorized to run for political office may not participate in any campaign activity.

These restrictions on political, public speaking, and writing activities, however, apply to only military personnel on active duty and to retired regular or Reserve Component members "on active duty under a call or order to active duty for more than 270 days." *See, e.g.,* DoDD 1344.10 §§ 4.2.2., 4.2.3., 4.3.3., 4.4.2. Thus, by their terms, the restrictions on the exercise of free speech laid out in DoDD 1344.10 do not apply to retired service personnel *not* recalled or ordered to duty for nine months or more. They do not apply to other retired service personnel, such as Captain Kelly and the retired service members of NSL4A, who enjoy largely the same First Amendment rights enjoyed by their fellow citizens.

The other main Department of Defense Directive that implicates speech rights similarly fails to restrict the free speech rights of retirees. Directive 1325.06, the "Handling Protest, Extremist and Criminal Gang Activities Among Members of the Armed Forces," applies to only active-

13

duty service members. Even as to active-duty personnel, the Directive acknowledges that "[a] Service members' right of expression should be preserved to the maximum extent possible in accordance with the First Amendment of the Constitution and statutory provisions of titles 10 and 18, United States Code." DoDD 1325.06(3).

Critically, not one of the cases cited by Appellants holds that the same restrictions on the First Amendment free speech rights of active-duty personnel applies to retired service personnel not on active-duty status. And Appellants' assertion that courts have supposedly recognized "the influence wielded by retired officers . . . in multiple contexts" is not supported by any case that holds that such "influence" allows the government to restrict retired military members' speech as if they were on active duty. Appellants' Br. 24.

The lone case cited for this proposition is *United States v. Bergdahl*, 80 M.J. 230, 236 (C.A.A.F. 2020), *vacated in part*, 683 F. Supp. 3d. 24 (D.D.C. 2023). In *Bergdahl*, an active-duty soldier accused of desertion claimed his court martial rights were violated when the President and Senator John McCain made public statements about the way that they believed the soldier's court martial should be decided. *Id.* at 233-34. The

14

issue before the court was not whether Senator (and retired Navy Captain) McCain had a First Amendment right to make the statements he made but whether those statements were capable of exerting unlawful command influence on the court martial verdict because Senator McCain was a member of the Senate Armed Services Committee and thus able to delay or block assignments and promotions. *Id*. at 234-36. The court ultimately found that there had been no actual unlawful command influence. *Id*. at 239. The decision is not only unsupportive of the proposition for which the government claims it stands; it demonstrates the unprecedented nature of the Administration's actions against Captain Kelly.

## II.     Threatened Retribution Against Captain Kelly Has Significantly Chilled the Exercise of First Amendment Rights by Many Other Retired Service Members Who Fear Being Threatened with Similar Retribution for Exercising their Constitutional Rights.

Through Appellants' unprecedented actions against Captain Kelly, they assert the right to discipline all retired military service members for their speech. The mere assertion of this power already has significantly chilled the exercise of First Amendment rights among retired service

15

members who fear retribution for speaking out against this Administration.

As outlined in the attached declaration by Rear Admiral Michael E. Smith, USN (Ret.), President and Founder of NSL4A, multiple members of NSL4A already have curtailed their speech to avoid discipline or other possible reprisals from the government. For example, Major General Marilyn Quagliotti, USA (Ret.), depends on retirement benefits that she earned during her decades of service. Prior to these events, she was working with a team to plan a tour in libraries throughout Virginia to discuss with the public their objections to certain government actions. She has now postponed the tour, and may cancel it altogether. Major General Quagliotti is concerned that, if the actions against Captain Kelly are approved, she and other planned speakers could see their retirement benefits decreased or withheld because of their public remarks.

Likewise, Master Chief Petty Officer Michael J. Korman, USN (Ret.), receives veterans' benefits, including disability compensation, as he is 100% service disabled, and he will be eligible for a Navy pension in less than three years. Out of concern that Appellants could attack his veteran and military benefits, he has limited the topics he discusses with

16

the veterans' groups with which he works, especially if he is being recorded, and he has limited the public comments he posts on certain Facebook forums. As an elected official in Cook County, Illinois, his constituents count on him to be forthright, but Appellants' actions have muzzled his speech.

