ORAL ARGUMENT SCHEDULED FOR MAY 7, 2026

No. 26-5070

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

MARK KELLY, United States Senator representing the State of Arizona,

*Plaintiff-Appellee*,

v.

PETE HEGSETH, in his official capacity as Secretary of Defense; U.S. DEPARTMENT OF DEFENSE; JOHN C. PHELAN, in his official capacity as Secretary of the Navy; U.S. DEPARTMENT OF THE NAVY,

*Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia
No. 26-cv-81 (Hon. Richard J. Leon)

# BRIEF OF THE CENTER FOR ETHICS AND THE RULE OF LAW AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLEE

Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700 – PMB 5287
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com

*Counsel for Amicus Curiae and Member of the Center for Ethics and the Rule of Law Executive Board*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Except for *amicus curiae* the Center for Ethics and the Rule of Law, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Appellants.

References to the ruling at issue appear in the Brief for Appellants.

Counsel for *amicus curiae* is unaware of any related cases before this Court or any other court.

*/s/ Mark S. Zaid*
Mark S. Zaid
*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

The Center for Ethics and the Rule is a nonpartisan, nonprofit organization that is part of the University of Pennsylvania. It has no parent company, and no company has an ownership interest in the organization.

*/s/ Mark S. Zaid*
Mark S. Zaid
*Counsel for Amicus Curiae*

## CERTIFICATE OF SEPARATE BRIEF

As required by D.C. Circuit Rule 29(d), counsel for *amicus curiae* provides the following explanation for why it is necessary for the Center for Ethics and the Rule of Law (CERL) to file a separate *amicus* brief. As an academic center focused on the intersection of ethics, national security, and rule of law issues, CERL has a unique viewpoint on this case that is reflected in its submission. More specifically, as far as *amicus curiae* is aware, no other brief that has been submitted to this Court provides as fulsome an explanation of the law of superior orders or as thoroughly explains why the Government's position presents a threat to the separation of powers. Accordingly, CERL views its *amicus* brief as particularly useful to the Court in understanding some of the relevant issues and in aid of its decision.

*/s/ Mark S. Zaid*
Mark S. Zaid
*Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.............. ii

CORPORATE DISCLOSURE STATEMENT .......................................... iii

CERTIFICATE OF SEPARATE BRIEF................................................. iv

TABLE OF CONTENTS .....................................................................v

TABLE OF AUTHORITIES................................................................ vi

GLOSSARY OF ABBREVIATIONS ................................................... viii

STATEMENT OF INTEREST, IDENTITY, AND AUTHORITY TO FILE ............1

SUMMARY OF ARGUMENT...............................................................3

ARGUMENT ...................................................................................4

   I.   Senator Kelly's Statements Accurately Reflect the Law of Superior Orders..4

     A.   Senator Kelly's Statement That "You Can Refuse Illegal Orders" Is Consistent with the Black Letter Law of Superior Orders................................. 4

     B.   The Government's Central Case Does Not Apply to Senator Kelly's Speech. ............................................................................................... 8

   II.   Disciplining Senator Kelly for His "Core Political Speech" Violates the First Amendment and Imposes an Undue Burden on His Constituents. ........................9

   III.  Protecting Senator Kelly's Right to Speak Protects the Separation of Powers. …………………………………………………………………...12

CONCLUSION ...............................................................................15

CERTIFICATE OF COMPLIANCE .......................................................16

CERTIFICATE OF SERVICE ..............................................................17

# TABLE OF AUTHORITIES

## Cases

*Bond v. Floyd*, 385 U.S. 116 (1966)..................................................................11

*Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975).......................14

*Parker v. Levy*, 417 U.S. 733 (1974)...............................................................8, 9

*Trump v. United States*, 603 U.S. 593 (2024) ........................................................10

*United States v. Calley*, 22 U.S.C.M.A. 534 (1973) ....................................................6

United States v. Cherry, 22 M.J. 284 (C.M.A. 1986) ...................................................6

*United States v. Huet-Vaughn*, 43 M.J. 105 (C.A.A.F. 1995) ...................................6

*United States v. Johnson*, 383 U.S. 169 (1966) .........................................................14

*United States v. Pacheco*, 56 M.J. 1 (C.A.A.F. 2001) ................................................7

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999)...............................................10

*United States v. Trani*, 1 U.S.C.M.A. 293 (1952).....................................................5

*United States v. Trump*, 704 F. Supp. 3d 196 (D.D.C. 2023)...................................10