Major General Howard Stendahl, USAF (Ret.), is now a pastor at a parish in San Antonio, Texas, after serving as a chaplain in the United States Air Force for over 30 years. He frequently provides spiritual and moral guidance to his parishioners, which include retired and active-duty military members. He is concerned that his remarks to his parishioners could put him in jeopardy of censure or a reduction in rank if they conflict with the views of Appellants. Major General Stendahl has also heard from other retired flag officers, who attend his church, that they have their own concerns about speaking out after Appellants' retributive actions.

Other members of NSL4A also have curtailed their speech for fear of retribution. A retired United States Navy Commander member of NSL4A was so concerned that he spent several days reviewing and deleting nearly a year of public social media comments that were critical

17

of this Administration. Another member, a retired Air Force officer, is running for office and has tempered his remarks at campaign events based on his concerns. A retired brigadier general has hesitated to speak up for fear that the Administration could take action against both him and his grandson who hopes to serve in the military. A retired naval aviator has tempered his public remarks for fear that the security clearance he needs for his post-retirement civilian job could be endangered. A retired Air Force veteran has stopped making public statements regarding what he believes are illegal actions taken by Appellants to avoid any risk to his pension, as has a retired lieutenant colonel who worked in preserving intelligence information. Several members have stopped writing opinion articles and letters to the editor, including a prominent West Point graduate and former military officer and a retired Army colonel, to avoid financial repercussions. These anecdotes are a mere sample of the chilled speech Appellants' actions have caused.

There can be little doubt that the actions Appellants have taken against Captain Kelly have had a real and demonstrable impact on the exercise of free speech by members of NSL4A and probably many others

who fear that similar repressive actions could be taken against them. Unlike Captain Kelly, they would most likely not have the high profile or the resources to fight the actions of the Secretary of Defense and their service Secretary. They would simply stop exercising their First Amendment rights. Such chilling of free speech can be as much a violation of the First Amendment as an explicit prohibition. *Speiser v. Randall*, 357 U.S. 513, 518 (1958) ("To deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. *Its deterrent effect is the same as if the State were to fine them for this speech.*") (emphasis added); *see also NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter their exercise [of First Amendment freedoms] almost as potently as the actual application of sanctions."). Appellants seek to strip retired military members of the rights they fought to defend, and the district court was correct to remedy their unjustified and unconstitutional actions.

# CONCLUSION

For the above reasons, the Court should affirm the district court.

DATED: April 20, 2026                Respectfully submitted,

                                     BRYAN CAVE LEIGHTON PAISNER LLP

                                     /s/  Daniel C. Schwartz

                                     Attorney for NATIONAL SECURITY
                                     LEADERS FOR AMERICA

# DECLARATION OF REAR ADMIRAL MICHAEL SMITH
## (USN, RET.)

## Declaration of Rear Admiral Michael Smith (USN, Ret.)

I, Michael Smith, being over the age of 21, do hereby declare as follows:

1.   I live in Annandale, Virginia, where I have lived since 2015.

2.   I served in the United States Navy for more than 32 years, rising to the rank of Rear Admiral. In my Navy experience, I commanded at all operational levels from the commanding officer of the Navy's newest destroyer to command of an aircraft carrier strike group. After retiring from the Navy, I served as a Presidential Appointee and Commissioner on the American Battle Monuments Commission and as a Senior Advisor to the Secretary of the Navy.

3.   In 2021, I founded National Security Leaders for America (NSL4A), and I have served as its President since then. NSL4A is a volunteer organization with more than 1,500 bipartisan members, including retired generals, admirals, and other command service senior officers, among other retired, non-military national security experts and leaders. NSL4A's mission is to preserve democratic norms, protect constitutional freedoms, and ensure that both civilian and military service remain non-politicized and operating in the best interest of American democracy and nonpartisanship.

4.    The exercise of free speech by NSL4A members is central to NSL4A's mission. For example, one of NSL4A's core functions is educational. NSL4A works to raise public awareness of national security and democratic governance through events, reports and educational programs. When warranted, NSL4A issues public statements on events and policies that are detrimental to national security and democratic governance. For example, NSL4A has issued public statements in support of women and minorities in national security, warning that deploying or posturing troops against domestic protests infringes on constitutional rights and reduces civil-military trust, and advocating for the maintenance of an apolitical use of the military.