*Wood v. Georgia*, 370 U.S. 375 (1962) ...................................................................13

## Statutes

10 U.S.C. § 802 (Article 2, UCMJ) .........................................................................12

10 U.S.C. § 933 (Article 133, UCMJ) .......................................................................8

10 U.S.C. § 934 (Article 134, UCMJ) .......................................................................8

## Other Authorities

Joseph G. Amoroso, *Deployed to the Hill: How Military Experience Influences Legislative Behavior in Congress*, Center for Effective Lawmaking (2023), https://thelawmakers.org/wp-content/uploads/2023/02/Deployed-to-the-Hill_Amoroso_27FEB23_CEL.pdf..................................................................13

Leo Shane III, *Breaking Down the Number of Veterans in the 119th Congress*, Military Times (Jan. 2, 2025), https://www.militarytimes.com/news/pentagon-congress/2025/01/02/breaking-down-the-number-of-veterans-in-the-119th-congress/. ...............................................................................................12

Noelle Wiehe, *Meet the Guardsmen and Reservists in the US Cabinet, 119th Congress*, Reserve + National Guard Magazine (Apr. 1, 2025), https://reservenationalguard.com/reserve-guard-veterans/meet-the-guardsmen-and-reservists-in-the-us-cabinet-119th-us-congress/...........................................12

President Trump's Motion to Dismiss the Indictment Based on Constitutional Grounds and Memorandum in Support, *United States v. Trump*, No. 23-cr-00257 (D.D.C. Oct. 23, 2023) ...................................................................9, 10

Rachel E. VanLandingham & Steven J. Lepper, *The Pentagon's Distortions of Law to Justify Its Venezuela Operations Have a Name—"Lawfare,"* The Rule of Law Post, The Center for Ethics and the Rule of Law (Mar. 17, 2026), https://www.penncerl.org/the-rule-of-law-post/the-pentagons-distortions-of-law-to-justify-its-venezuela-operations-have-a-name-lawfare/ ..................................14

**Rules**

D.C. Circuit Rule 29(a)(5) ...................................................................................16
D.C. Circuit Rule 29(d)........................................................................................ iv
D.C. Circuit Rule 32(e)(1) ...................................................................................16
Fed. R. App. P. 29(a)(5) .......................................................................................16
Fed. R. App. P. 32(a)(5) .......................................................................................16
Fed. R. App. P. 32(a)(6).......................................................................................16
Fed. R. App. P. 32(f)............................................................................................16

**Regulations**

*Manual for Courts Martial, United States*, pt. IV, ¶ 16.c.(2)(a)(i) (2024 ed.)...........5
*Manual for Courts-Martial, United States*, Rules for Courts-Martial 916(d) (discussion) (2024 ed.) ...................................................................................5, 7

**Constitutional Provisions**

U.S. Const. art. I, § 6..........................................................................................13
U.S. Const. art. II, § 3 .........................................................................................10

**Dictionary Definitions**

*Malum in se*, Black's Law Dictionary (12th ed. 2024).............................................6
*Malum prohibitum*, Black's Law Dictionary (12th ed. 2024)...................................7

# GLOSSARY OF ABBREVIATIONS

| MCM | Manual for Courts-Martial |
|-----|---------------------------|
| RCM | Rules for Courts-Martial |
| UCMJ | Uniform Code of Military Justice |

**STATEMENT OF INTEREST, IDENTITY, AND AUTHORITY TO FILE**

The Center for Ethics and the Rule of Law (CERL)[1] is a nonpartisan rule of law and national security organization affiliated with the University of Pennsylvania. CERL is dedicated to preserving and promoting the rule of law in 21st-century national security, military operations, and democratic governance. Founded in 2012 by University of Pennsylvania Carey School of Law professor Claire Finkelstein, its distinguished Executive Board includes retired military officers, lawyers, academics, and legal practitioners, as well as former public servants. It files briefs, advises policymakers, educates students, and provides a resource for the media and members of the public through its publications and conferences convening academics and policymakers. As part of the University of Pennsylvania, CERL is a registered 501(c)(3) entity.

Claire Finkelstein, Founder and Faculty Director of CERL, is the Algernon Biddle Professor of Law and Professor of Philosophy at the University of Pennsylvania. Her current research addresses democratic governance, presidential authority, the law of armed conflict, civilian-military relations, and professional ethics for lawyers. Finkelstein is a co-editor of The Oxford Series in Ethics,

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person other than *amicus curiae*, its members, or its counsel contributed money intended to fund the preparation or submission of this brief.