5.    Media engagement is also central to our mission. NSL4A amplifies credible, experienced voices to promote fact-based democracy discourse by making members available to give interviews and offer commentary and to share their perspectives in opinion and analysis articles.

6.    I, personally, and NSL4A as an organization, have been following closely the actions taken by Secretary Hegseth and the Department of Defense against Captain Mark Kelly (USN, Ret.) and

Captain Kelly's legal action against them. These actions include Secretary Hegseth's Letter of Censure that is now in Captain Kelly's file and his direction to Secretary of Navy Phelan to conduct a review of Captain Kelly's retirement rank, which could adversely affect Captain Kelly's pension benefits.

7. I am aware that according to Secretary Hegseth, "[a]s a retired Navy Captain who is still receiving a military pension, Captain Kelly knows he is still accountable to military justice. And the Department of War — and the American people — expect justice." I understand from this that Secretary Hegseth fully intends to subject retired military members to discipline for their speech.

8. I also follow closely the lawsuit filed by Captain Kelly against Secretary Hegseth and the Department of Defense. I am aware that the Department of Justice in defending the government has taken the position that retired military personnel's First Amendment rights are limited in the same way that active duty personnel's rights are.

9. The actions taken by the government and the position the government has taken in the legal action have caused great concern among the leaders of NSL4A and among the membership of NSL4A.

3

Among our more than 1,500 members, more than 800 of them are retired military personnel.

10.    As noted above, media engagement and education are core functions of the organization and critical to furtherance of our organizational mission. We cannot provide the kinds of education and media engagement that are required to further our mission unless our members are permitted to speak publicly without fear of reprisals.

11.    I have received numerous oral and written communications from NSL4A members expressing fear that the government could subject them to disciplinary actions for the views they express publicly.

12.    Major General Marilyn Quagliotti (Ret.) served in the Army for 31 years, retiring in 2007. General Quagliotti was the first woman to command a battalion in a combat division. As a retired Army Major General, she takes her civic duties seriously and is actively involved in political life, frequently participating in NSL4A videos regarding current events, giving public speeches on leadership, and appearing on national television for interviews. On September 30, 2025, she was interviewed on CNN regarding Secretary Hegseth's speech to military officers at Quantico. But as I have learned, General Quagliotti has understandably

4

self-censored after Captain Kelly's censure. She not only has changed planned remarks for speaking engagements, but she has postponed a library tour she was organizing as Co-Chair of NSL4A's Virginia chapter, which would have focused on dialogues and conversations about their objections to the current government's actions and about the character of our leaders. She is concerned that, if she does not self-censor, the Department of Defense or Army will take enforcement actions against her, including but not limited to, reviewing her retirement benefits and rank.

13.    Master Chief Petty Officer Michael J. Korman (Ret.) received 13 personal awards during his service in the Navy, including a Bronze Star Medal, Defense Meritorious Service Medal (two awards), and the Joint Service Commendation Medal (three awards), among others. He retired in 2012 after 25 years of service. Master Chief Korman currently serves as a Highway Commissioner for Northfield Township in Cook County, Illinois, and he proudly relied on his service history in his election campaign. He currently receives veterans' benefits, including disability compensation, as he is 100% service disabled, and he will be eligible for a Navy pension in less than three years. Master Chief

Korman, who joined NSL4A in 2024, has begun to think twice before speaking out on issues of public importance. He has limited the topics he discusses with veterans' groups, especially if he is being recorded, and he has limited the public comments he posts on certain Facebook forums due to fear of potential reprisal. He expressed he is concerned that if the Department of the Navy would take disciplinary action against Captain Kelly, then they could do the same to him, putting his earned veteran and military benefits at risk.