1

National Security, and the Rule of Law. She has published widely in law reviews and other fora on topics relating to democratic governance and most recently was the primary author of a brief filed on behalf of 155 members of Congress before the U.S. Supreme Court involving the Illinois National Guard. Finkelstein is also a sought-after national security consultant, briefing individuals, Pentagon officials, U.S. Senate staff, and JAG Corps members on issues relating to national security law and practice. She is also regularly consulted on matters of personal and professional ethics. She is a frequent radio, podcast, broadcast, and print commentator and has published op-eds in *The New York Times*, *The Washington Post*, *Bloomberg*, *the Guardian*, *Lawfare*, *Just Security*, and other outlets.

For the reasons described herein, CERL is deeply concerned about the implications of the Government's actions taken against Senator Kelly and how such actions may more broadly influence American military and national security policy and the rule of law.

The parties have consented to the filing of this brief.

**SUMMARY OF ARGUMENT**

Senator Mark Kelly faces discipline for purportedly encouraging disobedience to lawful orders in the military chain of command based on his statements in the November 18, 2025 video "Don't Give Up the Ship." (*See* JA 115–17). In that video, Senator Kelly, along with five of his fellow Members of Congress, reminded members of the military that they could "refuse illegal orders." (*Id.*) One member said that members of the military "must refuse illegal orders." (*Id.* at 116). Far from encouraging troops to disobey legal orders, Senator Kelly, along with his colleagues, accurately reminded members of the military, as well as members of the intelligence community, that their constitutional duties do not extend to following *illegal* orders. For this, the Senator was accused of undermining good order and discipline in the military.

Senator Kelly's statement, however, accurately reflects the "law of superior orders," namely the body of law addressing when military orders in the chain of command are obligatory on servicemembers. Moreover, even if Senator Kelly *had* encouraged disobedience to lawful orders, as a retired member of the U.S. military, rather than an active duty soldier, his statement would be protected under the First Amendment and cannot subject him to administrative or criminal charges. Additionally, disciplining a sitting Member of Congress for his speech would represent a grave violation of the separation of powers and inhibit members of the

3

legislative branch from carrying out their functions as the democratically elected representatives of the American people.

## ARGUMENT

### I.    Senator Kelly's Statements Accurately Reflect the Law of Superior Orders.

In a November 18, 2025, video directed to servicemembers entitled "Don't Give Up the Ship," Senator Kelly stated that "[o]ur laws are clear. You can refuse illegal orders." (JA 115–16). Elsewhere in the video, one representative stated that "[y]ou must refuse illegal orders." (JA 116). On January 5, 2026, Secretary Pete Hegseth issued a Secretarial Letter of Censure, in which he determined that, based on Senator Kelly's statements in that video and elsewhere, his conduct: "undermines the chain of command"; "counsels disobedience"; "creates confusion about duty"; "brings discredit upon the armed forces"; and "is conduct unbecoming an officer." (JA 99–100 (capitalization altered for clarity)). But Senator Kelly's statements in the "Don't Give Up the Ship" video do not merit Secretary Hegseth's admonitions, but rather, accurately reflect the law.

### A. Senator Kelly's Statement That "You Can Refuse Illegal Orders" Is Consistent with the Black Letter Law of Superior Orders.

The Manual for Courts-Martial (MCM), the presidentially-promulgated set of regulations implementing the Uniform Code of Military Justice (UCMJ), along with military case law, recognize the existence of both lawful and unlawful orders. If an order is lawful, its willful disobedience may expose the actor to criminal liability.

Orders "may be inferred to be lawful," and are "disobeyed at the peril of the subordinate." *MCM, United States*, pt. IV, ¶ 16.c.(2)(a)(i) (2024 ed.); *see also United States v. Trani*, 1 U.S.C.M.A. 293, 296 (1952) ("It is a familiar and long-standing principle of military law that the command of a superior officer is clothed with a presumption of legality, and that the burden of establishing the converse devolves upon the defense.").

The Trump administration's charges against Senator Kelly amount to the claim that he has encouraged members of the military to violate lawful orders, and hence to encourage behavior that is itself unlawful. Yet the video Senator Kelly made, with five other members of Congress, was quite clear: his advice to members of the military was that they had the option to disobey *unlawful,* not *lawful* orders. One member of Congress went further and opined that members of the military *must* disobey unlawful orders.