14.    Major General Howard Stendahl (Ret.) served as a Chaplain in the United States Air Force for over 30 years, ultimately serving as the Chief of Chaplains, until he retired in 2015. He is now a pastor at a parish in San Antonio, Texas, where he provides spiritual and moral guidance to his parishioners, which include retired and active-duty military members. Major General Stendahl is concerned that his remarks to his parishioners could put him in jeopardy of censure or a reduction in rank if they conflict with the views of this administration. He has actively considered whether his homilies or spiritual guidance could put him in the cross hairs of the administration. As he prepared his homily for Ash Wednesday, Major General Stendahl reflected on the Delexi Te written

by Pope Leo, but hesitated to quote Pope Leo's stance on the threats migrants face in the United States, considering this also could be deemed critical of the Trump administration. Further, he revealed that many retired flag officers attend his church and have expressed their own concerns about speaking out.

15.     Among the other specific communications I have received that express similar concerns are the following examples:

a.     After the actions taken against Captain Kelly, a retired United States Navy Commander spent several days reviewing and deleting nearly a year of public social media comments that were critical of this Administration for fear of losing his retirement rank, pay and benefits.

b.     A retired United States Air Force enlisted man, with more than 25 years of service, who had spoken publicly on the issues surrounding potential illegal orders in the shooting of shipwreck survivors off of Venezuela, has stopped making public statements concerning that issue because of the government's actions against Captain Kelly. He does not want

7

to risk his pension due to statements that the Administration may find critical.

c. A retired Air Force officer with more than 30 years of service and who is running for office expressed that ever since the action taken by Secretary Hegseth against Captain Kelly, he has been concerned that statements he makes on the campaign trail will be used as possible cause for disciplinary action against him. He has therefore hesitated to speak openly and freely on issues that face him during the campaign.

d. A retired brigadier general expressed that after the actions taken against Captain Kelly, he would be hesitant to speak up because he feared that the Administration could take action not only against himself, but also against his grandson who soon hopes to serve in the military.

e. A former military officer and prominent West Point graduate, who receives benefits from the VA, who has worked closely with the Academy to bring diverse authors to speak, and who has written various opinion pieces has noted his

hesitation to continue to be outspoken on these and other topics in light of the actions taken against Captain Kelly.

f.      A retired Naval Aviator communicated his fears that he could no longer speak freely because, among other things, he was dependent on getting a security clearance from this Administration to be able to work in a civilian job before he retired.

g.      A retired Army colonel who had written letters to the editor of his local newspaper that had been critical of this Administration's actions and positions stated that he would definitely think twice about sending similar letters to the editor in the future based on the actions taken against Captain Kelly.

h.      A retired lieutenant colonel who worked in preserving intelligence information and who believed after he retired that he was able to use his knowledge appropriately to educate fellow citizens in how the federal government works for them now feels that he may have to be silent to avoid

potential financial implications and/or a reduction in grade after the actions taken against Captain Kelly.

16. As noted above, these are just a few examples of the many expressions of discomfort and concern over the government's actions against Captain Kelly.

17. If, however, the Court determines that disciplinary action and/or censure of retired military personnel based on the content of their speech violates the First Amendment, NSL4A's members will continue to express their sincerely held beliefs without fear of reprisal from the United States Government.

18. NSL4A's retired military members strongly believe that at no point were their First Amendment rights limited in the unprecedented way that the U.S. government has argued in the case involving Captain Kelly. I personally, and NSL4A as an organization, believe it is important for the organization to share our perspective to ensure that the courts specifically uphold retired military personnel's First Amendment rights and reject the U.S. government's position relative to retired military personnel.

I declare under penalty of perjury that the foregoing is true and correct.

10

Executed on April 19, 2026.

_____
Rear Admiral Michael Smith (USN, Ret.)

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the length limits permitted by Fed. R. App. P. 29(a)(5) and District of Columbia Circuit Rule 29 because the brief contains 3,663 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable (5,512 words including the Declaration of Rear Admiral Michael Smith (USN, Ret.)).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

DATED: April 20, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Daniel C. Schwartz*

Attorney for NATIONAL SECURITY LEADERS FOR AMERICA

# CERTIFICATE OF SERVICE

I certify that:

1.    I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on April 20, 2026.

2.    Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED: April 20, 2026                Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/  Daniel C. Schwartz*

Attorney for NATIONAL SECURITY LEADERS FOR AMERICA