Unlike lawful orders, unlawful orders can be disobeyed without punishment. *MCM, United States*, Rules for Courts-Martial 916(d) (discussion) [hereinafter "R.C.M. 916(d) (discussion)"] ("An act performed pursuant to an unlawful order is excused unless the accused knew it to be unlawful or a person of ordinary sense and understanding would have known it to be unlawful."). Unlawful orders fall into two categories: those that are "patently" unlawful and those that are merely "apparently lawful" but technically unlawful.

A patently unlawful order is an order which a person of "ordinary sense and understanding" would have known to be unlawful. *United States v. Calley*, 22 U.S.C.M.A. 534, 542 (1973). Patently unlawful orders, but not all unlawful orders, *must* be disobeyed. *See United States v. Huet-Vaughn*, 43 M.J. 105, 114 (C.A.A.F. 1995) ("The duty to disobey an unlawful order applies only to 'a positive act that constitutes a crime' that is 'so manifestly beyond the legal power or discretion of the commander as to admit of no rational doubt of their unlawfulness.' (quoting *Calley*, 22 U.S.C.M.A. at 543)). Regarding this specific type of illegal order, the statement that "you must refuse illegal orders," is correct.

There is only one appellate case holding that an order was patently unlawful, *United States v. Calley*, which concerned the My Lai Massacre. *See* 22 U.S.C.M.A. at 544. Additionally, the Court of Military Appeals stated in *United States v. Cherry* that an order to "continu[e] to drive a heavy vehicle with defective brakes in a congested area," "appear[ed] to be patently illegal," although ultimately failing to find that such an order occurred. 22 M.J. 284, 286 (C.M.A. 1986). Those are the only two appellate cases of which *amicus* is aware addressing patent illegality.

A theoretical aid in differentiating between patently unlawful orders and technically unlawful orders is the traditional distinction between *malum in se* and *malum prohibitum* crimes. A *malum in se* crime is one that is "inherently immoral," *Malum in se*, Black's Law Dictionary (12th ed. 2024), whereas a *malum prohibitum*

crime "is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral," *Malum prohibitum*, Black's Law Dictionary (12th ed. 2024). One way of understanding patently unlawful orders is that, like *malum in se* crimes, such orders involve conduct that is so egregious or of obvious illegality that every person can be presumed to know the illegality of the underlying conduct.

By contrast, technically unlawful orders may be unlawful without being obviously so. Just as knowledge of the illegality of *mala prohibita* crimes cannot be assumed, technically unlawful orders may or may not be of apparent illegality to those in the chain of command. For example, an order may be technically unlawful if a commander was not properly authorized to give it, or if the order strays from the requirements of a superior regulation in a comparatively minor way. Such orders are known as apparently lawful orders. *See United States v. Pacheco*, 56 M.J. 1, 2 (C.A.A.F. 2001). Technically unlawful orders present a gray zone: if obeyed, the order provides an excuse defense for the conduct commanded, while if disobeyed, the prosecution will fail since the unlawfulness deprives the order of its power to create duties. *See* R.C.M. 916(d) (discussion). Put another way, a servicemember has the option to obey or disobey a technically unlawful order, and in either case he or she will avoid liability.

**B. The Government's Central Case Does Not Apply to Senator Kelly's Speech.**

The Government attempts to analogize Senator Kelly's case to *Parker v. Levy*, in which the Supreme Court held that a servicemember can be convicted for encouraging disobedience to orders without violating the First Amendment, 417 U.S. 733, 761 (1974), explaining that Secretary Hegseth "determined that a retired officer issued the same type of statements at issue in *Parker*," (Apps.' Br. at 37–38). The statements of Senator Kelly the Government finds objectionable, however, bear no resemblance to the speech at issue in that case.

The defendant in *Parker* was Howard Levy, a physician in the U.S. Army who made various statements to enlisted servicemembers encouraging them not to serve in Vietnam. 417 U.S. at 736–37.[2] As a result of these statements, Levy was charged with violating Articles 133 and 134 of the Uniform Code of Military Justice and convicted by court-martial. *Id.* at 737–40. After considering a challenge

---

[2] The Supreme Court explained the following paragraph was "representative" of the physician's statements: ""The United States is wrong in being involved in the Viet Nam War. I would refuse to go to Viet Nam if ordered to do so. I don't see why any colored soldier would go to Viet Nam: they should refuse to go to Viet Nam and if sent should refuse to fight because they are discriminated against and denied their freedom in the United States, and they are sacrificed and discriminated against in Viet Nam by being given all the hazardous duty and they are suffering the majority of casualties. If I were a colored soldier I would refuse to go to Viet Nam and if I were a colored soldier and were sent I would refuse to fight. Special Forces personnel are liars and thieves and killers of peasants and murderers of women and children." *Parker*, 417 U.S. at 736–37.

8

to Levy's conviction on First Amendment grounds, the Supreme Court rejected his argument, explaining that his "conduct, that of a commissioned officer publicly urging enlisted personnel to refuse to obey orders which might send them into combat, was unprotected under the most expansive notions of the First Amendment." *Id.* at 761.

Senator Kelly's statement that "[y]ou can refuse illegal orders," is not analogous to the circumstances in the *Parker* case. For example, Senator Kelly's statement does not tell servicemembers to refuse to obey lawful orders, but instead, as stated in Part I.A., *supra*, accurately reflects black letter law regarding superior orders. Moreover, this statement does not identify any particular order as illegal. Accordingly, *Parker*'s holding, that a member of the military may be punished for encouraging disobedience to legal orders, is simply irrelevant to Senator Kelly's case.

## II. Disciplining Senator Kelly for His "Core Political Speech" Violates the First Amendment and Imposes an Undue Burden on His Constituents.

President Trump has recognized the importance of affording the widest possible latitude to what he called "core political speech." *See* President Trump's Motion to Dismiss the Indictment Based on Constitutional Grounds and Memorandum in Support at 4–18, *United States v. Trump*, No. 23-cr-00257 (D.D.C. Oct. 23, 2023). In a brief filed in the U.S. District Court for the District of

9

Columbia, responding to one of two federal prosecutions brought by Special Counsel Jack Smith against Donald Trump, the President's attorneys, among them current Acting Attorney General Todd Blanche and now-Judge Emil Bove wrote: "If there is any constant in our democratic system of governance, it is that the marketplace of ideas—not the mandates of government functionaries or partisan prosecutors—determines the scope of public debate." *Id.* at 2. As the brief noted, "The First Amendment embraces and encourages exactly this kind of behavior," referring to the President's "voic[ing] . . . concerns" and "demand[ing] that politicians in a position to restore integrity to our elections" take action. *Id.* Judge Chutkan responded in her Memorandum Opinion that "'core political speech' addressing 'matters of public concern' is not 'immunized from prosecution' if it is used to further criminal activity." *United States v. Trump*, 704 F. Supp. 3d 196, 222 (D.D.C. 2023) (quoting *United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999)), *vacated on other grounds sub nom.*, *Trump v. United States*, 603 U.S. 593 (2024). Here, Senator Kelly was doing the opposite of "furthering criminal activity." He was attempting to instruct others on how to avoid furthering criminal activity themselves by avoiding the facilitation of illegal conduct through implementation of the chain of command. Given that the President has the duty under Article II of the U.S. Constitution to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, Secretary Hegseth should endorse, rather than seek to discipline,

10

Senator Kelly for reminding troops of their duties to the Constitution and their oaths of office.

The U.S. Supreme Court has recognized that in addition to its myriad other functions, the First Amendment extends special protection to legislative speech and lawmaker deliberations. "The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Bond v. Floyd*, 385 U.S. 116, 135–36 (1966). Indeed, as the Supreme Court in *Bond* explained (and as the District Court noted below), "[l]egislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office." *Id.* at 136; (*see also* JA 37).

Senator Kelly's remarks and his firm moral compass should remind this court of the great benefit many former members of the military have rendered to the United States by serving first in the armed services and later as legislators in the U.S. Congress. As such, they have followed a long tradition of doing double duty to their country and have enriched the Legislative branch by applying the knowledge they gained as servicemembers to their representation of the American people. While restricted for active-duty servicemembers, engaging in political speech is an inherent part of the job when serving as Members of Congress. This applies equally to retired servicemembers. Any other rule would mean that citizens

11

who are represented by retired military would have unequal and less robust representation than when they are represented by elected members who have never served. Moreover, the discrepancy would be even more arbitrary: it is only retired military that are subject to military jurisdiction, while veterans who are not retired are not. *See* Article 2, UCMJ.

### III.    Protecting Senator Kelly's Right to Speak Protects the Separation of Powers.

There is a long tradition of former members of the U.S. military serving in Congress. At the beginning of the 119th Congress, one hundred Senators and U.S. Representatives were veterans.[3] Several of those members continue to serve as part of a reserve component or the National Guard.[4] While not all of the members of Congress included in the broader group would necessarily be subject to UCMJ jurisdiction, *see* Article 2, UCMJ, the potential to punish those who are could make it less likely that these legislators share their public opinions on military policy more generally, or even become legislators in the first place. The American public would lose the crucial knowledge and viewpoints of those who have experienced

---

[3] Leo Shane III, *Breaking Down the Number of Veterans in the 119th Congress*, Military Times (Jan. 2, 2025), https://www.militarytimes.com/news/pentagon-congress/2025/01/02/breaking-down-the-number-of-veterans-in-the-119th-congress/.

[4] *See* Noelle Wiehe, *Meet the Guardsmen and Reservists in the US Cabinet, 119th Congress*, Reserve + National Guard Magazine (Apr. 1, 2025), https://reservenationalguard.com/reserve-guard-veterans/meet-the-guardsmen-and-reservists-in-the-us-cabinet-119th-us-congress/.

military service firsthand, and the legislative system itself may suffer as a result. One study from the Center for Effective Lawmaking found that "lawmakers with military experience tend to be more effective at advancing consequential bills through the legislative process" and that "veterans in Congress tend to cosponsor bills introduced by members of the opposite party at higher rates."[5]

The Supreme Court has noted the importance of protecting the ability of elected officials to share their opinions. Rejecting the argument that it was appropriate to curtail a sheriff's speech, the Supreme Court noted that the sheriff "was an elected official and had the right to enter the field of political controversy," explaining that "[t]he role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance." *Wood v. Georgia*, 370 U.S. 375, 394–95 (1962). Such protection is essential to upholding the separation of powers between the executive and legislative branches.

Article I, Section 6, Clause 1, known as the Speech or Debate Clause prohibits the questioning of any Senator or U.S. Representative "for any Speech or Debate in either House," and, as broadly read "to effectuate its purposes," provides

---

[5] Joseph G. Amoroso, *Deployed to the Hill: How Military Experience Influences Legislative Behavior in Congress*, Center for Effective Lawmaking 29–30 (2023), https://thelawmakers.org/wp-content/uploads/2023/02/Deployed-to-the-Hill_Amoroso_27FEB23_CEL.pdf.

immunity for criminal and civil actions based on actions taken with the "legitimate legislative sphere." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501, 503 (1975). While *amicus curiae* understands this immunity may not protect Senator Kelly's off-the-floor speech at issue here, the Clause and its history underscore the importance of protecting the independence of legislative speech and the ability of members of Congress to fulfil their constitutionally assigned roles. The Clause's purpose was "to prevent intimidation by the executive and accountability by a possibly hostile judiciary" and therefore helps aid the separation of powers. *United States v. Johnson*, 383 U.S. 169, 180–82 (1966); *see also Eastland*, 421 U.S. at 502 ("The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently.").

The "Don't Give up the Ship" video was made in the wake of the current Department of Defense's policy of lethal strikes on unarmed civilian drug boats in the Caribbean and Eastern Pacific waterways. These military operations have been widely criticized by lawmakers, former military, academics, and members of the public.[6] As a member of the U.S. Senate, Mark Kelly joined the criticism of the

---

[6] Rachel E. VanLandingham & Steven J. Lepper, *The Pentagon's Distortions of Law to Justify Its Venezuela Operations Have a Name—"Lawfare,"* The Rule of Law Post, The Center for Ethics and the Rule of Law (Mar. 17, 2026), https://www.penncerl.org/the-rule-of-law-post/the-pentagons-distortions-of-law-to-justify-its-venezuela-operations-have-a-name-lawfare/.

administration's policies, a stance that every lawmaker – rightly or wrongly – is entitled to take. The video itself, however, contains no such criticism and no reference to these operations.

It is difficult to avoid the conclusion that this administration is using military jurisdiction in an effort to intimidate vocal Congressional opponents of controversial Executive Branch policies. This represents a grave threat to the checks and balances and separation of powers on which our system of government depends.

## CONCLUSION

For the aforementioned reasons, this Court should affirm the decision of the court below.

Respectfully submitted,

*/s/ Mark S. Zaid*
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700 – PMB 5287
Washington, D.C. 20036
(202) 498-0011
Mark@MarkZaid.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 29(a)(5) and D.C. Circuit Rule 29(a)(5) because it contains 3,405 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1). The filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: April 22, 2026

*/s/ Mark S. Zaid*
Mark S. Zaid
*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2026, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit via the Court's CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

Date: April 22, 2026

*/s/ Mark S. Zaid*
Mark S. Zaid
*Counsel for Amicus Curiae*
